```
                                                    104 - 221
                                            WOOD COUNTY COMMISSION
                                            DEED            Clerk 02
                                            Date/Time: 07/28/1999 09:17
                                            Inst #:          24332b
                                            Book/Page: UCI04DA/A. 221-
                                            Recd/Tax:    314.85      311.85
```

**THIS DEED**, Made this the 20th day of July, 1999, by and between **LUCINDA A.**

**WISEMAN**, unmarried, party of the first part, and **DAVID M. DAUGHERTY and TINA M.**

**DAUGHERTY**, husband and wife, parties of the second part

### WITNESSETH:

That for and in consideration of the sum of Ten Dollars ($10 00), cash in hand paid, and other

good and valuable considerations hereinafter set forth, the receipt and sufficiency of all of which is

hereby acknowledged, the said party of the first part does hereby **GRANT and CONVEY** unto the

said parties of the second part, as joint tenants with the right of survivorship, and not as tenants in

common, all that certain lot, tract or parcel of land, together with the improvements thereon and the

appurtenances thereunto belonging, situate in the City of Vienna, County of Wood and State of West

Virginia, more particularly described as follows:

BEING all of Lot No 35 of Forest Hills Addition No 8 as more particularly shown on a plat

of said Addition of record in the Office of the Clerk of the County Commission of Wood County,

West Virginia, in Plat Book 12, at page 33, reference to which plat is hereby made for a more

particular description of the said lot

And being the same property conveyed unto Lucinda A. Wiseman by Cathy A. Adams by

deed dated April 6, 1993, and of record in the aforesaid Clerk's Office in Deed Book 931, at page

846.

This conveyance is made subject to the restrictions of record in Plat Book No 12, at page

33   This conveyance is further subject to all existing reservations, restrictions, and easements

created in prior deeds in the chain of title to the property hereby conveyed and subject further to the

lien of the 1999 real estate taxes which shall be prorated between the parties hereto, the said party

of the first part covenants to and with the said parties of the second part, that the property herein

conveyed is free and clear of all liens and encumbrances, and she will **WARRANT GENERALLY**

the title to the property herein conveyed

CONFIDENTIAL                    DD/OLS 000346

DECLARATION OF CONSIDERATION OF VALUE·  Under the penalties of fine and imprisonment as provided by law, the Grantor does hereby declare that the total consideration for the property transferred by this document is Ninety-four Thousand Three Hundred Thirty-four and 63/100 Dollars ($94,334.63).

This instrument was prepared by Johnson Law Offices, Suite 200 Woodrums' Building, 602 Virginia Street, East, Charleston, West Virginia

WITNESS the following signature and seal.

Lucinda A. Wiseman

STATE OF *New Mexico*

COUNTY OF *Curry*, TO-WIT

The foregoing instrument was acknowledged before me this 26TH day of July, 1999 by Lucinda A. Wiseman.

My commission expires: *July 26, 2000*

Notary Public within and for
the aforesaid County and State

( ✓ )    Purchaser will occupy property

(    )    Purchaser will not occupy property

P:\WP60\DEEDS\OTI\6RW9922DE WPD

BOOK 849 PAGE 798

ATTACHMENT

All that certain lot, tract or parcel of land, together with the improvements thereon and the appurtenances thereunto belonging, situate in the City of Vienna, County of Wood and State of West Virginia, more particularly described as follows

BEING all of Lot No. 35 of Forest Hills Addition No. 8 as more particularly shown on a plat of said Addition of record in the Office of the Clerk of the County Commission of Wood County, West Virginia, in Plat Book 12, at page 33, reference to which plat is hereby made for a more particular description of the said lot.

And being the same property conveyed unto David M. Daugherty and Tina M. Daugherty by Lucinda A. Wiseman by deed dated July 20, 1999, and to be recorded simultaneously herewith this transaction.

This conveyance is made subject to the restrictions of record in Plat Book No. 12, at page 33.

