**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
Beckley Division**

**DAVID M. DAUGHERTY,**

      **Plaintiffs,**

    **v.**                              **Civil Action No. 5:14-cv-24506**

**EQUIFAX INFORMATION
SERVICES, LLC, and
OCWEN LOAN SERVICING, LLC,**

      **Defendants.**

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT OCWEN LOAN
SERVICING, LLC'S MOTION FOR SUMMARY JUDGMENT**

Defendant Ocwen Loan Servicing, LLC ("Ocwen"), by counsel, submits this Reply Memorandum in Support of its Motion for Summary Judgment.  For the reasons set forth below, Ocwen is entitled to judgment as a matter of law on all of Plaintiff's claims.

## I.     INTRODUCTION

It is undisputed in this case that Ocwen correctly reported Plaintiff's account to the credit reporting agencies, including Equifax Information Services, Inc. ("Equifax").  As Plaintiff concedes in his Response in Opposition to Ocwen's Motion for Summary Judgment ("Opposition"), "*[a]t all times, Plaintiff's report contained a separate, **correct** tradeline regarding his Ocwen Loan Servicing account, which indicated that he was current since April 2012 and had been 30 days late in March 2013.*"  (Opp., at 1) (emphasis added).  There is no evidence demonstrating that Ocwen reported or verified two tradelines.  Plaintiff cannot dispute that Equifax caused his credit problems when it inexplicably began to report two tradelines for the mortgage loan serviced by Ocwen, one of which contained the incorrect information disputed by Plaintiff.  The crux of Plaintiff's case is his contention that Ocwen knew Equifax was

reporting two Ocwen tradelines and failed to tell Equifax to delete the incorrect one. But it is not disputed that (1) Plaintiff never told Ocwen about the duplicate reporting, and (2) the disputes Ocwen received from Equifax also never mentioned a duplicate tradeline. Plaintiff's unsupported speculation aside, Ocwen never received any information to alert it that what Plaintiff actually was disputing was the existence of a second, derogatory, tradeline created by Equifax. Thus, Ocwen had no duty to investigate beyond the disputes identified by Equifax.

Plaintiff cannot show a willful violation of the FCRA. The undisputed facts show that Ocwen made a continuing effort to comply with the FCRA's requirements through written procedures and training, and followed those procedures in investigating and responding to the disputes it received. Plaintiff is simply wrong when he asserts that Ocwen cannot rely on the existence of written procedures because it failed to produce them. In any event, Plaintiff cannot produce evidence that Ocwen consciously intended to thwart his right to have inaccurate information removed from his credit report in a prompt manner. Instead, the evidence demonstrates that the problem was caused by Equifax, which failed to correct or delete the second tradeline even after Ocwen advised it repeatedly that the account was current.

Plaintiff also cannot demonstrate the existence of actual damages to support his claim for a negligent violation of the FCRA. It is undisputed that, in October 2013, Ocwen began using the compliance code "XB" to report the account as disputed. Because the tradeline was reported as "disputed," it cannot have affected Plaintiff's credit scores or his ability to obtain credit in the spring of 2014. Instead, the undisputed fact is that Plaintiff's credit report contained eleven collection accounts and two tax liens, derogatory tradelines that admittedly affected Plaintiff's ability to obtain credit and impacted his credit score. Similarly, the only evidence of emotional distress Plaintiff offers is his vague and uncorroborated testimony. This type of evidence is

insufficient to support a claim for emotional distress damages. Because Plaintiff cannot demonstrate that Ocwen's actions caused him damage, his claim for a negligent violation of the FCRA fails and must be dismissed.

## II.   STATEMENT OF FACTS

Plaintiff fails to directly address any of the facts set forth in Ocwen's Statement of Undisputed Facts. Accordingly, the Court is permitted to view all unchallenged or unaddressed allegations as undisputed for purposes of this Motion for Summary Judgment. Fed. R. Civ. P. 56(e); *First Century Bank, N.C. v. Batelic*, 2012 U.S. Dist. LEXIS 123528, *3 (S.D. W. Va. Aug. 30, 2012) (a court may consider facts from a motion for summary judgment that go unaddressed as undisputed). For this reason alone, Ocwen's Motion for Summary Judgment should be granted. The undisputed facts – not challenged by Plaintiff – demonstrate that Ocwen is entitled to judgment as a matter of law. Nevertheless, Ocwen addresses Plaintiff's "Statement of Facts" to correct numerous inaccuracies, misstatements of the record and rank speculation.[1]

Importantly, Plaintiff does not contest Ocwen's statements that it did not report a second tradeline and that Equifax – and only Equifax – began reporting a second tradeline. Likewise, Plaintiff concedes that he never advised Ocwen that Equifax was reporting a second or duplicate tradeline. It is not disputed that Equifax's ACDVs never advised Ocwen that a duplicate tradeline was involved. Plaintiff concedes that Ocwen *correctly reported his account* – "**at all times, [his] credit report contained a separate, correct tradeline regarding his Ocwen Loan**

---

[1] Plaintiff's "Statement of Facts" is a hodgepodge of factual statements, speculation and legal argument. Moreover, the 650 pages of exhibits attached to his Opposition are not marked or referenced in any rational way that would permit Ocwen to easily identify them. Plaintiff has further demonstrated his complete disregard for this Court's Local Rules by filing an opposition brief that exceeds the twenty page limit set forth in LR Civ. P. 7.1(2).

