IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
Beckley Division

DAVID M. DAUGHERTY,

      **Plaintiffs,**

v.                                            Civil Action No. 5:14-cv-24506

EQUIFAX INFORMATION
SERVICES, LLC, and
OCWEN LOAN SERVICING, LLC,

      **Defendants.**

## DEFENDANT'S MOTION IN LIMINE # 1
## TO EXCLUDE PLAINTIFF'S WILLFULNESS CLAIM
## AND DEMAND FOR PUNITIVE DAMAGES

Defendant Ocwen Loan Servicing, LLC ("Ocwen"), by and through counsel, moves *in limine* for entry of an order by this Court determining that Ocwen's actions were based upon an objectively reasonable interpretation of the Fair Credit Reporting Act ("FCRA") and to prevent Plaintiff David M. Daugherty ("Plaintiff") from presenting any testimony, evidence, or argument that Ocwen willfully violated the FCRA and that he is entitled to punitive damages. The Court has not yet made the requisite threshold legal determination that Ocwen's actions were based on an objectively unreasonable interpretation of the FCRA. Absent such a determination, under binding Supreme Court precedent, the issue of willfulness cannot go to the jury and Plaintiff's associated demand for punitive damages should be excluded from trial.

### INTRODUCTION

Pursuant to the Supreme Court's decision in *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007), Plaintiff's FCRA willfulness claim may not go to a jury unless and until the Court, as gatekeeper, decides whether Ocwen's actions were based on an objectively unreasonable

interpretation of the FCRA. The Court has not made this threshold determination. Moreover, there is simply no evidence in the record to support this initial prong of the *Safeco* two-part test. Because the Court must find that Ocwen's policies and procedures are objectively reasonable, Plaintiff's willfulness claim cannot go to the jury. To the extent Plaintiff argues that Ocwen's employees deviated from Ocwen's objectively reasonable policies and procedures, any deviation from such policies by an employee cannot warrant punitive damages where there is no ratification by an officer or director.

Lastly, even if Plaintiff could show that Ocwen's procedures were objectively unreasonable – which Ocwen disputes – Plaintiff will not be able to prove the second "subjective" prong of the *Safeco* two-part test. Although it does not appear that Plaintiff is arguing that Ocwen knowingly violated the FCRA, Plaintiff should be precluded from making any such argument because there is no evidence whatsoever that Ocwen *knew* that Equifax was reporting a duplicate tradeline and intentionally disregarded this information in an attempt to thwart Plaintiff's right to have the information removed from his credit report. Moreover, there is no evidence that Ocwen ran a risk of violating the law substantially greater than the risk associated with a reading of the FCRA that was merely careless.

Accordingly, the Court should exclude Plaintiff's claim for willfulness and his associated demand for punitive damages.

**ARGUMENT**

To state a claim for a willful violation of the FCRA, the United States Supreme Court has established a two-part inquiry: (1) objective reasonableness; and (2) subjective intent. *Safeco*, 551 U.S. at 69. A plaintiff can prove subjective intent on either a "knowing" or "reckless" basis. *Safeco*, 551 U.S. at 56-60. Further, punitive damages are only available for willful violations of

2

the FCRA. *See* 15 U.S.C. § 1681n. Thus, if Plaintiff's claim for willfulness is excluded, the Court should also exclude the associated demand for punitive damages. For the reasons stated below, the Court should preclude Plaintiff from presenting any testimony or argument that Ocwen willfully violated the FCRA or that he is entitled to punitive damages.

