# Expert Report of John Ulzheimer

**David M. Daugherty**

**vs.**

**Equifax Information Services, LLC *et al.***

**May 13, 2015**

EXHIBIT 1

was too low because of "Delinquency/public record/bankruptcy, length of time since last delinquency on accounts, total available credit on revolving lines, installment loans not paid as agreed and the number of requests for new credit." As with Comenity Capital Bank, the conditions that caused the Plaintiff's lower credit score were present even in the absence of Ocwen's credit reporting. It's also important to note that the Ocwen account on the Plaintiff's Equifax credit report showed as being "in dispute" at this time with the Compliance Condition Code XB.

Embrace Loans - On or about June 17, 2013 Embrace Home Loans pulled the Plaintiff's TransUnion and Experian credit reports[9], which did not contain the Ocwen "foreclosure" credit reporting. Embrace did not pull the Plaintiff's Equifax credit report, which was the only credit report that did include the Ocwen foreclosure reporting. As such, there is no indication or support to the Plaintiff's claim that he was denied by Embrace Loans because according to his own document production, Embrace didn't pull a credit report from Equifax in 2013. This is further confirmed by Equifax's production.[10] Their internal records of the Plaintiff's credit report as of June 2013 show no credit inquiry from Embrace in 2013.

Quicken Loans - The Plaintiff and his expert suggest that Plaintiff has been denied a mortgage loan by Quicken Loans[11]. There are, however, no documents suggesting that the Plaintiff ever even applied for a loan with Quicken, let alone was denied a loan by Quicken. Plaintiff has produced no Adverse Action letter or Score Disclosure Notice from Quicken, both of which would have been required disclosures had the Plaintiff applied for a loan that was eventually denied by Quicken.

**D. Opinion #3 – Defendant Ocwen did, in fact, report their account as being "in dispute" when it was disputed.**

The Plaintiff's expert has suggested in his report that Ocwen failed to list their account as being "in dispute.[12]" This is simply incorrect and there are a variety of documents produced that confirm Ocwen did, in fact, report the account on multiple occasions to the credit reporting agencies as being in dispute.

As stated above on pages 9 and 10, accounts in dispute are labeled as such with the Compliance Condition Code "XB." On a credit report the code XB reads, "Consumer Disputes, reinvestigation in process per Fair Credit Reporting Act" or a reasonable derivative of that phrase. Ocwen began reporting the account as being in dispute by using the aforemen-

[9] Ibid

[10] EIS-Daugherty 000041

[11] Hendricks' report, page 6

[12] Hendricks' report, page 1

tioned XB code in October 2013[13]. Further, Equifax also has produced numerous records showing the Ocwen account as being in dispute[14].

More specifically, on at least three separate occasions in October, November and December of 2013 Ocwen proactively reported the Plaintiff's account as being in dispute by reporting the XB Compliance Condition Code as part of their monthly credit reporting[15]. Equifax's internal credit file records also confirm that the Ocwen account was, in fact, showing as being in dispute[16]. And, at least as of August 2014 the Ocwen account no longer appeared on the Plaintiff's Equifax credit report[17] and Equifax even informed the Plaintiff as much in their communications with him[18]. Finally, there is nothing to indicate the subject Ocwen account has been reinserted into Plaintiff's Equifax credit file since August 2014.

And, unless the credit reporting agencies removed the "in dispute" code it would remain on the Plaintiff's credit report indefinitely. The "XB" in dispute code is what's referred to as a "sticky" code, which means it doesn't simply fall off of the credit report after one month. It will remain on the consumer's credit report until a "removal" code is used in its place, thus deleting it.

At all times the "XB" code was associated with the Ocwen account it was rendered harmless to the Plaintiff's credit scores. All credit scores (FICO and VantageScore) will ignore the payment history and all balances (current or past due) associated with an account that carries the XB code. As such, any scores that were calculated at the same time the XB code was present were not influenced by the Ocwen payment history or balance.

