IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

DAVID M. DAUGHERTY,                               PLAINTIFF

V.                                                CIVIL ACTION NO. 5:14-cv-24506

OCWEN LOAN SERVICING, LLC,                        DEFENDANT

**PLAINTIFF'S MEMORANDUM OF AUTHORITIES IN SUPPORT OF
MOTION FOR ATTORNEYS' FEES**

Plaintiff David Daugherty brought suit against Defendant Ocwen Loan Servicing for negligent and willful violations of the Fair Credit Reporting Act (FCRA). The jury returned a verdict for David Daugherty, finding that Ocwen willfully violated the FCRA and awarded Plaintiff compensatory damages in the amount of $6,128.00 and punitive damages in the amount of $2.5 million. David Daugherty has filed a motion for an award of attorneys' fees pursuant to the FCRA.

**THE FCRA CLAIM**

The Fair Credit Reporting Act states that:

> "[a]ny person who <u>willfully</u> fails to comply with any requirement imposed under this subchapter with respect to any consumer <u>is liable</u> to that consumer in an amount equal to the sum of . . . (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court." 15 U.S.C. § 1681n(a). (emphasis added)

The Fair Credit Reporting Act also states that:

> "[a]ny person who is <u>negligent</u> in failing to comply with any requirement imposed under this subchapter with respect to any consumer <u>is liable</u> to that consumer in an amount equal to the sum of . . . (2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court." 15 U.S.C. § 1681o(a). (emphasis added)

The Fair Credit Reporting Act entitles Plaintiff to attorneys' fees and costs. See, *Yohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967, 974 (4th Cir. 1987) (finding "[t]he FCRA provides that 'in the case of any successful action to enforce any liability under this section,

the costs of the action together with reasonable attorney's fees as determined by the court' may be awarded.") The *Yohay* Court further concluded that "[s]ince there will rarely be extensive damages in an FCRA action, requiring that attorney's fees be proportionate to the amount recovered would discourage vigorous enforcement of the Act." *Id.*

As exceptions to the American rule, fee-shifting statutes are specifically designed to encourage private litigation to enforce important rights, without burdening either taxpayers or individuals whom the legislature intended to protect.[1] *See Bond v. Blum*, 317 F.3d 385, 399 (4th Cir. 2003) (purpose of fee-shifting statutes is "to enable potential plaintiffs to obtain the assistance of competent counsel in vindicating their rights") (quoting *Kay v. Ehrler,* 499 U.S. 432, 437 (1991)); *see also Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968) (if "plaintiffs were routinely forced to bear their own attorney's fees, few aggrieved parties would be in a position to advance the public interest.")

## PROCEDURE TO ASSESS FEES

The Fourth Circuit Court of Appeals has long followed the twelve-factor analysis of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1994). In *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243-44 (4th Cir. 2009), the Fourth Circuit restated the *Johnson* factors as follows: (1) The time and labor required to litigate the suit; (2) the novelty and difficulty of the questions presented; (3) the skill required properly to perform the legal service; (4) preclusion of other employment opportunities; (5) the customary fee for such services; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10)

---

[1] The American rule requires that each litigant "bear his or her own attorney's fees absent a contrary rule of court or express statutory or contractual authority for reimbursement." Syl. Pt. 2, *Sally-Mike Properties v. Yokum*, 365 S.E.2d 246 (W. Va. 1986).

the "undesirability" of the case; (11) the nature and length of the attorney's professional relationship with the client; and (12) awards in similar cases.

In making a lodestar adjustment, the court should look to these twelve factors, known as the *Johnson* factors, after *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). This procedure was enunciated in *Hensley v. Eckerhart*, 461 U.S. 424, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983). The Fourth Circuit, in *Robinson,* recognized that the District Court "has close and intimate knowledge of the efforts expended and the value of the services rendered," and noted that the fee award must not be overturned unless it is clearly wrong. *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009).

