IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

DAVID M. DAUGHERTY,  PLAINTIFF

V.  CIVIL ACTION NO. 5:14-cv-24506

OCWEN LOAN SERVICING, LLC,  DEFENDANT

### DECLARATION OF JED R. NOLAN

**JED R. NOLAN** deposes and states upon his oath and under the penalty of perjury that he is competent to testify and makes this Declaration based upon personal knowledge, and, if called upon to testify, would testify as follows:

1. I am submitting this declaration to address my qualifications and Hamilton, Burgess, Young & Pollard, PLLC's request for reasonable attorney's fees and costs.

### EXPERIENCE

2. I received my B.A. from Marshall University, *magna cum laude*, in 2005. I am a 2008 graduate of the West Virginia University College of Law.

3. In the summer of 2008, I began my employment as a judicial law clerk to the Honorable Lawrance Miller in the Circuit Court of Preston County, West Virginia. Thereafter, I joined Legal Aid of West Virginia, Inc. from 2009 through May 2013. From June 2013 through July 2015, I was employed by Hamilton Burgess as an associate. I became a partial member of Hamilton Burgess in July of 2015. I was admitted to the West Virginia Bar in October 2008.

4. I concentrate my practice in consumer finance matters. My practice is focused solely on protecting West Virginia consumers.

5. I am a member of the Consumer Law division of the West Virginia Association of Justice, where I also serve on the Board of Directors, as well as a member of the National Association of Consumer Advocates.

6. I have lectured on consumer protection matters during the West Virginia Attorney General's Money Smart week in April 2011 and April 2012, as well as to the Legal Service Corporation collaborative Committee on Regional Trainings among West Virginia, Ohio, and Michigan Legal Aid services.

### JOHNSON FACTORS

7. The Fourth Circuit Court of Appeals has long followed the twelve-factor analysis of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1994). In *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243-44 (4th Cir. 2009), the Fourth Circuit restated the *Johnson* factors as follows: (1) The time and labor required to litigate the suit; (2) the novelty and difficulty of the questions presented; (3) the skill required properly to perform the legal service; (4) preclusion of other employment opportunities; (5) the customary fee for such services; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the attorney's professional relationship with the client; and (12) awards in similar cases.

8. *Factor (1): The time and labor required.* This case was filed in the Circuit Court of Raleigh County on July 8, 2014. Since it was filed, this case has been removed, seen summary judgment and orders, two motions for reconsideration, pretrial development, including the submission of jury instructions and motions in limine, and a jury trial. It has spanned nearly two years.

9. This was a serious, high-stakes, and hard-fought case. Hamilton Burgess expended the time that was necessary and appropriate to prepare for summary judgment, trial, and any potential upcoming appeals.

10. This work began pre-suit. Prior to the case being filed, I conducted an in-depth review of the facts and drafted a complaint that was nine pages long. I conducted multiple meetings with the Plaintiff Mr. Daugherty, reviewing documents and crafting legal theories. Recognizing the complexity

and size of the case, I then sought assistance from Mountain State Justice for guidance and pretrial strategy. I deposed the corporate representative of Ocwen, while the Defendant deposed the Plaintiff, Plaintiff's family members, witness Lorin Hanks (even though Ocwen never conducted any business or relied in any way upon any actions of Lorin Hanks), and Plaintiff's witness Steven Napier. These depositions took place in Fayetteville, West Virginia, and Virginia Beach, Virginia. These depositions were coupled with extensive written discovery. Plaintiff responded to discovery from Ocwen and provided supplemental responses as requested by the Defendant. All told, Ocwen produced over 1,700 pages of documents relating solely to Mr. Daugherty.

11. The parties engaged in prolific briefing. Counsel briefed summary judgment, responded to Motions for leave to refile summary judgment, and responded to motion for protective order. The sole issue that was litigated was Plaintiff's FCRA 1681s-2(b) claim.

12. Counsel attempted to open a settlement dialogue early in the litigation, but the parties were never close, even though Plaintiff's demand only increased after learning more and more about Ocwen's conduct. Plaintiff twice mediated this case in good faith. On the day of the second mediation, counsel again tried to resolve the case with a demand that was significantly **less** than what the jury ultimately awarded.