CONFIDENTIAL

DD/OLS 000348

BOOK 849 PAGE 799

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. Funds for Taxes and Insurance. Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property, (b) yearly leasehold payments or ground rents on the Property, if any, (c) yearly hazard or property insurance premiums, (d) yearly flood insurance premiums if any; (e) yearly mortgage insurance premiums, if any, and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement and Procedures Act of 1974 as amended from time to time, 12 U.S.C. §2601 et seq ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. Hazard or Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and

(Page 2 of 6 pages)

CONFIDENTIAL

DD/OLS 000349

BOOK 849 PAGE 800

for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. Protection of Lender's Rights in the Property. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. Mortgage Insurance. If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9. Inspection. Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

Form 3049 9/90

CONFIDENTIAL

DD/OLS 000350

BOOK 849 PAGE 801

10. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

17. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. **Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as

*(Page 4 of 6 pages)*

CONFIDENTIAL

DD/OLS 000351

BOOK 849 PAGE 802

applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. Sale of Note; Change of Loan Servicer. The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20 "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall give Borrower, in the manner provided in paragraph 14, notice of Lender's election to sell the Property. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law and, when required by applicable law, shall cause such notice to be served personally upon Borrower or other persons. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

22. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

23. Substitute Trustee. Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

(Page 7 of 6 pages)

CONFIDENTIAL

DD/OLS 000352

BOOK 849 PAGE 803

24.  Beneficiary's Address. The beneficial owner and holder of the Note at the time of execution and delivery hereof is Lender, whose residence address is stated in the first paragraph of this page of this Security Instrument.
25.  Attorney's Fees. The provisions in this Security Instrument for Borrower to pay "attorneys' fees" shall be void.
26.  Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. (Check applicable box(es))

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☒ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☒ Other(s) (specify) Prepay Rider and Arbitration Rider | | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 6 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)          _____ (Seal)
David H. Daugherty          -Borrower                                           -Borrower

_____ (Seal)          _____ (Seal)
Tina N. Daugherty          -Borrower                                           -Borrower

_____ (Seal)          _____ (Seal)
                           -Borrower                                           -Borrower
Witness:                                          Witness:


STATE OF WEST VIRGINIA,  Wood ~~Kanawha~~ County ss:

The foregoing instrument was acknowledged before me this 20th day of July 1999,
by David M Daugherty and Tina M Daugherty
                                                     [person acknowledging]

                                          Emily Johnson
OFFICIAL SEAL                                                            Notary Public
NOTARY PUBLIC
STATE OF WEST VIRGINIA
EMILY B JOHNSON
1276 VIRGINIA STREET EAST
CHARLESTON, WV 25311
My Commission Expires July 1, 2009

This instrument was prepared by:
                       Dustin Boyd


(Page 6 of 6 pages)


CONFIDENTIAL

DD/OLS 000353

BOOK 849 PAGE 804

### Balloon Payment Rider to Security Instrument
(To Be Recorded Together with Security Instrument)

This BALLOON PAYMENT RIDER (the "Rider") is made this __28th__ day of __July__, 1999, and amends the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") dated the same date and given by the person(s) who sign below (the "Borrower(0") to __Equi/First Corporation__ (the "Lender") to secure repayment of a Note in the amount of U S $ __100,000__

In addition to the agreements and provisions made in the Note and the Security Instrument, both the Borrower(s) and and the Lender further agree as follows:

'THIS LOAN IS PAYABLE IN FULL AT THE MATURITY DATE. THE "MATURITY DATE" IS

__July 26, 2014__ YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE

LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO

REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE

PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A

LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND

YOU THE MONEY IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO

PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN

EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER. THIS CONTRACT IS NOT

PAYABLE IN INSTALLMENTS OF EQUAL AMOUNTS: AN INSTALLMENT OF __992,665.21__

WILL BE DUE ON __July 26, 2014.__

At least ninety (90), But not more than one hundred twenty (120) days prior to the Maturity Date, the Lender must send the Borrower(s) a notice which states the Maturity Date and the amount of the "Balloon Payment" which will be due on the Maturity Date (assuming all scheduled payments due between the date of the notice and the Maturity Date are made on time).