**servicing account**.”   (Opp., at 1) (emphasis added.)   Notwithstanding these uncontested facts, Plaintiff relies on three disputes he claims Ocwen failed to properly investigate.

## A.  The March 2013 Dispute.

On March 14, 2013, Plaintiff wrote directly to Ocwen about his Equifax report, which he claimed “states I am currently behind $6,129.00” and “in foreclosure.”[2]  (Doc. No. 101-19).  The letter itself does not “identify” the tradeline or a date.  Attached to the letter is what appears to be part of a credit report from 2012, *not* 2013.  (*Id.*, OLS 577.)  Nothing on the attached document indicates a date, but the allegedly incorrect tradeline shows reporting ending in February 2012.  The letter does not inform Ocwen, as Plaintiff claims, “that he would dispute the inaccuracy through the credit reporting agency as well.” (Opp., at 1.)  Nothing in the letter alerted Ocwen to the existence of two tradelines.  Contrary to Plaintiff’s assertion, Ocwen’s March 20, 2013 letter does not acknowledge receiving a dispute from Equifax.  (Doc. 101-9).  Instead, it acknowledges receiving Plaintiff’s direct dispute.  Ocwen responded to Plaintiff’s dispute with a letter advising him that the 2012 reporting – which is what Plaintiff had attached to his letter – was correct and that the foreclosure had been halted.[3]  (Doc. No. 101-7).  As Plaintiff admits, Ocwen was

---

[2] Plaintiff has no private right of action for the handling of a dispute sent directly to Ocwen because “[n]o private cause of action exists pursuant to subsections of FCRA other than subsection (b).” *Taylor v. First Premier Bank,* 841 F. Supp. 2d 931, 933 (E.D. Va. 2012) (citing 15 U.S.C. § 1681s-2(c)); *Saunders v. Branch Banking and Trust Co. of VA,* 526 F.3d 142, 149 (4th Cir. 2008) (“FCRA explicitly bars private suits for violations of § 1681s-2(a).”).  Instead, a furnisher’s duty to investigate is not triggered until it receives notification of a dispute from a consumer reporting agency (“CRA”).  *Mavilla v. Absolute Collection Serv.,* 539 Fed. Appx. 202, 208 (4th Cir. 2013) (unpublished).

[3] Because the tradeline attached to Plaintiff’s letter was from 2012, Ocwen understood he was asking about the 2012 reporting and so responded to advise him that reporting was correct.  It is nonsensical to suppose Plaintiff was complaining about March 2013 reporting, which would not have occurred as of March 19th.  At this point, the reporting that would form the basis of Plaintiff’s 2014 disputes (*i.e.*, late in June, July, October and December 2013) was in the future.

correctly reporting the status of Plaintiff's loan in March 2013.  Plaintiff did not contact Ocwen again about the 2012 reporting.

The only evidence of the contents of the March 2013 ACDV is an Equifax document – a document Ocwen never saw and which is inadmissible hearsay.[4]  There is no admissible evidence to show that Ocwen verified the account as past due and in foreclosure.  Plaintiff's citation is to his letter, which does has nothing to do with the ACDV or Ocwen's response to Equifax.  The only admissible evidence shows that Ocwen received and responded to an ACDV with dispute code 0001 (not his/hers). (Doc. No. 101-22, OLS 1664-65).[5]  Plaintiff contends that his concurrent direct dispute alerted Ocwen to the "inaccuracy of this specific tradeline."  But this is not a "fact" and there is no citation to the record to support it.  It is nothing more than Plaintiff's speculation and/or legal argument, neither of which can be used to oppose a motion for summary judgment.   Moreover, Plaintiff's letter directed Ocwen to a *2012* tradeline, which undisputedly was reported accurately. Plaintiff admits he defaulted and was in foreclosure status in 2012.  Nothing in the record shows that Ocwen knew, or had any reason to know, that Equifax was reporting two tradelines for the same loan.

In October 2013, Plaintiff claims he made a phone call to Ocwen to verify that Ocwen was not reporting him as late for several months in 2013.  (Doc. No. 101-2, 41: 15-19).  Plaintiff

---

[4] Accordingly, this Court should disregard this document. The document is offered to prove the truth of the matter stated therein, *i.e.* to prove that Ocwen reported inaccurate information regarding Plaintiff.  Plaintiff is not an employee of Equifax, let alone qualified to lay a foundation for the introduction into evidence of an Equifax business record.  *See Cruz v. MRC Receivables Corp.*, 563 F. Supp. 2d 1092 (N.D. Cal. 2008); *Baker v. Capital One Bank*, No. CV 04-1192-PHX-NVW, 2006 WL 173668 (D. Ariz. Jan. 24, 2006) *aff'd sub nom*, *Baker v. Equifax Info. Servs., LLC*, 346 F. App'x 219 (9th Cir. 2009).