I. **Plaintiff's Claim for Willfulness Cannot go to a Jury because the Court has not Held that Ocwen's Actions were Objectively Unreasonable and No Evidence Supports such a Ruling.**

   A. The Court must determine, as a matter of law, whether Ocwen's actions were objectively unreasonable.

Under the first prong of *Safeco*, before any willfulness claim can go the jury, the Court must make a legal determination that Ocwen's interpretation of the FCRA was objectively unreasonable. *Safeco*, 551 U.S. at 70 n.20 ("Where, as here, the statutory text and relevant court and agency guidance allow for more than one reasonable interpretation, it would defy history and current thinking to treat a defendant who merely adopts one such interpretation as a knowing or reckless violator."); *Boyd v. CEVA Freight, LLC*, 2013 U.S. Dist. LEXIS 169514, *14 n.2 (E.D. Va. Nov. 27, 2013); *see also Fuges v. Sw. Fin. Servs., Ltd.*, 707 F.3d 241, 248 (3d Cir. 2012) (finding "evidence of defendant's intent or subjective bad faith is irrelevant when there is an objectively reasonable interpretation of the [FCRA]"); *Lee v. Sec. Check, LLC*, 2010 U.S. Dist. LEXIS 82630, *37 (M.D. Fla. Aug. 5, 2010) (consumer must prove that alleged violator acted in accordance with objectively unreasonable reading of the FCRA). Evidence of defendant's intent or subjective bad faith is only relevant if the Court determines that defendant's interpretation of the FCRA is objectively unreasonable. *Fuges*, 707 F.3d at 248. This is the case even if the Court ultimately disagrees with a defendant's interpretation of the FCRA's technical requirements. *Id.* ("[a] company cannot be said to have willfully violated the FCRA if the company acted on a reasonable interpretation of FCRA's coverage").

3

Only the Court is suited to address the factors identified by the Supreme Court in *Safeco* to determine whether a statutory interpretation was objectively unreasonable – whether the interpretation has a foundation in the text of the statute, whether a court of appeals has spoken on the issue, whether the FTC has issued authoritative guidance, and whether the statutory text is "less than pellucid." *Safeco*, 551 U.S. at 70; s*ee Goode v. LexisNexis Risk & Info. Analytics Group, Inc.*, 848 F. Supp. 2d 532, 543 (E.D. Penn. 2012) ("*Safeco* instructs that in determining whether a reading of the statute was reckless, a ***court*** should examine the text of the statute, case law that existed at the time of the alleged violation, and any agency interpretations.") (emphasis added). It is not the role of a jury to make determinations as to the meaning of statutory language or whether "authoritative guidance" exists. Instead, these issues require an analysis of law, similar to that undertaken by a Court construing the meaning of a statute. Courts addressing the issue uniformly have held that the first step of the *Safeco* inquiry is a question of law for the Court.

Because the first step of the *Safeco* inquiry is a question of law, it is a threshold issue that the Court must rule on now – before a jury is empanelled. Absent a ruling by this Court that Ocwen's policies are objectively unreasonable, no argument or testimony regarding willfulness can go to a jury. Because – as set forth below – there is no evidence in this case that Ocwen's policies and procedures are objectively unreasonable, the Court must 1) find as a matter of law that Ocwen's policies and procedures are objectively reasonable, and 2) exclude any testimony or argument to the jury regarding willfulness or punitive damages.

   B. <u>There is no evidence in this case supporting a legal finding that Ocwen's interpretation of the FCRA was unreasonable</u>.

4

Additionally, there is no evidence that could support a legal determination that Ocwen's policies and procedures were objectively unreasonable under the FCRA. The relevant section of the FCRA requires a furnisher to: (1) conduct an investigation when it receives notice of a dispute as to the completeness or accuracy of information it provided to a CRA; (2) review all relevant information provided by the CRA; (3) report the results of the investigation to the CRA; and (4) if the information it provided is incomplete or inaccurate, report those results to all CRAs. 15 U.S.C. §1681s-2(b)(1). Numerous courts, including the Fourth Circuit, have held that the scope of the furnisher's investigation is governed by the dispute information provided by the CRA. *Johnson v. MBNA America Bank, N.A.*, 357 F.3d 426, 431 (4th Cir. 2004) (furnisher must investigate the dispute reported by the CRA); *Alston v. United Collections Bureau, Inc.*, 2014 U.S. Dist. LEXIS 27124 (D. Md. Mar. 4, 2014), *aff'd* 585 Fed Appx. 196 (4th Cir. 2014) (the "reasonable investigation" analysis must consider the scope of what the furnisher was actually provided in the notice of dispute). The FCRA simply does not require a furnisher to investigate or uncover reporting errors made *by the CRAs*. 15 U.S.C. §1681s-2(b)(1) (furnisher required only to investigate the accuracy of information the *furnisher provided to the CRA*); *see, e.g.*, *Grossman v. Barclays Bank Delaware*, 2014 U.S. Dist. LEXIS 20149, *32 (D. N.J. Feb. 19, 2014) (furnisher is not required to take extraordinary means to investigate and discover disputed information that is not in its records).