Additionally, Ocwen, and all other companies that provide data to the credit bureaus, are only required to show their accounts as being in dispute when a consumer files a valid dispute directly with them. If a consumer files a dispute with a credit reporting agency then the agency is obligated to show that account as being in dispute, rather than the lender. In fact, Equifax has gone on record previously stating that they do, in fact, show accounts as being in dispute when they receive disputes from consumers. If a consumer files a frivolous dispute with a lender/data furnisher then that lender is not obligated to show the account as being in dispute because there is no need for an investigation to take place.

On at least 10 separate occasions the Plaintiff filed frivolous disputes with Equifax challenging solely whether or not the subject Ocwen account actually belonged to him[19]. The Plaintiff hasn't asserted in his Complaint that the account was not his or that he was not liable for the debt. In fact, he admits in his Statement of Facts from the Complaint that

[13] DD/OLS 000322 and 000625

[14] EIS Daugherty 000260-261 & 308

[15] DD/OLS 000322 and 000625 - 645

[16] Examples can be found at EIS-Daugherty 260-261, 268-269, 308, 311

[17] Examples can be found at EIS-Daugherty 364-373, 421-426, 430-433, 436-445, 497-503, 507-510

[18] EIS-Daugherty 412-413, 427-429, 474-475, 476-485, 504-506

[19] Examples can be found at EIS-Daugherty 000089, 192, 227, 255, 303, 360, 389, 416

Ocwen is the servicer of his mortgage loan[20]. However, he chose to challenge the Ocwen reporting under that misleading premise with Equifax on multiple occasions. Each of these disputes is frivolous, as the Plaintiff knows that the Ocwen mortgage is, in fact, his account. Because the disputes are frivolous there is no obligation for Equifax to instigate an investigation and no obligation for Ocwen to show the account as being in dispute. Furthermore, Ocwen responded accurately to each ACDV indicating Plaintiff disputed that the account was not his or that he was not liable for the debt by verifying the subject mortgage account belongs to Plaintiff.

**E. Opinion #4 – Defendant Ocwen did not report multiple accounts to the credit reporting agencies.**

The Plaintiff's expert has suggested in his report that Ocwen furnished two accounts with the same number to the credit bureaus.[21] This is also incorrect or, at best, speculation as there are a variety of documents produced that confirm Ocwen did, in fact, report only one account to the credit reporting agencies.

It appears that Ocwen changed the "Date Opened" field from "08/26/1999" to "07/20/1999" in its 04/30/2012 credit reporting tape[22], which was a warranted correction as the mortgage opening date was, in fact, 07/20/1999[23]. It appears the prior loan servicer was reporting the opening date as 08/26/1999 and that Ocwen updated the reporting to the correct date after it started servicing this account.[24] This is likely the cause of the account being reported twice by Equifax[25]. It appears Equifax treated the "07/20/1999" change by Ocwen as a new account or "tradeline."

This also provides an explanation as to why Ocwen's responses to Equifax's ACDVs weren't resulting in both accounts being updated. When the ACDVs are fully processed they may not have updated the derogatory Ocwen account as a result of the duplicative tradeline. The trade line with the 08/26/1999 opening date contained the negative information including late payments and $6,128 past due. This is likely because Equifax was still showing much older monthly credit reporting from as far back as March 2012 rather than what Ocwen was sending via its monthly credit reporting and dispute response ACDVs.

Clearly this isn't something Ocwen caused as it was simply changing the date opened on one account. There's nothing to suggest Ocwen sent a second and different account to Equifax or any of the other credit reporting agencies.

---

[20] Complaint, paragraphs 5-6

[21] Hendricks' report, page 2

[22] DD/OLS 606-607

[23] DD/OLS 648

[24] DD/OLS 594-601 and 602

[25] EIS-Daugherty 42-43 as an example of the two Ocwen accounts with two "Date Opened" values