### A. THE LODESTAR BASE FEE

The first tier of the Court's analysis is to calculate the lodestar fee. "In fashioning a reasonable award, the court begins by multiplying a reasonable number of hours by a reasonable hourly fee to arrive at the lodestar figure." *West Virginians for Life, Inc. v. Smith*, 952 F. Supp. 342, 345 (S.D. W. Va. 1996). A "strong presumption arises that the lodestar represents a reasonable fee." *Id*. Under the *Johnson* factors, the court first calculates a "lodestar" fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers. *Grissom v. The Mills Corp.,* 549 F.3d 313, 320 (4th Cir.2008); *Robinson v. Equifax Info. Servs*., LLC, 560 F.3d 235, 243 (4th Cir. 2009). The court then considers whether the lodestar figure should be adjusted upward or downward depending on the circumstances of the case. *Id*. This is simply a multiplication of the reasonable number of hours expended times the reasonable hourly rates for Plaintiff's counsel.

Here, Plaintiff requests a lodestar award as follows:

| Timekeeper | Hours | Rate | Total Fees |
|---|---|---|---|
| Ralph C. Young, attorney | 135.16 | $400 | $54,064.00 |
| Jed R. Nolan, attorney | 259.64 | $300 | $77,892.00 |
| Steven R. Broadwater, attorney | 106.65 | $300 | $31,995.00 |
| **Total** | 501.45 | | **$163,951.00** |

Plaintiff's counsel filed a detailed itemization of the hours for the attorneys. The attorneys' hours totalled 501.45. See Exhibit A "Time Matters Report." Plaintiff also filed the affidavit of his counsel, Jed R. Nolan, Exhibit "B," Ralph C. Young, Exhibit "C," and Steven R. Broadwater, Exhibit "D," verifying the true and correct record of the professional activities performed for Plaintiff by the attorneys. Work performed against Equifax is omitted. Further, work performed by paralegals has also been omitted. The time records state the date work was performed; a reasonably specific description of work performed; and the time spent performing that work. *Bostic v. Am. Gen. Finance, Inc.*, 87 F. Supp. 2d 611, 615 (S.D. W. Va. 2000). "[M]inutely detailed [time] records are not necessary." *Id*; *see also Daly v. Hill,* 790 F.2d 1071, 1080 n.12 (4th Cir. 1986).

As in virtually any case litigated under a contingent fee agreement, Plaintiff's Counsel only spent the time necessary to effectively prosecute this case, and attempted to avoid duplication of efforts. Mr. Nolan was responsible for the day-to-day management of the case, formulating strategies designed to obtain all fact and expert discovery necessary to successfully prosecute the case. Mr. Young provided strategic guidance on case preparation, summary judgment, and served at trial. Mr. Broadwater assisted in developing the case theories at the outset, assisted in discovery, and served at trial in this matter. The *Laffey Matrix*, which was developed by the U.S. Department of Justice as a guideline for reasonable attorney fees in fee-shifting cases, set its guideline for attorney rates is as follows for 2015-2016:

| Experience | Rate |
|---|---|
| 31+ years | $568 |
| 21-30 years | $530 |
| 16-20 years | $504 |

| | |
|---|---|
| 11-15 years | $455 |
| 8-10 years | $386 |
| 6-7 years | $332 |
| 4-5 years | $325 |
| Paralegals & Law Clerks | $150 |

*Laffey Matrix* 2015-2016[2]; *see also Newport News Shipbuilding & Dry Dock Co. v. Holiday*, 591 F.3d 219, 229 (4th Cir. 2009) (noting "the *Laffey* matrix is a useful starting point to determine fees, [though] not a required referent). Plaintiff's requested rates are well-below those set forth in the *Laffey Matrix*.

**B. THE JOHNSON FACTORS**

Once the Court determines the reasonable number of hours and the reasonable hourly rate, the Court then considers whether the lodestar figure should be adjusted upward or downward, considering the twelve *Johnson* factors. As stated above, the twelve factors set out in *Johnson* are (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and, (12) awards in similar cases. *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974).