13. Counsel worked this case as efficiently as possible up to the eve of trial and after, and only expended time that was necessary to effectively prosecute the case. One reason for this is that we accepted representation on a contingent-fee basis, meaning we would not be paid for our time or expenses unless we prevailed. This puts an obvious economic incentive on efficiency. My time accounted for the majority of the attorney time expended on this matter. Mr. Broadwater and I bill at rates that are far less than those of Mr. Young.

14. The fees sought relate only to time expended in an effort to advance the Ocwen litigation. To address any concerns about duplicative billing or billing for time that may not be considered

compensable because it related to work performed on other parts of the case, my firm eliminated hours associated with work performed by 2 lawyers and 4 paralegals and assistants, who were called into duty for shorter periods of time or discrete tasks. This is a very substantial and frankly difficult reduction to make. We are requesting an award only for those fees incurred by the principal lawyers assigned to this case. We eliminated hours for time expended on the other Defendant Equifax.

15. Obviously, some work, such as drafting the complaint or convening scheduling conferences, related to all the Defendants, but this time is still compensable because it advanced the overall case.

16. Our expenses, shown in the records submitted with this motion, were significant.

17. *Factor (2 and 3): The novelty and difficulty of the questions and the skill required to perform the legal service properly.* The underlying dispute involved the use of the reasonableness of Ocwen's reinvestigations of Plaintiff's disputes that were received from Equifax via an automated consumer dispute verification form. Counsel is unaware of any other case similar to this one in West Virginia. This case required counsel to be skilled and knowledgeable in several legal disciplines. Plaintiff's counsel undertook several intensive trainings to ensure it had the right mix of knowledge to prosecute this matter under the FCRA. Without Mr. Young's specialization in trial techniques, Mr. Nolan's legal research and writing skills, Mr. Broadwater's general litigation experience, and our collective knowledge of consumer law, this result likely would not have been achieved.

18. *Factors (4): The preclusion of other employment by the attorney due to acceptance of the case.* One of the *Johnson* factors is the attorney's opportunity costs in pressing the instant litigation. Those costs were significant, as each hour we spent on this case was an hour we could not spend on other litigation. For example, when I was working on this case, I could have been working on other contingent matters.

19.   *Factor (5): The customary fee.* We are requesting attorneys' fees at rates of $400 (for Mr. Young) and $300 (for myself and Steven R. Broadwater, Jr.).

20.   These rates are well-below those set forth in the *Laffey Matrix*. The Laffey Matrix was developed by the U.S. Department of Justice as a guideline for reasonable attorneys' fees in fee-shifting cases. The *Laffey Matrix* guideline for attorney rates are as follows for 2015-2016:

| **Experience** | **Rate** |
| --- | --- |
| 31+ years | $568 |
| 21-30 years | $530 |
| 16-20 years | $504 |
| 11-15 years | $455 |
| 8-10 years | $386 |
| 6-7 years | $332 |
| 4-5 years | $325 |
| Paralegals & Law Clerks | $150 |

21.   *Factor (6): Whether the fee is fixed or contingent.* We accepted representation on a contingent-fee basis, meaning we would not be paid for our time or expenses unless we prevailed. We could have lost at several junctures, which would have resulted in the loss of our investment. This factor therefore supports the requested fee.

22.   *Factor (7): The time limitations imposed by the client.* In my opinion, this factor is inapplicable and should not bear one way or the other on the reasonableness of the requested attorney's fees.

23.   *Factor (8): The amount involved and the results obtained.* I believe we achieved an excellent result for Mr. Daugherty. The jury's award totals $2,506,128.00, not counting pre or post

judgment interest or any fee award. This result is multiples better than any earlier settlement offer proposed by Ocwen. It is also significantly **more than** Plaintiff's counsel last demand before the trial.

24. *Factor (9): The experience, reputation and ability of the attorneys.* As set forth above and in each lawyer's affidavit, this case brought together the right group of lawyers with the experience necessary to obtain this fine result. The result itself speaks for the ability of counsel.