David M. Daugherty

Tina M. Daugherty

Witness

Witness

Witness

Witness

West Virginia

Revised   5-30-97

BOOK 849 PAGE 805

## Prepayment Penalty Rider to Security Instrument
(To Be Recorded Together with Security Instrument)

This PREPAYMENT PENALTY RIDER (the "Rider") is made this ___20th___ day of ___July___, 1999, and amends the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") dated the same date and given by the person(s) who sign below (the "Borrower(s)") to ___EquiFirst Corporation___ (the "Lender") to secure repayment of a Note in the amount of U.S. $___100,800___.

In addition to the agreements and provisions made in the Note and the Security Instrument both the Borrower(s) and the Lender further agree as follows:

### PREPAYMENT PENALTY

IF  I  PREPAY  THIS  LOAN  IN  FULL  WITHIN         3         YEAR(S) FROM THE DATE OF THIS LOAN, I
AGREE  TO  PAY  A  PREPAYMENT  TO  THE  NOTE  HOLDER.  THE  AMOUNT  OF  THE  PREPAYMENT
WILL  BE  THE  AMOUNT  EQUAL  TO        SIX (6) MONTHS INTEREST         AT THE INTEREST RATE SHOWN
IN  SECTION  2  OF  THIS  NOTE  ON  THE  UNPAID  PRINCIPAL  BALANCE  OF  THE  LOAN  OUTSTANDING
ON THE DATE OF PREPAYMENT. THIS AMOUNT WILL BE IN ADDITION TO ANY OTHER AMOUNTS I MAY
OWE  UNDER  THE  PROVISIONS  OF  THIS  NOTE  OR  THE  SECURITY  INSTRUMENT  THAT  SECURES  THIS
NOTE.  IF I MAKE A PREPAYMENT IN FULL ON OR AFTER THE THIRD ANNIVERSARY OF THE DATE OF
THE DATE OF THIS NOTE, THE NOTE HOLDER WILL IMPOSE NO PREPAYMENT PENALTY

David M. Dougherty

Tina M. Dougherty

Witness

Witness

Witness

# NOTE

| July 20, 1999 | Charleston | West Virginia |
|---|---|---|
| (Date) | (City) | (State) |

35 Valley View Drive
Vienna, WV 26104
(Property Address)

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$100,860.00** (this amount is called "principal"),
plus interest, to the order of the Lender. The Lender is

**EQUIFIRST CORPORATION**

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a
yearly rate of **9.75** %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the **26th** day of each month beginning on **August 26, 1999**
I will make these payments every month until I have paid all of the principal and interest and any other charges
described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on
**July 26, 2014** , I still owe amounts under this Note, I will pay those amounts in full on that date,
which is called the "maturity date."

I will make my monthly payments at   **EquiFirst Corporation**
P.O. Box 60882
Charlotte, NC 28260-0882

or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. **$866.54** . THIS CONTRACT IS NOT PAYABLE IN INSTALLMENTS O
OF EQUAL AMOUNTS:  AN INSTALLMENT OF  **$82,666.36**  WILL BE DUE ON  **July 26, 2014.**

## 4. BORROWER'S RIGHT TO PREPAY

(A) Prepayment

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment".
When I make a prepayment, I will tell the Note Holder in writing that I am doing so. If I make a partial prepayment, there will be
no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