[5] Plaintiff's ACDVs always included the dispute code 0001, indicating this account was not his – which of course is utterly untrue.  This dispute was frivolous.

himself identifies October 2013 as "when this all first started." *Id*.[6]  According to Plaintiff, Ocwen informed him that its records showed he was not late in any month except March, 2013. *Id*.  Beginning in October 2013, Ocwen reported the compliance code XB –"consumer disputes, reinvestigation in progress."  (Doc. No. 95-4 ("Ulzheimer Report"), 14-16).  Plaintiff was not turned down for credit during this time period on the basis of his Equifax report.[7]

**B.     The March 2014 Dispute**.

        On March 19, 2014, Plaintiff sent a letter to Ocwen complaining that Equifax was (1) showing his account as 120 days late in the months of June, July, October and December 2013, and (2) incorrectly reporting the balance.  (Doc. No. 101-19, OLS 566-67).  The letter does not mention a foreclosure.  The tradeline attached to the letter likewise does not show a foreclosure. It shows the account as disputed.  Plaintiff sent a copy of the letter to the CFPB.  The letter did not advise Ocwen that Equifax was reporting the account twice, that there were duplicate accounts, or that the tradeline appeared twice on Equifax's reports.  Contrary to Plaintiff's contention, Ocwen responded substantively to both his dispute and the dispute from the CFPB. Ocwen responded on April 19, 2014 to Plaintiff's letter and on April 8, 2014 to the CFPB.  (Doc. No. 101-14, 117:9-118:6; Doc. No. 95-2, p. 156).  Ocwen advised Plaintiff that it had sent a request to the CRAs to correct any discrepancy in the Loan balance – responding directly to Plaintiff's dispute about the balance – and told him that it would provide him with an account

---

[6] Ocwen's records do not show a phone call in October 2013.  The Complaint identifies January 2014 as the first time Plaintiff discovered that he was being reported late for several months in 2013.  (Compl. ¶¶ 7-8.)  The Complaint does not mention a March 2013 dispute.  Plaintiff's complaint to the CFPB – forwarded to Ocwen – indicates that he made the discovery "a few weeks" prior to March 26, 2014.  (Doc. No. 101-26, OLS 1720).  In short, nothing in the record indicates that Plaintiff ever had an issue with Ocwen's March 2013 investigation.

[7]  The only application identified in 2013 is the Embrace application on June 17, 2013. Admittedly, however, Embrace pulled Plaintiffs Trans Union and Experian reports – neither of which was reporting the duplicate Ocwen tradeline or a foreclosure.

payment history.  *Id.*  Notably, neither the letter nor the attached tradeline mention a foreclosure. Similarly, Plaintiff's letter to the CFPB never mentioned a foreclosure.

Ocwen also responded to an ACDV – identified with the control number 5125 – on April 24, 2014.  Ocwen's response modified the account to reflect that it was current, with a zero balance past due, modified the payment history profile, and verified that the payment rating should be blank because Plaintiff was current.  Plaintiff does not claim the modifications in the ACDV response were inaccurate.  Ocwen's response directly addressed the dispute submitted – account status, payment history profile, and payment rating.  Ocwen was not asked to address the "method of payment" or the foreclosure.  In any event, Ocwen reported the account as current to Equifax – a status plainly inconsistent with "5 or more payments past due."  There is no admissible evidence in the record or proof that, after Ocwen responded to this ACDV, Equifax reported the tradeline with the foreclosure or past due payments.  Even if there were, Equifax's failure to correct the account to "current" is not Ocwen's fault.  The only evidence is that Equifax was reporting a second tradeline it never updated and that Ocwen had no knowledge of.[8]

It was during this time frame, shortly after the March 2014 dispute, that Plaintiff began applying for credit.  In May 2014, he and had a phone call with a Quicken Loans representative. (Doc No. 101-2, 61:23 – 63:9). When he told Quicken Loans he was having problems with his mortgage on his credit report, Quicken Loans ended the loan application. *Id.*  He continued with his application and was turned down, although Quicken Loans never looked at his Equifax report. (*Id*. 66:8-20).  Also in May 2014, Plaintiff applied for a home loan with OCFCU. (Doc. No. 101-36, 16:22-17:16).  Plaintiff did not proceed to an application due to the reported foreclosure, but an OFCFU representative testified that if he had, he might have been denied for

---

[8]Ocwen had no duty to send an AUD.  Section 1681s-2(b)(1)(E)  of the FCRA sets forth the only duties of a furnisher in responding to an ACDV.

any number of other reasons, even without a foreclosure appearing.[9] (Doc. No. 101-37, 28:2-7). Indeed, during this time period, Plaintiff's report showed eleven adverse credit lines, including tax liens, which admittedly adversely affected his credit score. (*Id.* 32:6-9). Contrary to Plaintiff's claims, the tax liens are not "attributable" to "Ocwen's erroneous credit report." (Opp., at 9.)  Plaintiff testified the tax liens were created as a result of his wife cashing in her 401K to pay medical bills.  He admits that Ocwen had no part in creating the tax liability.  (Doc. No. 101-2, 80:22-81:1).

## C.   The June 2014 Dispute

There is no evidence that Plaintiff kept in "regular contact" with Ocwen.  Instead, the evidence is that he called Ocwen once in May and again on June 9, 2014.  During the June 9th phone call, Plaintiff inquired about the "last 12 months and the payment due on the account" and asked for a letter showing him current in 2013.  Nothing indicates that Ocwen refused to provide a letter.  On June 20, 2014, Ocwen responded to an ACDV with a control number ending in 1129.  Again, Ocwen responded to the dispute by indicating the account was "current," with a past due balance of $0, and updating the payment history profile – all of which Plaintiff agrees is accurate.  This ACDV did not identify the account as in foreclosure.  (Doc. No. 101-33.)