Ocwen maintains reasonable policies and procedures, based on the text of the statute, as interpreted by the courts, to ensure compliance with the FCRA. Ocwen trains its employees to follow such policies and procedures. (Exhibit A, Lyew Tr. 137:7-138:24.) Ocwen's procedures for dispute investigation are specifically keyed to the language of the statute, as set forth above – they require investigation of the dispute *identified by the CRA* with regard to information

*furnished by Ocwen*. (*Id.* at 20:15-21:22.) Ocwen trains its employees on the e-OSCAR system, trains them to read and understand the dispute codes and how to respond, where to look for information and documents, and provides them access to numerous databases and sources to resolve disputes. (*See id.* at 137:7-138:24.) Ocwen's procedures require its employees to investigate whether the disputed information that *Ocwen furnished* to the CRAs is accurate by investigating all sources of information in Ocwen's possession to determine whether Ocwen has reported an account incorrectly. (*Id.* at 22:7-27:9, 30:4-21, 59:5-10, 156:3-158:10.) These procedures plainly are based on a reasonable interpretation of the statute. Plaintiff cannot point to any Ocwen procedure that is unreasonable, reckless or not justified by an objectively reasonable reading of the FCRA. *See Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1185 (10th Cir. 2013) (no willful violation when there was no evidence that Ocwen's procedures were unreasonable). Plaintiff cannot point to any evidence that Ocwen's procedures were objectively unreasonable. Accordingly, the Court should prohibit Plaintiff from introducing testimony or evidence regarding willfulness or punitive damages at trial.

  C. <u>To the extent Plaintiff's claims are based on an Employee's alleged deviation from Ocwen's objectively reasonable policies and procedures, punitive damages are inappropriate because Ocwen did not ratify or authorize such conduct</u>.

Ocwen's policies were objectively reasonable as a matter of law and any deviation from such policies by an employee cannot warrant punitive damages where there is no ratification by an officer or director.

An employer "should not be required to pay punitive damages unless there was a showing of authorization or ratification by the principal of the alleged wrongs." *Great Atl. & Pac. Tea Co. v. Lethcoe*, 279 F.2d 948, 950 (4th Cir. 1960); *Roberts v. Forrester*, Case No. 02-CV-93, 2003 U.S. Dist. LEXIS 22032, at *12 (W.D. Va. Dec. 4, 2003) ("a principal may be held

6

liable for punitive damages for the acts of an agent only where the act is participated in, or authorized or ratified by, the principal"); *Williams v. Cloverleaf Farms Dairy, Inc.*, 78 F. Supp. 2d 479, 486 (D. Md. 1999) (punitive damages not appropriate as a matter of law "[b]ecause the alleged wrongdoer was not a manager [and] the employer had not authorized or ratified the violations"); *Merchant v. Food Lion, Inc.*, Case No. 89-cv-0378, 1989 U.S. Dist. LEXIS 18102, at *6 (W.D. Va. Dec. 29, 1989) ("A corporation, or any master, may be sued for punitive damages only if it authorizes or subsequently ratifies the tort committed by its employee or servant"). This limitation on punitive damages is recognized in a wide variety of cases, as noted above, and is outlined in the Restatement 2d of Torts:

> Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if, (a) the principal or a managerial agent authorized the doing and the manner of the act, or (b) the agent was unfit and the principal or a managerial agent was reckless in employing or retaining him, or (c) the agent was employed in a managerial capacity and was acting in the scope of employment, or (d) the principal or a managerial agent of the principal ratified or approved the act.