**1. AMOUNT INVOLVED AND THE RESULTS OBTAINED**

The Plaintiff will address the eighth factor first since the United States Supreme Court and the Fourth Circuit Court of Appeals have agreed that the "degree of success obtained" is a critical factor in determining the reasonableness of a fee award. See, *Hensley v. Eckerhart, supra*, 76 L. Ed.

---

[2] Available at https://www.justice.gov/usao-dc/file/796471/download

2d at 54; *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 244 (4th Cir. 2009); *Grissom v. the Mills Corp.,* 549 F.3d 313, 321 (quoting *Johnson v. City of Aiken,* 278 F.3d 333, 337 (4th Cir.2002)); This factor is "entitled to significant weight." *Brodziak v. Runyon,* 145 F.3d 194, 196 (4th Cir.1998); *Bostic v. Am. Gen. Fin., Inc.*, 87 F. Supp. 2d 611, 617 (S.D.W. Va. 2000). *Devine v. American Ben. Corp.,* 56 F.Supp.2d 679, 686 (S.D.W.Va.1999) ("The eighth factor is of paramount importance[.]"). The U.S. Supreme Court stated in *Hensley v. Eckerhart, supra*, 76 L. Ed. 2d at 54:

> We hold that the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988.

David Daugherty prevailed on his FCRA claim and every element of damages sought thereunder. Plaintiff's success militates toward an upward adjustment the lodestar figure. The Supreme Court added that ". . . indeed in some cases of exceptional success an enhanced award may be justified." *Hensley, supra*, 76 L. Ed. 2d at 52.

The size of the verdict affects the lodestar fee according to the Fifth Circuit in *Migis v. Pearle Vision, supra*, p. 1048, as follows:

> However, the Supreme Court has held that such a declaration does not alter the rule that the plaintiff's monetary success in a private civil rights suit must be the primary determinant of the attorney's fee. 'Where recovery of private damages is the purpose of . . . civil rights litigation, a district court, in fixing fees is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought.' *Farrar*, 506 U.S. at 114, 113 S. Ct. at 575 (quoting *City of Riverside v. Rivera*, 477 U.S. 561 585, 106 S. Ct. 2686, 2700, 91 L. Ed. 2d 466 (1986) (Powell J., concurring)).

In *Johnson*, a discrimination case, the Court stated that "[i]f the decision corrects across-the-board discrimination affecting a large class of an employer's employees, the attorney's fee award should reflect the relief granted." *Johnson, supra*, 488 F.2d at 718. In this case, the jury awarded to the Plaintiff $2,506,128.00 in compensatory damages and punitive damages. This is a significant recovery by a litigant in a FCRA case. This punitive damage award has the potential to correct the

manner in which the Defendant and other like companies do business and conduct investigations. Therefore, the attorneys' fee in this case "should reflect the relief granted."

### 2. TIME AND LABOR REQUIRED

"The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Consistent with this obligation, attached to the motion as Exhibit A is contemporaneously-maintained time records itemizing all work performed to pursue the claims against Ocwen. Work performed against other defendants is omitted. The time records state the date work was performed; a reasonable, specific description of work performed; and the time spent performing that work. *Bostic v. Am. Gen. Finance, Inc.*, 87 F. Supp. 2d 611, 615 (S.D. W. Va 2000).

To the extent time and labor are taken into consideration in determining the baseline lodestar amount, no upward or downward adjustment should be made for this factor. Because FCRA cases are highly document intensive, the amount of time and labor required to be adequately prepared in a case of this type is greatly increased. Adequate preparation mandates a thorough understanding of the way in which the credit bureaus and furnishers are operated, the manner in which their computer systems maintain and store an individual's credit information, and the manner in which credit reports are generated and interpreted.

Also, due to the complex nature of the case, Plaintiff's counsel was forced to develop a way to present the case to the jury in a readily understandable fashion and still carry the burden of proof. Plaintiff's counsel accomplished this feat by employing computer timeline software which allowed a simple, graphical depiction of the major events of the case. This timeline required long hours of time and labor to reach its final polished form, which avoided the confusion that a jury would normally encounter in a case such as this.