25. *Factor (10): The undesirability of the case within the legal community.* Although it has been my great privilege to represent Mr. Daugherty, this case was undesirable from a business standpoint for several reasons, including the risk of nonpayment of fees; the need to advance significant expenses; the lengthy delay in payment; and the difficulties presented by application of a class action and consumer law to the claims related to the unauthorized practice of law. Any attorney that undertakes a case of this type must spend hours upon hours attempting to understand and piece together the actual series of events that led up to and caused the injury to his client. Not only is this arduous at best, this reduces the time that the attorney would have available for other cases. Credit reporters routinely vigorously defend these cases to the point that Plaintiff's counsel is punished for undertaking the suit. The defense strategies in the past have made it difficult to obtain successful results for the victim. For these reasons, this type of case has been considered undesirable. Media reports of this verdict abounded. Consumers from all over the nation have contacted Plaintiff's counsel with stories failed investigations similar to David Daugherty's. Geography and time constraints prohibit Plaintiff's counsel from accepting these cases. Every one of the consumers tell of the same difficulty in finding attorneys who can or will accept their case.

26. *Factor (11): The nature and length of the attorney's professional relationship with the client.* Prior to this case, my firm had not represented Mr. Daugherty. I have no expectation that we will represent him in the future in other matters. He is not an institutional client who we can expect to bill for future legal services.

27. *Factor (12): Awards in similar cases.* The rates requested here are consistent with rates awarded in similar cases, brought as was this one on a contingent-fee basis under a fee-shifting statute. An attorneys' fee award as requested is not uncommon in FCRA cases. Further, this matter is dissimilar from others due to the fact it went to trial and thus could have precedential effect on the credit reporting industry's operating procedures in the future.

28. Several West Virginia courts have awarded similar hourly rates to those rates requested here. In 2004, Judge Gaughan awarded fees of $400 per hour to attorneys in litigation over an insurance policy. *See Nationwide Mut. Inc. Co. v. Robinson,* Civil Action No. 03-C-443 (May 7, 2004) (J. Gaughan). In 2006, Judge Zakaib awarded lead attorneys $300 per hour and an associate $200 per hour. *Carolyn Wolfe v. Frederick Smith,* Civil Action No. 03-C-2508 (Oct. 17, 2006) (Kanawha Cty., P. Zakaib). In 2007, Judge King awarded senior attorneys Mark Atkinson and John Polak $300 per hour, and awarded associate attorney Paul L. Frampton, Jr. $200 per hour. *Thompson v. United Bank, Inc.,* Civil Action No. 05-C-2088 (Nov. 27, 2007) (Kanawha Cty., J. King). In 2008, Judge Nibert awarded fees of $350 per hour to lead attorney David Grubb, a partner with over twenty years of experience. *See Carl Milam, et al. v. Fleetwood Homes of N C., Inc.,* Civil Action No. 02-C-11 (January 2, 2008) (J. Nibert). In 2009, this Court awarded the West Virginia Attorney General $350 per hour in a commercial debt collection practice case. *See State of West Virginia ex rel. Darrell V. McGraw v. Wolf, et al.,* Civil Action No. 08-MISC-311 (March 10, 2009) (J. Berger). Also in 2009, Judge Thompson awarded fees of $375 per hour for senior attorneys in an age discrimination suit. *See Frye v. Superior Highwall Miners, Inc. et al.,* Civil Action No. 08-C-16 (March 9, 2009) (J. Thompson). For work performed in 2010, Judge Chambers awarded rates of $350 per hour for partners in a predatory lending case, noting the lack of complexity in the case, but highlighting the very good result for the client. *See Watkins v. Wells Fargo Home Mortgage,* 2010 U.S. Dist. LEXIS 59372, 2010 WL 2486247 (S.D. W. Va.). In October 2013, Judge Seibert awarded attorneys' fees for partners between $350 and $400 per hour in a breach of contract case in an automotive-related dispute. *See GM LLC v. Bill Kelley, Inc.,* 2013 U.S.

Dist. LEXIS 141709 (N.D. W Va. Sept. 30, 2013). In my opinion, the attorneys' fees requested are not materially different than the rates awarded by West Virginia courts in similar cases and so this factor supports the reasonableness of the fees.

Further the affiant saith naught.

_____
JED R. NOLAN

STATE OF WEST VIRGINIA,
COUNTY OF MERCER, TO-WIT:

Taken, subscribed and sworn to before the undersigned authority, in and for the county and state aforesaid, by **JED R. NOLAN**.

_____
NOTARY PUBLIC

My commission expires: November 25, 2020



OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
Virginia C. Mann
3902 Pine Grove Rd.
Lerona, WV 25971
My Commission Expires November 25, 2020