(B) Prepayment Penalty

If I prepay this loan in full within **3** year(s) from the date of this loan, I agree to pay a prepayment penalty to the Note Holder. The
amount of the prepayment will be the amount equal to  SIX (6) MONTHS INTEREST  at the interest rate shown in Section 2 of this
Note on the unpaid principal balance of the loan outstanding on the date of prepayment. This amount will be in addition to any other amounts I may
owe under the provisions of this Note or the Security Instrument that secures this Note. If I make the prepayment in full on or after the third
anniversary of the date of this Note, the Note Holder will impose no prepayment penalty.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan
charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such
loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already
collected from me which exceeded permitted limits will be refunded to me.  The Note Holder may choose to make this
refund by reducing the principal I owe under this Note or by making a direct payment to me.  If a refund reduces principal,
the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15 days**
(calendar days) after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be
**5%** of my overdue payment of principal and interest but not more than U.S. $5.00 and not less than U.S. $1.00. I will pay this late
charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note holder may send me a written notice telling me that if I do not pay the overdue amount
by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid
and all the interest that I owe on that amount.  That date must be at least 30 days after the date on which the notice is
delivered or mailed to me.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described
above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right
to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable
law.

MULTISTATE FIXED RATE NOTE         ---Single Family---                PREPAYMENT PENALTY

**Loan Number:**   **132385-1**      PAGE 1 of 2      INITIALS

West Virginia                                                       Revised   01-Jul-99

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor and waive the homestead exemption. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person), without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_David M. Daugherty_ (Seal) -Borrower

_Tina M. Daugherty_ (Seal) -Borrower

_____ (Seal) -Borrower

_____ (Seal) -Borrower

[Sign Original Only]

Without Recourse, Pay to the Order of:

**EFC Holdings Corporation**

**EquiFirst Corporation**

By: _Amy Acevedo_ Julie Godbey, Assistant Vice President
Amy Acevedo
Asst. Vice President

Without Recourse, Pay to the Order of:

**EFC Holdings Corporation**

By: _Amy Acevedo_ Julie Godbey, Assistant Vice President
Amy Acevedo
Asst. Vice President

PAY TO THE ORDER OF NORWEST BANK MINNESOTA, N.A., AS TRUSTEE FOR PROVIDENT BANK HOME EQUITY LOAN TRUST 1999-B, WITHOUT RECOURSE.

The Provident Bank, d/b/a Provident Consumer Financial Services

By: _Steven L. Walsh_

VICE PRESIDENT

| MULTISTATE FIXED RATE NOTE | --Single Family-- | PREPAYMENT PENALTY |

Loan Number: 132385-1    PAGE 2 of 2    INITIALS____

West Virginia    Revised 01-Jul-99

CONFIDENTIAL

DD/OLS 000357

### Balloon Payment Addendum to Note

This BALLOON PAYMENT ADDENDUM is made this ___20th___ day of ___July___ 1999 , and amends the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") dated the same date and given by the person(s) who sign below (the "Borrower(s)") to **EquiFirst Corporation** (the "Lender") to secure repayment of a Note in the amount of U.S $ ___100,860___ .

In addition to the agreements and provisions made in the Note, both the Borrower(s) and the Lender further agree as follows:

THIS LOAN IS PAYABLE IN FULL AT THE MATURITY DATE.  THE "MATURITY DATE" IS:

___July 26, 2014___   YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE

LOAN AND UNPAID INTEREST THEN DUE.  THE LENDER IS UNDER NO OBLIGATION TO

REFINANCE THE LOAN AT THAT TIME.  YOU WILL, THEREFORE, BE REQUIRED TO MAKE

PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A

LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND

YOU THE MONEY.  IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO

PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN

EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.  THIS CONTRACT IS NOT

PAYABLE IN INSTALLMENTS OF EQUAL AMOUNTS:  AN INSTALLMENT OF ___$82,666.36___

WILL BE DUE ON ___July 26, 2014.___

At least ninety (90), but not more than one hundred twenty (120) days prior to the Maturity Date, the Lender must send the Borrower(s) a notice which states the Maturity Date and the amount of the "Balloon Payment" which will be due on the Maturity Date (assuming all scheduled payments due between the date of the notice and the Maturity Date are made on time).