On June 26, 2014, the CFPB requested additional information from Ocwen, specifically whether Plaintiff was late in March, June, July, October and December 2013.  Nothing about this request indicates that the CFPB was able to "review Plaintiff's dispute and determine that an Ocwen tradeline indicated Plaintiff was in foreclosure."  (Opp., at 6.) The word "foreclosure" is

---

[9] OCFCU approved Plaintiff for a car loan, although it knew about the foreclosure as a result of his previous application for a home loan.  Indeed, OCFCU approved Plaintiff despite the existence of this litigation.  Accordingly, his relationship clearly did assist him despite the foreclosure.  (Napier Tr. 44:14-24 ("Have known Dave for a long time and believe he will pay… Value of the van will cover most of this loan if push comes to shove."))

not mentioned.  The Court should reject Plaintiff's attempt to avoid the fact that there is no admissible evidence showing that Equifax continued to report the foreclosure.  Ocwen's response does not state that Plaintiff was delinquent. (Doc. No. 101-27, OLS 1737).   Instead, it reported that Plaintiff was current in the months of March, June, July, October and December 2012.  *Id.*  It is obvious that this is a typographical error.  In any event, Ocwen provided a payment reconciliation history showing all payments on the loan.  On June 30, 2014, the CFPB requested that Ocwen provide evidence that it had reported Plaintiff as current in the mentioned months.  On July 2, 2014, Ocwen sent an AUD to all CRAs showing Plaintiff as current for all of 2013, not in foreclosure, and the account with a zero balance.  (Doc No. 101-32.)

The undisputed evidence is that Ocwen did not know Equifax was reporting more than one tradeline.  Accordingly, it did not know that there was an "incorrect" tradeline to be deleted.  The CFPB investigation did not "reveal[] to Ocwen the incorrect tradeline it reported regarding Plaintiff."  (Opp., at 7.)  There is no evidence to support this notion.  Plaintiff does not dispute that Ocwen only ever reported one tradeline; he even agrees that the Ocwen tradeline that Ocwen was reporting was correct. (Opp., at 1.)  It simply is untrue that Ocwen failed to investigate any of Plaintiff's or the CFPB's evidence of inaccuracy.  The record shows that Ocwen responded to the CFPB and sent an AUD on July 2nd advising all CRAs that the account was current.

Plaintiff filed suit on July 14, 2014.  He was not turned down for credit at any time after the June or August disputes.  Equifax had deleted the tradeline by September 2014 at the latest.[10]  Plaintiff was approved for refinancing in May 2015 with Quicken Loans.  Again, there is nothing more than speculation to support the notion that it was only the Ocwen tradeline preventing

---

[10] Plaintiff complains that Equifax deleted both tradelines.  But it was not Ocwen's decision and it is nothing more than speculation that Ocwen's actions had anything to do with Equifax's decision.

Plaintiff from refinancing.  Indeed, by 2015, not only had the duplicate Ocwen tradeline been deleted, but Plaintiff had cleared 10 other adverse tradelines.

### D.    Plaintiff's Alleged Emotional Distress

Plaintiff cites at length from his deposition transcript, purporting to show that he has suffered emotional distress damages.  (Opp., at 9-10.) This testimony can be summarized as follows:  Plaintiff has been "a little snappy around the house" and has stopped doing landscaping and other home improvement projects.  In addition, he is afraid to mention the credit issues to his wife evidently because if he does, "it would be a never-ending conversation 24 hours a day." Finally, he is "more stressed out."    However, Plaintiff admits that he has had no trouble sleeping.  (Doc. No. 101-2, 87:14).  Plaintiff also admits that he is not seeing a doctor as a result of this case (*Id.* 89:9-11).  Finally, Plaintiff seems to be claiming that obtaining his credit scores on a monthly basis was stressful.  (Opp., at 9-10.)  However, Plaintiff's credit scores were not affected by the Ocwen tradeline.  After October 2013, the account was reported as disputed and, therefore, did not affect his credit scores.  The only evidence is that Plaintiff's low credit scores were caused by other adverse tradelines, including two tax liens.[11]

### III.    ARGUMENT

### A.    Plaintiff's claim that Ocwen Willfully Violated the FCRA Fails as a Matter of Law.

Plaintiff hopelessly muddles the Supreme Court's well-established two-part framework for determining whether a defendant has acted willfully under the FCRA.  To be clear, the first of the two inquiries assesses whether the defendant's attempts at FCRA compliance were

---

[11] Inexplicably, Plaintiff also complains that Ocwen reminded him on a number of occasions that he had a balloon payment due.  (Opp., at 10.)  But the notices Plaintiff identifies were not sent after Ocwen received notice that Plaintiff was being prevented from refinancing.    Plaintiff's March 2013 dispute said nothing at all about refinancing.  The record shows that the first reference to refinancing occurred on March 26, 2014 – *after* Ocwen sent the February 2014 notice.  (Doc. No. 101-26, OLS 1720.)

"objectively unreasonable." *Safeco*, 551 U.S. at 69-70.  This inquiry is not concerned with technical compliance; even if a technical violation has occurred, "a violation does not cross the willfulness threshold just because a defendant's interpretation is erroneous; it must instead be 'objectively unreasonable.'"  *Long v. Tommy Hilfiger U.S.A., Inc.*, 671 F.3d 371, 376 (3d Cir. 2012) (citing *Safeco*, 551 U.S. at 69).  Second, only if the Court determines that Plaintiff has established objective unreasonableness is the issue of reckless disregard relevant.