Restatement 2d of Torts, <u>Punitive Damages Against Principal</u>, § 909.

This limitation is consistent with the Supreme Court's FCRA "objective reasonableness" threshold and should apply in this case. Ocwen cannot be liable for punitive damages unless it knowingly or recklessly adopted an unreasonable procedure at an executive or policy level. Anomalous employee behavior does not warrant imposing punitive damages on an employer unless the company adopted unreasonable procedures or knew of or consciously disregarded the employee's reckless behavior. *See Roberts*, Case No. 02-CV-93, 2003 U.S. Dist. LEXIS 22032, at *12. Rather, if Ocwen employees allegedly made mistakes despite the existence of Ocwen's procedures, this is evidence of negligence, at worst. *See Llewellyn*, 711 F.3d at 1185 (failure to consider pertinent information available when investigation obligations triggered did not support

7

willful violation). Accordingly, to the extent Plaintiff attempts to prove a willful violation of the FCRA based upon an Ocwen's employee's failure to follow Ocwen's policies and procedures, punitive damages are inappropriate unless there was ratification by officer or director of company. There is no such evidence in the record, and accordingly, Plaintiff's claims for punitive damages should be excluded from trial.

## II. Plaintiff should be Precluded from Arguing that Ocwen Acted Knowingly and Intentionally in Conscious Disregard of his Rights.

If, and only if, the Court determines that Plaintiff has established objective unreasonableness is Ocwen's subjective intent relevant. As set forth above, Ocwen vigorously disputes the contention that its procedures are objectively unreasonable. Nonetheless, Plaintiff cannot prove the second "subjective" prong that Ocwen acted knowingly and intentionally in conscious disregard for Plaintiff's rights.

As an initial matter, it does not appear that Plaintiff intends to offer proof that Ocwen intentionally violated the FCRA – in other words, that Ocwen *knew* Equifax was reporting a second tradeline and simply refused to take any action. Instead, Plaintiff's argument in opposition to Ocwen's motion for summary judgment was that Ocwen should have known or that a "simple investigation" would have revealed the existence of two tradelines. (Pl.'s Opp. to Mot. for Summ. J., at 19-20.)[1] Indeed, the gist of Plaintiff's entire argument is that Ocwen's procedures for conducting investigations were unreasonable and that Ocwen recklessly disregarded "the investigatory requirements of the FCRA." *Id.* at 20. Nevertheless, to forestall any possible attempt by Plaintiff to argue that Ocwen acted intentionally, Ocwen asks this Court

---

[1] It should be noted that Plaintiff is wrong when he contends that "the trier of fact is entitled to determine whether Ocwen" disregarded "long settled Court of Appeals case law . . . is objectively unreasonable." (Pl.'s Opp. to Mot. for Summ. J., at 19.) As set forth above, this determination is to be made by the Court.

8

to preclude Plaintiff from making any argument or introducing any purported evidence that Ocwen knowingly violated the FCRA.