The amount of time which Plaintiff's counsel spent on this case is also directly proportional to the obstructive and uncooperative nature of the defense. Defense counsel routinely failed to respond to Plaintiff's counsel's first inquiries concerning discovery and routinely cancelled previously scheduled depositions. This necessitated numerous phone calls and letters when a single contact should have sufficed. The defense continually failed to respond and then when forced, provided an inadequate response, necessitating additional phone calls, letters and motions. As the Supreme Court observed in *City of Riverside*, "[Defendant] cannot litigate tenaciously and then be heard to complain about the time necessarily spent overcoming its vigorous defense." *City of Riverside v. Rivera*, 477 U.S. 561, 580 n. 11 (1986); *see also Marks Constr. Co., Inc. v. Huntington Nat'l Bank*, No. 1:05cv73, 2010 WL 3418329 at *9 (N.D. W. Va. Aug. 27, 2010) (citing *City of Riverside* for this proposition, noting that "plaintiffs did not engage in inappropriate discovery or wasteful motion practice," and finding hours expended to be reasonable).

Finally, the fees and expenses sought relate only to time expended in an effort to advance the Ocwen litigation. Therefore, while the claims against all of the original Defendants were part and parcel of one matter, to address any concerns about duplicative billing or billing for time that may not be considered compensable because it related to work performed on other parts of the case, Plaintiff has omitted any claim for hours spent regarding Plaintiff's claim against Equifax. In further exercise of billing judgment, Plaintiff has omitted *any* request for payment of fees representing work performed by paralegals and assistants, who were called into duty for shorter periods of time or discrete tasks. However, Plaintiff is requesting an award only for those fees incurred by the principal lawyers assigned to this case.

### 3. NOVELTY AND DIFFICULTY OF THE QUESTIONS INVOLVED

Defendant's protraction and obfuscation of this case should be considered for an upward

adjustment of the lodestar fee. *See Pinner v. Schmidt*, 617 F. Supp. 335, 337 (D.C. La. 1985)(holding "[i]n considering the novelty and difficulty of the questions presented in this case, the Court finds that the Credit Bureau made this a difficult, time consuming and arduous case to prosecute and made no concessions to plaintiff's attorneys...") Like *Pinner*, Ocwen made this a difficult, time consuming, and arduous case to prosecute, and made no concessions to Plaintiff's attorneys. A few examples demonstrate the Defendant's tactics.

Ocwen refused to comply with discovery by withholding documents from Plaintiff, which necessitated a good faith letter March 2, 2015. Plaintiff had propounded his first set of interrogatories. Ocwen withheld documents due to the lack of a protective order. However, it is Ocwen's duty to seek a protective order for any documents it claims necessitate one. Ocwen was able to shift the burden of the protective order onto the Plaintiff by essentially saying, "if you want the discovery, you have to come and get it." Due to Ocwen's refusal to provide all requested documents, Plaintiff was forced to seek an extension of his expert disclosure, which was filed on March 9, 2015. Plaintiff was finally able to coax Ocwen into agreeing to the form Protective Order provided by the Southern District of West Virginia on March 20, 2015. It still took Ocwen another month to provide supplemental responses.

Another example is Defendant's repeated failure to conduct scheduled depositions. Ocwen coordinated and scheduled depositions of Mr. Daugherty, his wife, his daughter, and his son for May 21, 2015. The Daugherty's arrived at Plaintiff's office on that day pursuant to issued subpoenas, but Ocwen failed to attend and attributed the failure to a miscommunication regarding an extension, necessitating further phone calls and letter writing to coordinate the depositions. Plaintiff mutually agreed with Ocwen to conduct a Rule 30(b)(6) deposition of Ocwen's corporate representative on June 19, 2015, which was well within the deposition deadline. Plaintiff agreed to

continue this deposition until July 17, 2015, to accommodate Defense counsel's family obligation. However, the July 17, 2015, deposition was unilaterally cancelled by Ocwen, and the corporate representative was not made available until August 28, 2015. Again, this failure by Ocwen to conduct scheduled depositions needlessly increased the Plaintiff's time and costs (due to two nonrefundable airline tickets purchased to Defendant's home office in West Palm Beach, Florida). Further, this delay led to the deposition occurring *after* the close of discovery, which prevented Plaintiff from meaningfully following up to obtain documents which Ocwen discussed during the depositions, such as policy and procedures and ACDV forms generated by Ocwen.[3]