_David M. Daugherty_
David M. Daugherty

_Tina M. Daugherty_
Tina M. Daugherty

_Emily Johns_
Witness

_____
Witness

_____
Witness

_____
Witness

West Virginia                                                                                      Revised   01-Jul-99

CONFIDENTIAL

DD/OLS 000358

## Balloon Payment Rider to Security Instrument
(To Be Recorded Together with Security Instrument)

This BALLOON PAYMENT RIDER (the "Rider") is made this ____20th____ day of ____July____ 1999 , and amends the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") dated the same date and given by the person(s) who sign below (the "Borrower(s)") to       **EquiFirst Corporation**       (the "Lender") to secure repayment of a Note in the amount of U.S $ ___100,860___ .

In addition to the agreements and provisions made in the Note and the Security Instrument, both the Borrower(s) and the Lender further agree as follows:

THIS LOAN IS PAYABLE IN FULL AT THE MATURITY DATE. THE "MATURITY DATE" IS:

____July 26, 2014____ YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER. THIS CONTRACT IS NOT PAYABLE IN INSTALLMENTS OF EQUAL AMOUNTS. AN INSTALLMENT OF ___$82,666.36___ WILL BE DUE ON ____July 26, 2014.____

At least ninety (90), but not more than one hundred twenty (120) days prior to the Maturity Date, the Lender must send the Borrower(s) a notice which states the Maturity Date and the amount of the "Balloon Payment" which will be due on the Maturity Date (assuming all scheduled payments due between the date of the notice and the Maturity Date are made on time).

_____
David M. Daugherty

_____
Tina M. Daugherty

_____

_____

_____
Witness

_____
Witness

_____
Witness

_____
Witness

West Virginia

Revised    01-Jul-99

CONFIDENTIAL                     DD/OLS 000359

### Prepayment Penalty Rider to Security Instrument
(To Be Recorded Together with Security Instrument)

This PREPAYMENT PENALTY RIDER (the "Rider") is made this ___20th___ day of _____July_____ 1999 , and amends the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") dated the same date and given by the person(s) who sign below (the "Borrower(s)") to **EquiFirst Corporation** (the "Lender") to secure repayment of a Note in the amount of U.S.$ ___100,860___ .

In addition to the agreements and provisions made in the Note and the Security Instrument, both the Borrower(s) and the Lender further agree as follows:

### PREPAYMENT PENALTY

IF I PREPAY THIS LOAN IN FULL WITHIN ___3___ YEAR(S) FROM THE DATE OF THIS LOAN, I AGREE TO PAY A PREPAYMENT TO THE NOTE HOLDER.  THE AMOUNT OF THE PREPAYMENT WILL BE THE AMOUNT EQUAL TO ___SIX (6) MONTHS INTEREST___ AT THE INTEREST RATE SHOWN IN SECTION 2 OF THIS NOTE ON THE UNPAID PRINCIPAL BALANCE OF THE LOAN OUTSTANDING ON THE DATE OF PREPAYMENT.  THIS AMOUNT WILL BE IN ADDITION TO ANY OTHER AMOUNTS I MAY OWE UNDER THE PROVISIONS OF THIS NOTE OR THE SECURITY INSTRUMENT THAT SECURES THIS NOTE.  IF I MAKE A PREPAYMENT IN FULL ON OR AFTER THE THIRD ANNIVERSARY OF THE DATE OF THE DATE OF THIS NOTE, THE NOTE HOLDER WILL IMPOSE NO PREPAYMENT PENALTY.

David M. Daugherty

Tina M. Daugherty

Witness

Witness

Witness

Witness

West Virginia

Revised  01-Jul-99

CONFIDENTIAL

DD/OLS 000360

## ARBITRATION RIDER
### (To Be Recorded Together with Security Instrument)

THIS RIDER is made this _____20th_____ day of _____July, 1999_____ and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to EquiFirst Corporation (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

35 Valley View Drive, Vienna, WV 26104
_(Property Address)_

As used in this Rider, the term "Lender" includes Lender's successors and assigns and the company servicing the Note on Lender's behalf.