       1.    <u>Ocwen's actions were not objectively unreasonable.</u>

Plaintiff's contention appears to be that Ocwen's actions were objectively unreasonable because it failed to review Plaintiff's direct disputes or the CFPB's investigation when it received ACDVs from Equifax.  (Opp., at 19.)  However, there is no evidence – as opposed to Plaintiff's speculation – to demonstrate that Ocwen never reviewed Plaintiff's direct disputes. Plaintiff also has no evidence whatsoever that Ocwen has adopted a policy that requires its personnel to investigate only the dispute code provided by the CRA, regardless of the circumstances.  On the contrary, the evidence is that Ocwen had in place procedures to conduct proper investigations, including access to Ocwen and Litton databases, and that it followed those procedures.  Plaintiff's assertion that Ocwen cannot rely on its policies and procedures lacks merit.  It is Plaintiff's burden to prove willfulness and Plaintiff's obligation to move to compel production of records he believed necessary to his case.  *See*, *A.J. v. Tanksley*, 2015 U.S. Dist. LEXIS 25375, 7-8 (E.D. Mo. Mar. 3, 2015) (Plaintiffs did not move to compel production of radio records and, without further foundation, the absence of the recording is not admissible); *Faust v. Comcast Cable Communs. Mgmt., LLC*, 2014 U.S. Dist. LEXIS 95790, 13-14 (D. Md. July 15, 2014).  Moreover, Ocwen's Rule 30(b)(6) designee, testified at length about the training given to employees and the reasonableness of Ocwen's investigation procedure, including of the

ACDVs at issue in this case.  (Doc. No. 101-11, 34:1 – 35:1).  Accordingly, Plaintiff has no evidence that Ocwen's actions or procedures were objectively unreasonable.

2.    <u>Plaintiff has insufficient evidence to prove Ocwen acted with reckless disregard for his rights under the FCRA</u>

Even assuming that the Court finds that Ocwen's procedures were unreasonable, Ocwen still is entitled to summary judgment.  There is no evidence to support Plaintiff's claim that Ocwen's conduct amounted to a reckless disregard of its obligations.  Under this standard, the evidence must show an "intention to thwart consciously [plaintiff's] right to have inaccurate information removed promptly from his report."  *King v. Asset Acceptance*, 452 F. Supp. 2d at 1272, 1280 (N.D. Ga. 2006); *Rambarran*, 609 F. Supp. 2d at 1270 (the plaintiff must offer evidence, beyond his belief at deposition, that the furnisher's investigation was unreasonable); *Thomas v. Gulf Coast Credit Servs.*, Inc., 214 F. Supp. 2d 1228, 1238 (M.D. Ala. 2002) (granting summary judgment because "fail[ure] to produce immediate eradication of inaccurate information" is not a knowing and conscious disregard for the plaintiff's rights).

Plaintiff simply cannot produce evidence that Ocwen consciously intended to thwart his right to have inaccurate information removed from his credit report in a prompt manner.  Again, Plaintiff asserts that Ocwen failed to consider the information provided by his direct disputes. But he admits that he never advised Ocwen that Equifax was reporting two tradelines. Moreover, the record establishes Ocwen took steps to address Plaintiff's concerns about Equifax's reporting, including by correcting the ACDV to show the account as current and updating the payment history profile.[12]  Equifax's failure to correct its reports cannot be laid at

---

[12] Nothing in Plaintiff's or the CFPB's 2014 disputes alerted Ocwen that Plaintiff was disputing the foreclosure reporting.  The foreclosure was not mentioned.  Moreover, Ocwen reasonably understood the March 2013 communication as relating to reporting in 2012.  Plaintiff never followed up with Ocwen expressing dissatisfaction with its response to him in March 2013 so Ocwen had no reason to suppose that he continued to dispute the reporting.

Ocwen's door.  The record also demonstrates that Ocwen promptly responded to the CFPB's concerns, sending AUD on July 2, 2014 advising all CRAs that Plaintiff's account was current, not in foreclosure or past due.  Again, Ocwen had no notice that Equifax was reporting a second tradeline that needed to be deleted.  Instead, the only evidence is that Ocwen correctly reported Plaintiff's account at all times – as Plaintiff himself admits.  (Opp., at 1.)

In the case before this Court, Plaintiff does not have any evidence that Ocwen concealed information, deviated from its own procedures, or refused to correct an admitted error.  Because Ocwen accurately responded to Plaintiff's disputes, updating the account as current, and ultimately sent an AUD telling the CRAs the account was current, not in foreclosure or past due, Ocwen could not have "consciously disregarded" Plaintiff's rights under the law. *See Thomas*, 214 F. Supp. 2d at 1238 ("fail[ure] to produce immediate eradication of inaccurate information" is not a knowing and conscious disregard for the plaintiff's rights).  Consequently, Ocwen is entitled to summary judgment on Plaintiff's claim for a willful violation of the FCRA.

**B.**     **Plaintiff Cannot Demonstrate a Negligent Violation of the FCRA.**

1.     <u>Plaintiff has no evidence of actual damages</u>.