To prove a knowing violation of the FCRA, a plaintiff must produce evidence demonstrating that the defendant acted knowingly and intentionally in conscious disregard for the rights of the consumer. *Dalton v. Capital Associated Indus, Inc.*, 257 F.3d 409, 418 (4th Cir. 2001). Under this standard, the evidence must show willful misrepresentations, concealment, refusal to investigate, or an "intention to thwart consciously [plaintiff's] right to have inaccurate information removed promptly from his report." *Stevenson v. TRW, Inc.*, 987 F.2d 268, 294 (5th Cir. 1993) (intention to thwart plaintiff's rights); *Thomas v. Gulf Coast Credit Servs.*, 214 F.Supp.2d 1228, 1238 (M.D. Ala. 2002) (punitive damages allowed only when the defendant's conduct involved willful misrepresentations or concealment); *Cousin v. TransUnion Corp.*, 246 F.3d 359 (5th Cir. 2001) (faulty cloaking procedures that permitted information to reappear on credit report were not evidence of willful violation); *see Saunders v. Branch Banking & Trust of Virginia*, 526 F.3d 142, 151 (4th Cir. 2008) (evidence supported willfulness when bank officer admitted that BB&T *intended* to report loan without mentioning dispute).

To start with, there is no evidence that Ocwen *knew* Equifax was reporting two tradelines. Instead, the evidence demonstrates the opposite: Ocwen never reported two accounts or a duplicate tradeline and there is no evidence that anyone told Ocwen about Equifax's duplicate tradeline or provided documentation to Ocwen showing the duplicative tradeline. (Exhibit A, Lyew Tr. 133:18-24; Ex. D, March 14, 2013 Letter; Ex. E, March 19, 2014 Letter (does not advise Ocwen that Equifax was reporting the account twice, that there were duplicate accounts, or that the tradeline appeared twice on Equifax's reports).) Indeed, as noted above, Plaintiff has never argued that Ocwen actually *knew* Equifax was reporting two tradelines in the complaint or

9

in any pleadings. His own deposition testimony confirms this position. Accordingly, the Court should not permit Plaintiff to make any argument at trial that Ocwen possessed actual knowledge that Equifax was reporting two tradelines, one of which was incorrect.

Further, Plaintiff cannot point to any evidence that Ocwen knowingly sought to thwart his right to have inaccurate information removed from his credit report, misrepresented or concealed information, or refused to investigate his disputes. Plaintiff complains that Ocwen's investigation was not reasonable because Ocwen failed to review the information that he submitted directly and failed to uncover the fact that Equifax was reporting two tradelines with conflicting information. But these failures – even if true – do not show that Ocwen acted intentionally to prevent the removal of inaccurate information from Plaintiff's report, let alone that Ocwen misrepresented or concealed information. Ocwen checked the payment history and reporting numerous times and determined that *it correctly reported* the account. (Exhibit A, Lyew Tr. 159:4-163:1; Exhibits C, Screen Prints of April 24, 2014 ACDV response and June 20, 2014 ACDV response.) In addition, a thorough review of Plaintiff's dispute letters would not have alerted Ocwen to any incorrect or inaccurate information that Equifax was reporting. (Exhibit A, Lyew Tr. 133:18-24; Ex. D, March 14, 2013 Letter; Ex. E, March 19, 2014 Letter.) The letters do not mention two tradelines nor did any of the documents attached to those letters show two tradelines. (Ex. D, March 14, 2013 Letter; Ex. E, March 19, 2014 Letter.) Likewise, the fact that Ocwen's employees failed to deduce that Equifax was reporting two tradelines does not demonstrate anything more than negligence. *See Davenport v. Sallie Mae, Inc.*, 2015 U.S. Dist. LEXIS 73258, *18 (D. Md. June 5, 2015) (failure of proverbial one hand to know what other hand was doing was negligence, but not evidence of willfulness).

There simply is no evidence to show that Ocwen knew Equifax was reporting two tradelines, intentionally misrepresented or concealed information, refused to correct a known error, acted with the intent to thwart Plaintiff's rights. Any argument or testimony in this regard would be confusing, misleading, and prejudicial and should be precluded under Rules 402 and 403 of the Federal Rules of Evidence.

### III.    Plaintiff has no Evidence that Ocwen Recklessly Ran a Risk of Violating the Statute.

Finally, Plaintiff cannot prove that Ocwen ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless. *Safeco*, 551 U.S. at 57.