      Perhaps Ocwen's most egregious delay and obfuscation occurred when it refused to admit the admissibility of ACDV forms generated by Equifax. Ocwen's 30(b)(6) witness admitted that the ACDV was a data exchange and that the printed forms of Equifax and Ocwen were mirror images of one another in her deposition. Ocwen's 30(b)(6) witness further admitted that Ocwen should have provided ACDV forms regarding each dispute submitted by Plaintiff, yet discovery showed that Ocwen had not produced these forms. Even Ocwen's expert witness, John Ulzheimer, acknowledged that Ocwen and Equifax ACDV forms contained the same information. Despite the fact that Ocwen and Equifax indisputably contained the exact same contents, the fact that Ocwen failed to produce its form of the ACDV, and the fact that Equifax's forms contained the exact same information as Ocwen's ACDVs, Ocwen objected to the Equifax forms and refused to admit their admissibility, which turned out to be the only existing version of the ACDVs. This required to subpoena Equifax, schedule a deposition *de bene esse,* brief and argue a motion for a protective order, review and oppose an appeal of the motion denying the protective order, conduct a deposition wherein Ocwen's questioning far exceeded that of Plaintiff, and present a witness via deposition at

---

[3] Defendant also blind noticed, then failed to appear, the deposition of Steve Napier of One Community Federal Credit Union, causing Mr. Napier to cancel a conference and incur costs associated with Ocwen's failure to appear.

trial. All the while, Ocwen could have produced its ACDV from all disputes to circumvent the need for this excessive litigation.

In addition to Ocwen's obstructive tactics, the complex nature of this type of case should be duly considered by the Court. Cases involving the FCRA require counsel to understand the complex operations of the credit reporting industry and their massive computer systems. This case is not similar to one involving a simple car wreck, where common sense and past experience is all that is required to understand the cause of the injury. This type of case is much more complicated, requiring an in depth analysis of the credit reporting industry's operating procedures. Ocwen's obstruction of the discovery process enlarged the Plaintiff's workload. These are merely a few examples indicative of the passive/ aggressive nature of the defense. These tactics and the complexity of the area of law should be considered for an upward adjustment of the lodestar fee.

### 4. SKILL REQUIRED TO PERFORM THE LEGAL SERVICE PROPERLY

In considering this factor, "[t]he trial judge should closely observe the attorney's work product, his preparation, and general ability before the court." *Johnson, supra*, 488 F.2d at 718. Plaintiff's counsel strived to present a high level of work product, preparation, and ability. Plaintiff's counsel also strived to present to the jury a well organized case, in a manner easily understood, especially in light of the complex nature and document intensity of the case. Plaintiff's counsel exercised extreme diligence and commitment to the preparation and presentation of Plaintiff's cause.

The expertise and skill level of Plaintiff's counsel was observed by the Court, to which it will make its own determination. *Johnson* stated:

> The trial judge should closely observe the attorney's work product, his preparation, and general ability before the court. The trial judge's expertise gained from past experience as a lawyer and his observation from the bench of lawyers at work become highly important in this consideration. *Supra*, p. 718.

Further, Plaintiff submitted the affidavits of David Grubb, Jason Causey, and Leonard Bennett on

this issue. Each attorney can speak to the skill of Plaintiff's counsel as well as the extensive training Plaintiff's counsel undertook to become competent in the FCRA.