**ADDITIONAL COVENANTS.**    In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**ARBITRATION OF DISPUTES.**    Any claim, dispute, or controversy (whether in contract, tort, or otherwise) arising from or related to the loan evidenced by the Note, including but not limited to all statutory claims, any claim, dispute or controversy that may arise out of or is based on the relationships which result from the Borrower's application to the lender for the loan, the closing of the loan, or the servicing of the loan, or any dispute or controversy over the applicability or enforceability of this arbitration agreement or the entire agreement between Borrower and Lender (collectively "claim"), shall be resolved, upon the election of either Borrower or Lender, by binding arbitration, and not by court action, except as provided under Exclusions from Arbitration below.

This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act (9 U.S.C. Sections 1-16) and the Code of Procedure of the National Arbitration Forum in effect at the time a claim is filed. Copies of the arbitration rules and forms can be obtained and any claims can be filed at any National Arbitration Forum office, at P.O. Box 50191, Minneapolis, MN 55404, on the World Wide Web at www.arb-forum.com, or by calling (800) 474-2371.

This agreement to arbitrate shall apply no matter by whom or against whom a claim is made. Any election to arbitrate may be made at any time, regardless of whether a lawsuit has been filed or not, and such party making the election may bring a motion in any court having jurisdiction to compel arbitration of any claim, and/or to stay the litigation of any claim pending arbitration. Any participatory arbitration hearing will take place in the federal judicial district of the Borrower's residence, unless a different location is agreed to by Borrower and Lender. At Borrower's request, Lender will advance the first $150 of the filing and hearing fees for any claim which the Borrower may file against Lender. The arbitrator will decide which party will ultimately be responsible for paying these fees. All claims between the Borrower and Lender shall be arbitrated individually, and shall not be subject to being joined or combined in any proceeding with any claims of any persons, or class of person other than Borrower or Lender. The arbitrator shall apply relevant law and provide written, reasoned findings of fact and conclusions of law. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction.

**EXCLUSIONS FROM ARBITRATION.**    This arbitration agreement shall not apply to rights of obligations under the loan documents that allow the Lender to foreclose or otherwise take possession of property securing the loan, including repossession, foreclosure or unlawful detainer. Nor shall it be construed to prevent any party's use of bankruptcy or judicial foreclosure. No provision of this agreement shall limit the right of the Borrower to exercise Borrower's rights under the Uniform Covenant labeled "Borrower's Right to Reinstate". Subject to these limitations, this arbitration agreement will survive the pay-off of the loan.

**SEVERABILITY.**    If the arbitrator or any court determines that one or more terms of this arbitration agreement or the arbitration Code are unenforceable, such determination shall not impair or effect the enforceability of the other terms of this arbitration agreement or the arbitration Code.

**NOTICE.**    WHEN YOU SIGN THIS ARBITRATION RIDER, YOU ARE AGREEING THAT EVERY DISPUTE DESCRIBED ABOVE MAY BE DECIDED EXCLUSIVELY BY ARBITRATION.    YOU ARE GIVING UP RIGHTS YOU MIGHT HAVE TO LITIGATE THOSE CLAIMS AND DISPUTES IN A COURT OR JURY TRIAL OR TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS IN CONNECTION WITH A CLAIM OR DISPUTE. DISCOVERY IN ARBITRATION PROCEEDINGS IS LIMITED IN THE MANNER PROVIDED BY THIS AGREEMENT AND THE RULES OF ARBITRATION.    THE ARBITRATOR'S DECISION WILL GENERALLY BE FINAL AND BINDING. . OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION. IT IS IMPORTANT THAT YOU READ THIS ENTIRE ARBITRATION AGREEMENT CAREFULLY BEFORE SIGNING THIS ARBITRATION RIDER.

BY SIGNING BELOW, Borrower accepts and agrees to the provisions contained in this Rider.

_Borrower_

_Borrower_

West Virginia

CONFIDENTIAL                                    DD/OLS 000361