Even if Ocwen technically violated its duty to reasonably investigate the Plaintiff's credit dispute, summary judgment is appropriate on Plaintiff's claim for negligent violation of the FCRA because he has not presented evidence to establish actual damages.  *Sarver v. Experian Info. Solutions, Inc.*, 390 F.3d 969, 971 (7th Cir. 2004) (no need to reach the issue of reasonable procedures because plaintiff's claim failed for another reason – lack of damages).  To survive summary judgment, a plaintiff asserting a violation of the FCRA must provide some evidence from which reasonable fact finder could conclude that he suffered actual damages *as a result of* defendant's actions.  Moreover, once a furnisher receives notice from a CRA of the consumer's

dispute, it has up to thirty days to complete all investigations regarding the consumer's dispute. 15 U.S.C. § 1681s-2(b)(2).  Thus, "liability cannot attach until a furnisher violates its duty to properly []investigate," and "no violation can occur until after the 30-day deadline for completing a proper []investigation has expired."  *Mavilla*, 539 Fed. Appx. at 208.

a.   *Plaintiff has no actual damages from credit denials.*

As an initial matter, Plaintiff did not suffer any credit denial as a result of Ocwen's alleged failure to properly investigate the March 2013 dispute.  Plaintiff's only credit application during this time period was not denied due any issue with Plaintiff's Equifax report.  Instead, Embrace Home Loans pulled only Plaintiff's TransUnion report, which did not reflect the "foreclosure" or past due reporting created by Equifax.  Similarly, Plaintiff has no evidence of damages stemming from Ocwen's supposed failure to adequately investigate his June 20, 2014 or August 8, 2014 disputes.  Ocwen promptly notified all CRAs by an AUD sent well within the thirty day investigation period, that Plaintiff's account was current, not in foreclosure and not delinquent.  Moreover, Plaintiff was not turned down for credit after June 2014.  Instead, the only evidence is that he filed this lawsuit in July 2014, Equifax had removed the Ocwen tradeline by September 2014, and Plaintiff was approved for a refinance in May 2015.

With respect to the March 2014 dispute, the undisputed evidence shows that Plaintiff's application with Quicken Loans was truncated by his own statements to the mortgage banker that was having problems with his mortgage on his credit report.  It is absolutely not true that Plaintiff "was denied over the phone by Quicken Loans because of the foreclosure notation on his credit report."  (Opp., at 17.)  Instead, the only evidence is that Quicken Loans accessed a TransUnion report in denying his application.  Notably, the letter he received from Quicken Loans does not mention "foreclosure," but instead states its reasons for denial as

"Current/previous slow payments, judgments, liens, or BK." (Opp. at 17.) Similarly, the evidence does not demonstrate that the foreclosure was the "sole reason Plaintiff was denied a refinance" by OCFCU. (*Id.*) Instead, Steve Napier testified that there were "too many variables" to be able to say whether Plaintiff would have obtained the loan had the foreclosure not appeared. (Doc No. 101-36, 24:17-25:6). In any event, there is no evidence that Ocwen's investigation and responses to ACDVs *caused* Equifax to continue reporting the second, incorrect tradeline. *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001) (without a causal relation between the violation of the statute and the loss of credit, a plaintiff cannot prove actual damages under the FCRA). On the contrary, the only evidence is that Ocwen reported the account correctly, advised Equifax the account was current, and that Equifax reported the tradeline correctly. It is Equifax's actions in continuing to report the second tradeline – an issue Ocwen knew nothing about – that caused Plaintiff's damages, if any.

> b.      *Plaintiff has no evidence of emotional distress damages.*

Plaintiff makes a feeble effort to support his claim for emotional distress damages, pointing to his testimony that he spent a lot of time addressing his disputes with Ocwen and it caused him stress. (Opp., at 18-19.) Plaintiff offers nothing more than conclusory statements that he was "stressed," without any specifics, any physical manifestation of stress or any corroboration. Applying the Fourth Circuit case law Plaintiff himself cites, his claims are insufficient as a matter of law. As the Fourth Circuit has held, emotional distress is "easily susceptible to fictitious and trivial claims." *Price v. City of Charlotte*, 93 F.3d 1241, 1250 (4th Cir. 1996). For this reason, a plaintiff must "reasonably and sufficiently explain the circumstances of the injury and not resort to mere conclusory statements." *Id.* The factors to be considered include evidence corroborating the testimony of the plaintiff, the degree of emotional

distress, medical attention resulting from the emotional duress, and psychiatric or psychological treatment. *Sloane v. Equifax Information Svs., Inc.*, 510 F.3d 495, 503 (4th Cir. 2007); *Ross v. Federal Deposit Ins. Corp.*, 625 F.3d 808, 818 (4th Cir. 2010) (presented only with Ross's conclusory assertions, no reasonable jury could find that the defendant's debt collection practices were the proximate cause of his emotional distress); *Cousin v. Trans Union Corp.*, 246 F.3d 359, 370-71 (5th Cir. 2001) (holding, in the context of the FCRA, that a claim for emotional distress must be supported by evidence of genuine injury requiring "a degree of specificity which may include corroborating testimony or medical or psychological evidence.")

Plaintiff's evidence of alleged emotional distress fails to meet the Fourth Circuit's standard. His testimony is conclusory, amounting only to statements that he suffered "stress" and was "snappy around the house." He offers no corroborating testimony. *See*, *Sampson v. Equifax Info. Servs.*, *LLC*, No. CV204-187, 2005 U.S. Dist. LEXIS 19240, 2005 WL 2095092, *5 (S.D. Ga. Aug. 29, 2005) (concluding that an FCRA plaintiff "must produce some form of independent, corroborating evidence of her humiliation and embarrassment at trial to recover compensatory damages for emotional distress"). Moreover, there is no evidence Plaintiff suffered any physical manifestation of stress, no evidence he saw a doctor, or even that he had difficulty sleeping. In short, Plaintiff's conclusory testimony is insufficient, as a matter of law, to demonstrate true demonstrable emotional distress.