Ocwen's responses to Plaintiff's disputes were objectively reasonable. Ocwen updated the account as current, responded to the Consumer Financial Protection Bureau, and ultimately sent an AUD telling the CRAs the account was current, not in foreclosure or past due. (Exhibit A, Lyew Tr. 117:1-121:2, 133:18-24, 136:1-3, 136:11-17; Ex. B, AUD.) As discussed above, to the extent that Ocwen employees allegedly made mistakes despite the existence of Ocwen's procedures, they are evidence of negligence, at worst. *See Llewellyn*, 711 F.3d at 1185. Thus, even assuming that Ocwen failed to review the letters or other information Plaintiff provided, there is no evidence that this amounted to anything more than negligence. *Matson v. EDFinancial Servs.*, LLC, 2015 U.S. Dist. LEXIS 111053, *23-24 (E.D. Wis. Aug. 21, 2015) (failure to read consumer's letter was, at worst, negligence and not evidence of willful noncompliance). To the extent Plaintiff blames Ocwen for failing to divine an unidentified error in reporting made *by Equifax*, the FCRA does not require a furnisher to investigate the accuracy of information that it *did not provide* to a CRA, but that the CRA reported on its own.

As argued above, Ocwen employed reasonable policies and procedures keyed directly to the language of the statute. The evidence shows that Ocwen adopted its policies and procedures

11

in order to protect consumers' rights as mandated by the FCRA. Plaintiff has not pointed to any evidence suggesting that Ocwen's policies were objectively unreasonable or that they ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless. Because Plaintiff lacks any evidence to prove Ocwen acted recklessly, any arguments or attempts to solicit testimony regarding Ocwen's alleged willfulness would be confusing, misleading, and prejudicial and should be precluded under Federal Rule of Evidence 403.

## CONCLUSION

For the reasons set forth above, the Court should grant Ocwen's Motion *in Limine*, enter the proposed order, attached as Exhibit F: 1) finding that Ocwen's policies and procedures are objectively reasonable, and 2) excluding any testimony or argument, that Ocwen willfully violated the FCRA either knowingly or recklessly, including argument that Plaintiff is entitled to punitive damages, and grant Ocwen such other and further relief as it deems just and proper.

Dated:  April 22, 2016

Respectfully submitted,

OCWEN LOAN SERVICING, LLC

By:   /s/ Jason E. Manning
                Of Counsel

Jason E. Manning (WV Bar No. 11277)
Jonathan M. Kenney (WV Bar No. 12458)
Counsel for Ocwen Loan Servicing, LLC
Troutman Sanders LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone:  (757) 687-7564
Facsimile:  (757) 687-1524
E-mail:  jason.manning@troutmansanders.com
E-mail: jon.kenney@troutmansanders.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
Beckley Division

DAVID M. DAUGHERTY,

    **Plaintiffs,**

    v.                                               Civil Action No. 5:14-cv-24506

EQUIFAX INFORMATION
SERVICES, LLC, and OCWEN
LOAN SERVICING, LLC,

    **Defendants.**

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of April, 2016, I electronically filed the foregoing *Motion in Limine #1* with the Clerk of the Court using the CM/ECF System which will then send a notification of such filing (NEF) to the following:

**Counsel for Plaintiff**
Ralph C. Young, Esq.
Christopher B. Frost, Esq.
Steven R. Broadwater, Jr., Esq.
Jed R. Nolan, Esq.
HAMILTON, BURGESS, YOUNG & POLLARD, PLLC
P.O. Box 959
Fayetteville, WV 25840

                                        /s/   Jason E. Manning
                                        Jason E. Manning (WV Bar No. 11277)
                                        TROUTMAN SANDERS LLP
                                        222 Central Park Avenue, Suite 2000
                                        Virginia Beach, Virginia 23462
                                        Telephone: (757) 687-7564
                                        Facsimile: (757) 687-1510
                                        E-mail: jason.manning@troutmansanders.com
                                        *Counsel for Ocwen Loan Servicing, LLC*

28270936