### 5. PRECLUSION OF OTHER EMPLOYMENT BY THE ATTORNEY DUE TO ACCEPTANCE OF THE CASE

"This guideline involves the dual consideration of otherwise available business which is foreclosed because of the conflicts of interest which occur from the representation, and the fact that once the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes." *Johnson, supra*, 488 F.2d at 718. While it is unlikely that any conflict of interest will arise from counsel's representation of Plaintiff in this matter which would preclude further opportunities of counsel, the second prong of this factor is very relevant to this case. The large number of hours spent and the high level of preparation required obviously precluded Plaintiff's counsel from otherwise utilizing the time spent on Plaintiff's behalf.

### 6. CUSTOMARY FEE

The "customary" fee is simply the fee the lawyer in question, or a similar lawyer, would ordinarily receive from a paying client. The "customary fee for similar work in the community should be considered." *Johnson*, 488 F.2d at 718. A customary contingent fee also differs greatly from the customary fixed (or guaranteed) fee and, in the event of success, usually yields a far higher effective hourly rate. In support of Plaintiff's Motion for Attorney's Fees, Plaintiff's counsel has filed two affidavits of other members of the West Virginia Bar, as well as that of another member of the Fourth Circuit whose practice focuses primarily on FCRA litigation. These affidavits support the contention that Plaintiff's requested rates are reasonable hourly rates for computing attorney fees in this case.

### 7. WHETHER THE FEE IS FIXED OR CONTINGENT

The fee in this case was contingent upon successful results. Plaintiff's counsel accepted

representation on a contingent-fee basis, with attendant risks of non-payment. Plaintiff could have lost at several junctures – at summary judgment, directed verdict, or on appeal. A loss would have resulted in the loss of hundreds of thousands of dollars in attorney fees and expenses, of which only a portion are sought here. This factor supports an award of the requested fee. A District Court in *Pinner v. Schmidt,* 617 F. Supp. 335, 337, made an upward adjustment due, in part, to the contingent nature of the fee.

### 8. TIME LIMITATIONS IMPOSED BY THE CLIENT OR THE CIRCUMSTANCES

While this is not a significant factor in the analysis in this case, one time limitation that supports the requested lodestar is the delay in payment of fees, costs, and expenses. Counsel advanced thousands of dollars in fees and expenses over the duration of this case.

### 9. EXPERIENCE, REPUTATION, AND ABILITY OF THE ATTORNEYS

According to *Johnson*, "[m]ost fee scales reflect an experience differential with the more experienced attorneys receiving larger compensation." 488 F.2d at 718, 719. Plaintiff's counsel have fifty years of combined experience practicing law and have represented their clients in jury trials since being admitted to the West Virginia Bar. The lawyers who worked on this case have each submitted declarations outlining their experience and qualifications. The local lawyers who submitted affidavits addressed these issues as well. Therefore, the award of attorneys' fees in this case should reflect the level of experience, reputation, and ability of Plaintiff's counsel. To the extent this is considered in determining the base lodestar fee, no adjustment is necessary.

### 10. UNDESIRABILITY OF THE CASE

This case was undesirable from a professional standpoint for several reasons, including the risk of nonpayment of attorney fees; the need to advance significant expenses; and the lengthy delay in payment. This case could also be considered undesirable because of its document intensive nature.

Any attorney that undertakes a case of this type must spend hours upon hours attempting to understand and piece together the actual series of events that led up to and caused the injury to his client. Not only is this arduous at best, this reduces the time that the attorney would have available for other cases. Credit reporters routinely vigorously defend these cases to the point that Plaintiff's counsel is punished for undertaking the suit. The defense strategies in the past have made it difficult to obtain successful results for the victim. For these reasons, this type of case has been considered undesirable. Media reports of this verdict abounded. Consumers from all over the nation have contacted Plaintiff's counsel with stories failed investigations similar to David Daugherty's. Geography and time constraints prohibit Plaintiff's counsel from accepting these cases. Every one of the consumers tell of the same difficulty in finding attorneys who can or will accept their case.