2.    Ocwen' Investigation was Reasonable as Matter of Law

When a consumer disputes credit information to a CRA, the CRA must advise the furnisher that a dispute exists and provide the furnisher with "all relevant information regarding the dispute that the agency has received from the consumer." 15 U.S.C. 1681i(a)(2)(A). Once notified by the CRA, the furnisher must conduct a reasonable investigation with respect to the

disputed information.  *Johnson v. MBNA America Bank, N.A.*, 357 F.3d 426, 431 (4th Cir. 2004).

The reasonableness of the investigation is to be determined by an objective standard.  *See*

*Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1156-57 (9th Cir. 2009); *Chiang v.*

*Verizon New Eng., Inc.*, 595 F.3d 26, 37 (1st Cir. 2010) (burden of showing the investigation was

unreasonable is on the plaintiff).  What is a reasonable investigation may vary depending on the

circumstances.  The statute is clear that the investigation is directed to the information provided

by the CRA.  A CRA's notice informs a furnisher of "the nature of the consumer's challenge to

the reported debt, and it is the receipt of this notice that gives rise to the furnisher's obligation to

conduct a reasonable investigation." *Gorman*, 584 F.3d at 1157.  Accordingly, the central inquiry

when assessing a consumer's claim under § 1681s-2(b) is "whether the furnisher's procedures

were reasonable in light of what it learned about the nature of the dispute from the description in

the CRA's notice of dispute." *Id*.  If a CRA fails to provide "all relevant information" to a

furnisher, then the consumer has a private cause of action against the CRA but not against the

furnisher. *Chiang*, 595 F.3d at 38 (citing 15 U.S.C. §§ 1681i(a)(2)(A), 1681n-o).  In the absence,

of "issues not identifiable from the face of its records**,** the furnisher need not do more that verify

that the reported information is consistent with the information in its records."  *Westra v. Credit*

*Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. Ill. 2005).

Plaintiff claims that Ocwen had information in its records that should have alerted it to

the fact that Equifax was reporting two tradelines.  (Opp., at 15-16.)  But Plaintiff fails to

identify any actual evidence in the record supporting his claim.  Plaintiff admits he never advised

Ocwen that Equifax was reporting two tradelines.  That information appears nowhere in any

letter Plaintiff or the CFPB sent to Ocwen; it appears that not even Plaintiff was aware that there

were two tradelines despite having access to his Equifax report.  Had he known, presumably he

would have told Equifax about the issue.  Accordingly, Ocwen cannot be faulted for failing to discover that Equifax was reporting two tradelines or for failing to direct Equifax to delete a tradeline about which it had no knowledge.  (Opp., at 23.)  Ocwen's only duty was to verify the information provided by the CRA.  *See Westra*, 409 F.3d at 827.  Ocwen reasonably investigated the dispute code 106 and advised Equifax that Plaintiff's account was current, not past due and corrected the payment history and payment rating.  This is not disputed.

Plaintiff complains further that Ocwen's investigation was unreasonable because it had information in its files related to Plaintiff's direct disputes that somehow should have alerted it to the duplicate tradeline.  Again, nothing in Plaintiff's direct disputes, or the information from the CFPB, alerted Ocwen to the existence of two tradelines.  Plaintiff's direct disputes, as well as those received from the CFPB, were directed to Plaintiff's claim that Equifax was reporting him delinquent for four months in 2013.  The CFP did not "identify the issue [of the duplicate tradeline] immediately."  (Opp., at 16.)  Instead, the CFPB asked Ocwen to provide information to show Plaintiff was current for the months of June, July, October and December 2013.  Ocwen's response, although it contained a typographical error, confirmed that Plaintiff was current in 2013.[13]  There is not a scintilla of evidence in the record to show that the CFPB was able to "determine that an Ocwen tradeline indicated Plaintiff was in foreclosure."  (Opp., at 16.)  Nothing from the CFPB ever even *mentioned* a foreclosure.

Moreover, there is no evidence in the record as to the date of the information attached to the CFPB's June 30, 2014 request or any indication of its contents aside from the fact that it showed delinquencies in 2013.  In any event, on July 2nd, two days later, Ocwen sent an AUD

---

[13] Plaintiff willfully distorts the record when he claims that Ocwen reported to the CFPB that Plaintiff was delinquent in 2012.  Instead, Ocwen reported Plaintiff was *current* for June, July, October and December *2012*, an obvious typographical error.  Ocwen provided a complete payment history to the CFPB that would have cleared up any confusion resulting from the typo.

notifying all CRAs that the account was current, not past due and not in foreclosure. Plaintiff's complaint that the AUD did not delete the inaccurate tradeline lacks merit; there is no requirement under the FCRA that a furnisher delete an account when it can be modified to be accurate, which is what occurred here. Moreover, there is no evidence that Ocwen *knew* about the duplicate tradeline, which only Equifax ever reported. Accordingly, the fact that Ocwen's investigation did not unearth the duplicate tradeline does not render it unreasonable.