    11.    **NATURE AND LENGTH OF THE PROFESSIONAL RELATIONSHIP WITH THE CLIENT**

Before this case, Hamilton Burgess had not represented Mr. Daugherty, and the firm has no expectation that it will represent him in the future in other matters. This supports the requested reward as Mr. Daugherty is not an institutional client whom the firm could expect to bill for future legal services.

    12.    **AWARDS IN SIMILAR CASES**

The rates requested here are consistent with rates awarded in similar cases, brought as was this one on a contingent-fee basis under a fee-shifting statute. An attorneys' fee award as requested is not uncommon in FCRA cases. Further, this matter is dissimilar from others due to the fact it went to trial and thus could have precedential effect on the credit reporting industry's operating procedures in the future.

**C. COSTS**

The Fair Credit Reporting Act provides that the prevailing attorney may be awarded costs

of the action. See, 15 U.S.C. § 1681n(a) and 15 U.S.C. § 1681o(a). Under the Fair Credit Reporting Act the Plaintiff's counsel should be compensated for reasonable expenses. Some courts have held these to include such mundane expenses as telephone charges, photocopies, and reasonable costs stemming from computer research. See, *Hall v. Harleysville Ins. Co.*, 943 F. Supp. 536 (E.D. Pa. 1996). Other courts have referred merely to "costs" without discussion of whether this exceeds the usual allowable court costs. See *Collins v. Retail Credit Co.*, 410 F. Supp. 929 (E.D. Mich. 1976).

Here, Plaintiff does not seek any such mundane expenses as photocopies and computer research. Plaintiff has restricted his request to those costs associated with travel to depositions, transcripts of depositions, expert fees, and other costs vital to the litigation and demonstrates that counsel did not act profligately in incurring expenses.

## CONCLUSION

In conclusion, the Plaintiff is entitled to an award of attorneys' fees under 15 U.S.C. § 1681n(a) and 15 U.S.C. § 1681o(a). Plaintiff's requested rates are reasonable for the Court to use as the base fee for the attorney time and labor expended in preparation for this case. After the base fee is determined, a *Johnson* analysis of the lodestar fee will derive the appropriate adjustment and fee. An award of reasonable attorney's fees and costs is proper under the FCRA claims. [4]

**DAVID DAUGHERTY**

BY COUNSEL

---

[4] Plaintiff reserves the right to supplement his motion, and this memorandum, to reflect Counsel's time expended on this motion as well as additional hours and costs expended by his counsel as the case proceeds.

HAMILTON, BURGESS, YOUNG
    & POLLARD, *pllc*


BY:    /s/    Jed R. Nolan
        Ralph C. Young  *(W. Va. Bar #4176)*
           ryoung@hamiltonburgess.com
        Christopher B. Frost  *(W. Va. Bar #9411)*
           cfrost@hamiltonburgess.com
        Steven R. Broadwater, Jr. (*W. Va. Bar #11355*)
           sbroadwater@hamiltonburgess.com
        Jed R. Nolan (*W. Va. Bar #10833*)
           jnolan@hamiltonburgess.com
        *Counsel for Plaintiff*
        P. O. Box 959
        Fayetteville, WV 25840
        304-574-2727

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

DAVID M. DAUGHERTY,                                    PLAINTIFF

V.                                                     CIVIL ACTION NO. 5:14-cv-24506

OCWEN LOAN SERVICING, LLC,                             DEFENDANT

## CERTIFICATE OF SERVICE

    I, Jed R. Nolan, counsel for Plaintiff, hereby certify that I have filed **MEMORANDUM OF AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants, on June 21, 2016:

    John C. Lynch, Esq.
    Jason E. Manning, Esq.
    TROUTMAN SANDERS LLP
    222 Central Park Avenue, Suite 2000
    Virginia Beach, VA  23462
    *Counsel for Defendant Ocwen Loan Servicing, LLC*
    john.lynch@troutmansanders.com
    jason.manning@troutmansanders.com

    /s/ Jed R. Nolan
    **JED R. NOLAN** *(WVSB #10833)*
    jnolan@hamiltonburgess.com