## C.   Plaintiff's State Law Claims Lack Merit

1.   Plaintiff Has no Evidence of a Tort Duty to Support his Negligence Claim.[14]

Plaintiff fails to address Ocwen's argument that Plaintiff has failed to show that Ocwen provided services beyond those "normally extant in a borrower-servicer relationship." *Carter v. National City Mortg., Inc.*, 2015 U.S. Dist. LEXIS 25766, *18 (N.D. W.Va. March 3, 2015) (no tort duty exists unless Plaintiff can show "special relationship"). The only evidence in this case is that Ocwen provided services normally provided by a loan servicer – in this case responding to credit disputes and providing regular monthly credit reporting to CRAs. *Id.*, 2015 U.S. Dist. LEXIS 25766, *19 (rejecting negligence claim and finding that the only service provided was to review application for loss mitigation, which is not a service that goes beyond those normally provided). Because no "tort duty" existed, Ocwen cannot be liable for common law negligence.

2.   Plaintiff's Claims of Outrage and Equity Abhors a Forfeiture Fail.

Despite Plaintiff's protestations to the contrary, Ocwen's conduct was not so outrageous as to exceed the bounds of decency. There is no evidence that Ocwen ever "verified two

---

[14] Ocwen has not and does not contend that it had no duty to investigate direct consumer disputes. (Opp., at 20.) On the contrary, Ocwen had a duty under both the Dodd Frank Wall Street Reform and Consumer Protection Act and the FCRA to respond to Plaintiff's direct disputes. It did so in a timely and responsive manner. Plaintiff simply cannot assert a private cause of action under the FCRA resulting from Ocwen's investigation of his direct disputes or the information received from the CFPB.

tradelines" or that Plaintiff made "repeated showings" that Ocwen was reporting inaccurate information.   (Opp., at 21.)   Even if there were evidence that Ocwen's investigation was unreasonable, it would be insufficient to rise to the level of outrageous conduct. *Travis v. Alcon Labs., Inc.,* 504 S.E.2d 419 (W.Va. 1998) (defendant's conduct must be more than unreasonable; it must truly offend community notions of acceptable conduct); *Burghy v. Dayton Racquest Club, Inc*., 695 F. Supp.2d 689, 707 (S.D. Ohio 2010) (obtaining credit report under false pretenses not actionable when the intentional infliction claim merely duplicated the FCRA claim).  Moreover, for the same reasons Plaintiff cannot show that he suffered emotional distress, he cannot prevail on his claim for outrage.    Plaintiff's claims that he was "stressed" and "snappy" simply are insufficient to show he suffered emotional distress "so severe that no reasonable person could be expected to endure it." *Travis*, 504 S.E.2d.

Finally, Plaintiff asserts that it is not yet certain that he will be able to refinance his mortgage and, therefore, forfeiture is still a possibility.  Even if "equity abhors a forfeiture" were a cause of action, which it is not, any failure of Plaintiff's refinancing with Quicken will not have been caused by Ocwen's conduct.  At this juncture, Plaintiff's credit reports admittedly contain no derogatory Ocwen tradeline.   Accordingly, any future forfeiture of the property because Plaintiff is unable to refinance cannot be Ocwen's fault.

## IV.   CONCLUSION

For the foregoing reasons, Defendant Ocwen Loan Servicing, LLC, respectfully requests that this Court grant its Motion for Summary Judgment, enter judgment against Plaintiff on all counts of the Complaint asserted against Ocwen, and grant it such other relief as it may deem appropriate.

Dated:  October 5, 2015                    Respectfully submitted,

                                           OCWEN LOAN SERVICING, LLC


                                           By:  ___/s/ Jason E. Manning_____
                                                            Of Counsel

Jason E. Manning (W. Va. Bar No. 11277)
Jonathan M. Kenney (W. Va. Bar No. 12458)
Counsel for Ocwen Loan Servicing, LLC
Troutman Sanders LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone:  (757) 687-7564
Facsimile:  (757) 687-1524
E-mail:  jason.manning@troutmansanders.com
E-mail: jon.kenney@troutmansanders.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
Beckley Division**

**DAVID M. DAUGHERTY,**

      **Plaintiffs,**

      **v.**                                 **Civil Action No. 5:14-cv-24506**

**EQUIFAX INFORMATION
SERVICES, LLC, and OCWEN
LOAN SERVICING, LLC,**

      **Defendants.**

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of October, 2015, I electronically filed the foregoing

*Reply in Support of Motion for Summary Judgment* with the Clerk of the Court using the

CM/ECF System which will then send a notification of such filing (NEF) to the following:

**Counsel for Plaintiff**
Ralph C. Young, Esq.
Christopher B. Frost, Esq.
Steven R. Broadwater, Jr., Esq.
Jed R. Nolan, Esq.
HAMILTON, BURGESS, YOUNG & POLLARD, PLLC
P.O. Box 959
Fayetteville, WV 25840
E-mail: ryoung@hamiltonburgess.com
E-mail: cfrost@hamiltonburgess.com
E-mail: sbroadwater@hamiltonburgess.com
E-mail: jnolan@hamiltonburgess.com

/s/ Jason E. Manning
Jason E. Manning (W. Va. Bar No. 12458)
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone: (757) 687-7562
Facsimile: (757) 687-1524
E-mail: jason.manning@troutmansanders.com
*Counsel for Ocwen Loan Servicing, LLC*

27063425                  22