**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
Beckley Division**

**DAVID M. DAUGHERTY,**

      **Plaintiffs,**

      **v.**                                        **Civil Action No. 5:14-cv-24506**

**EQUIFAX INFORMATION
SERVICES, LLC, and
OCWEN LOAN SERVICING, LLC,**

      **Defendants.**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT OCWEN LOAN
SERVICING, LLC'S MOTION FOR REMITTITUR**

Defendant Ocwen Loan Servicing, LLC ("Ocwen"), by counsel, hereby files this Memorandum of Law in Support of its Motion for Remittitur.

**INTRODUCTION**

This case involves Plaintiff David M. Daugherty's allegations that Ocwen negligently and willfully violated the Fair Credit Reporting Act ("FCRA"). The case was tried before a jury from May 16, 2016 to May 23, 2016. On May 23, 2016, the jury returned a verdict in favor of Plaintiff, finding that Ocwen willfully failed to conduct a reasonable investigation and awarding Plaintiff $6,128.39 in compensatory damages for emotional distress. (Dkt. No. 174.) A finding of willfulness required the jury to deliberate further about an award of punitive damages. Before the jury deliberated on punitive damages, however, Plaintiff submitted two previously undisclosed exhibits, represented that they reflected Ocwen's assets of $7.5 billion and used them as the sole basis to argue that the jury should award substantial punitive damages.[1]

---

[1] In fact, the documents reflected the assets of Ocwen Financial Corporation, not Ocwen. Ocwen is only one of a number of subsidiaries of Ocwen Financial Corporation.

On May 24, 2016, the jury returned a verdict in favor of Plaintiff in the staggering amount of $2.5 million in punitive damages, an amount grossly out of proportion to the compensatory damages award.  (Dkt. No. 176.)  The jury's $2.5 million award fails as a matter of law because it is neither reasonable nor proportionate to the wrong committed and violates the Due Process Clause of the Fourteenth Amendment.  Therefore, as an alternative to striking the punitive damages award in its entirety, Ocwen is entitled to remittitur of the award to at most $80,000 in accordance with controlling precedent from the U.S. Supreme Court and the Fourth Circuit Court of Appeals.

## LEGAL STANDARD

"[I]t is well established that there are procedural and substantive constitutional limitations on [the imposition of punitive awards]."  *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003) (citations omitted).  The Due Process Clause "prohibits the imposition of grossly excessive or arbitrary punishments."  *Id*. (citations omitted); *Saunders v. Branch Banking & Tr. Co.*, 526 F.3d 142, 152 (4th Cir. 2008).  In *State Farm*, the Supreme Court recognized that "'punitive damages pose an acute danger of arbitrary deprivation of property'" because " '[j]ury instructions typically leave the jury with wide discretion in choosing amounts, and the presentation of evidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses . . . .'"  538 U.S. at 417 (quoting *Honda Motor Co. v. Oberg*, 512 U.S. 415, 432 (1994)).  These "concerns are heightened when the decisionmaker is presented . . . with evidence that has little bearing as to the amount of punitive damages that should be awarded."  *Id*. at 418. [2]

---

[2] These concerns are directly implicated in this case because, as noted above, the Court permitted Plaintiff to argue for a punitive damages award based on financial information that reflected the assets and cash on hand of Ocwen's parent company – *not* Ocwen.  This information was never

Consequently, when reviewing an award for punitive damages, the Supreme Court has instructed courts "to consider three guideposts: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *Id.*; *Saunders v. Branch Banking & Tr. Co.*, 526 F.3d 142, 152 (4th Cir. 2008). Most courts, including the Fourth Circuit, have agreed "that the third guidepost provides 'little assistance' in FCRA suits." *Saunders*, 526 F.3d at 152 (citing *Bach v. First Union Nat. Bank*, 486 F.3d 150, 154 n.1 (6th Cir. 2007) (*Bach II*). Applying the two relevant guideposts, Plaintiff's punitive damages award is excessive and must be remitted if it is to satisfy constitutional limitations.

## ARGUMENT[3]

**A.     Ocwen's Conduct was not Reprehensible because it was not Malicious or Repeated and it did not Cause Physical Harm or Endanger the Health and Safety of others.**

The most important indication of the "'reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct.'" *State Farm*, 538 U.S. at 419 (quoting *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996)). In simple terms, "punitive damages may not be 'grossly out of proportion to the severity of the offense.'" *Gore*, 517 U.S. at 576 (citation omitted). To determine reprehensibility, a reviewing court must consider whether: (i) "the harm caused was physical as opposed to economic"; (ii) "the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others"; (iii) "the target of the conduct had financial vulnerability"; (iv) "the conduct involved repeated actions or was an

---

disclosed on any exhibit list, was presented to counsel for Defendant without any prior notice and introduced over counsel's objections that there was insufficient time to review the more than 150-page document. (Trial Tr. Vol. VI, at 94.)

[3] **Exhibit A** May 23, 2016 Trial Transcript

isolated incident"; and (v) "the harm was the result of intentional malice, trickery, or deceit, or mere accident." *State Farm*, 538 U.S. at 419 (citing *Gore*, 517 U.S. at 576-77).  Based on Ocwen's conduct and the circumstances in this case, only one of these factors even arguably supports a finding of reprehensibility.  Standing alone, however, the fact that Plaintiff may have been financially vulnerable is insufficient to support a finding of reprehensibility.  *Bach v. First Union Nat'l Bank*, 149 Fed. Appx. 354, 364 (6th Cir. 2005) (*Bach I*) (finding that, when only one of the five factors is present, there is no reprehensibility).

       1.    **Ocwen's conduct did not cause any physical harm or endanger the health and safety of others.**

As for the first two factors, Ocwen's actions did not cause any physical harm or evince an indifference to or reckless disregard of the health and safety of others.  The court in *Saunders* recognized that "FCRA violations result in economic and emotional harm, but such violations will very infrequently cause physical harm or endanger the health and safety of others."  526 F.3d at 147; *see also Bach II*, 486 F.3d at 155 (internal quotations omitted) (determining that even when a defendant "continue[s] to report unfavorable credit information regarding [plaintiff] even after receiving notification from [plaintiff]," that defendant does not "not act with reckless disregard for the health and safety of others.").  Accordingly, *Saunders* acknowledged that "the first and second factors will usually be absent[.]"  *Saunders*, 526 F.3d at 147.  Here, as in *Saunders*, Plaintiff did not introduce any evidence that Ocwen's conduct caused any physical harm or endangered the health and safety of others.  Although the jury determined Plaintiff suffered emotional distress, the trial record is devoid of any evidence that Plaintiff was harmed physically or that public health and safety was endangered.  Thus, the first two factors do not support a finding of reprehensibility.  *See Bach I*, 149 Fed. Appx., at 364 (emotional distress is not the sort of physical injury *State Farm* contemplates).

4

2. **Ocwen's conduct did not involve repeated actions violating the FCRA.**

Plaintiff failed to introduce evidence to support any argument that Ocwen's conduct was the result of repeated actions, especially considering the fact that only Equifax incorrectly added an additional tradeline to Plaintiff's credit report. "[T]he Supreme Court has interpreted [the fourth factor] to require that the similar reprehensible conduct be committed against various different parties rather than repeated reprehensible acts within the single transaction with the plaintiff." *Bach I*, 149 Fed. Appx., at 365 (citing *Gore*, 517 U.S. at 576-77 (when considering the fourth factor, the question is whether defendant's actions "formed part of a nationwide pattern of tortious conduct")); *Dixon-Rollins v. Experian Info. Solutions, Inc.*, 753 F.Supp.2d 452, *27-28 (E.D. Pa. 2010) (finding fourth factor met when evidence showed that Trans Union repeatedly failed to properly conduct reinvestigation despite being warned by other courts in other cases that its procedures were insufficient).

In *Bach I*, the Sixth Circuit held that, despite allegations that the bank's "business policies . . . indicated that [the bank] treated [plaintiff's] situation in the same way it treated all of its clients," there was no evidence that "[the bank] had engaged in repeated conduct that would violate the [Fair Credit Reporting Act] in the past with respect to others" and thus "the fourth factor has not been met," Here, as in *Bach I*, Plaintiff has no evidence to support a finding of reprehensibility for repeated actions, particularly given the unique nature of the situation that resulted in Plaintiff's claims.   Equifax was on the only credit reporting agency to create a duplicate tradeline on Plaintiff's credit report.  Admittedly, it was Equifax's action in creating the second tradeline, and then reporting Plaintiff late even when Ocwen reported him current, that led to Plaintiff's disputes in the first place.  Ocwen only furnished accurate information to

Equifax.  Even assuming that Ocwen failed to conduct a reasonable investigation, there is no evidence that Ocwen repeated these actions with respect to other parties.  Accordingly, this factor does not support a finding of reprehensibility.

**3.**   **There is no evidence of malice, trickery or deceit was the source of Plaintiff's harm.**

Plaintiff also has no evidence to support a finding that the harm he allegedly suffered was the result of intentional malice, trickery, or deceit.  In fact, Plaintiff never argued that Ocwen intentionally violated the FCRA, *i.e.*, that Ocwen knew that Equifax was reporting duplicate tradelines and intentionally refused to instruct Equifax delete the incorrect one.  Instead, Plaintiff argued – and the jury found – only that Ocwen acted recklessly.  Thus, the fifth factor – addressing violations involving intentional malice – is inapplicable.  *Bach I*, 149 Fed. Appx., at 366 (although reasonable juror might have found that the actions were reckless, that does not support a finding of intentional malice, trickery or deceit).

**4.**   **The underwhelming level of reprehensibility undercuts any award of substantial punitive damages.**

Accordingly – at best – only one of the reprehensibility factors applies to Ocwen's conduct in this case, meaning the award of $2.5 million in punitive damages is entirely excessive and must be substantially reduced.  "[E]xemplary damages imposed on a defendant should reflect the enormity of his offense." *Gore*, 517 U.S. at 575 (citation omitted).  Specifically, in *Bach II*, the court recognized that "the vulnerability of a victim, without more, ought not be the basis of 'convert[ing] all acts that cause economic harm into torts that are sufficiently reprehensible to justify a significant sanction in addition to compensatory damages.'" *Bach II*, 486 F.3d at 155 (quoting *Gore*, 517 U.S. at 576) (observing that the "absence of [reprehensibility] factors substantially undercuts [plaintiff's] attempts to justify the size of the

punitive damages award in this case."); *Dixon-Rollins*, 753 F.Supp.2d at 467 (reducing punitive damages award even when TransUnion engaged in recidivist conduct).   The mere fact that the jury found Ocwen liable does not establish the "high degree of culpability that warrants a substantial punitive damages award."   *Gore*, 517 U.S., at 579; *Bach I*, 149 Fed. Appx., at 366 (finding that, where only one of five reprehensibility factors is present, large punitive award is not supported).   Ocwen did not cause physical harm, endanger public health or safety, act repeatedly or with intentional malice.   In short, Ocwen's actions are not sufficiently reprehensible to justify a punitive damages award as enormous as $2.5 million awarded by the jury in this case.

**B.     The Disparity between the Actual Harm Suffered and the Punitive Damages Award Requires this Court to Remit the Punitive Damages to an Acceptable Ratio.**

Although the Supreme Court has declined to impose a bright-line ratio for punitive damages, *State Farm*, 538 U.S. at 425, "[p]unitive damage awards that exceed a single digit ratio when compared to compensatory damages generally do present constitutional problems." *Saunders*, 526 F.3d at 154.   Specifically, the Supreme Court recognizes that its "jurisprudence and the principles it has now established demonstrate . . . that, in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process."   *State Farm*, 538 U.S. at 425.   "Nonetheless, because there are no rigid benchmarks . . . ratios greater than those [the Supreme Court has] previously upheld may comport with due process where 'a *particularly egregious* act has resulted in only a small amount of economic damages.'"   *Id.* (quoting *Gore*, 517 U.S. at 581) (emphasis added).   The Court has also held that "[w]hen compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee."   *Id.*   Consequently, the precise award "must be based upon the facts and

circumstances of the defendant's conduct and the harm to the plaintiff." *Id*. In this case, the ratio between punitive damages and compensatory damages is a staggering 408 to 1 – a ratio that unquestionably exceeds the boundaries of constitutionality.

> 1.    <u>**The appropriate ratio is based on the highest single digit multiplier.**</u>

Given the lack of reprehensible conduct, the compensatory damages recovered, and the fact that a single digit ratio is appropriate for most punitive awards and comports with due process, the Court should use a 9 to 1 ratio in calculating punitive damages. As the Supreme Court held, very few awards exceeding a single-digit ratio, to a significant degree, will satisfy due process. *State Farm*, 538 U.S. at 425 (noting than award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety); *Dixon-Rollins* 753 F.Supp.2d at 467 (reducing punitive damages of $500,000, reflecting a ratio of 16.67 to 1 to $270,000, reflecting a 9 to 1 ratio); *Bach I*, 149 Fed. Appx., at 366 (finding ratio of 6.6:1 "alarming"). It cannot be disputed that a ratio of 408:1 exceeds a single digit ratio "to a significant degree."

Ratios higher than 9 to 1 may be appropriate, but only where the conduct involved is "particularly egregious" and resulted in a very small amount of compensatory damages. *State Farm*, 538 U.S. at 425 (single digit multipliers are more likely to comport with due process, particularly when there is no egregious conduct); *see, e.g.*, *Kemp v. AT&T*, 393 F.3d 1354, 1358-59 (11th Cir. 2004) (higher ratio warranted where conduct deceitful, repeated, and intended to target financially vulnerable individuals). The sole fact that the jury found Ocwen liable is an insufficient basis for a punitive damages award set with more than a single digit multiplier. *See Bach II*, 486 F.3d at 155 (reducing punitive award from $2.2 million to $400,000 (2:1 ratio), even though the defendant continued to report unfavorable credit information even after

receiving notification from plaintiff, an elderly widow, that the information was inaccurate); *Dixon-Rollins*, 753 F. Supp.2d at 467 (reducing punitive damages award to 9:1 ratio even though the court held that TransUnion disregarded warnings that its reinvestigation procedures were insufficient). As set forth more fully above, Ocwen's conduct was not "reprehensible" and certainly not "egregious" enough to warrant a ratio higher than 9:1.

       **2.**       **<u>Saunders does not justify imposing a ratio higher than thirteen to one.</u>**

The Fourth Circuit's decision in Saunders does not support a ratio higher than – at most – thirteen to one. Addressing a punitive damages award of $80,000 rendered after the jury imposed the maximum statutory penalty of $1,000, the Fourth Circuit merely held that the ratio alone did not "foreclose the punitive damages award." 526 F.3d at 154 (recognizing that the small compensatory award allowed for a higher ratio). The court then turned to a review of other punitive damages awards for violations of the FCRA, finding that the punitive damages award of $80,000 was not grossly excessive in light of the punitive damages awarded in other FCRA cases. *Id.* Specifically, the Fourth Circuit pointed out that BB&T could not identify "*any* recent cases, let alone any FCRA case, in which a court has, for constitutional reasons, granted remittitur of a punitive damages award that was as low as $80,000." *Id.* (emphasis in original). Clearly, the court was swayed by the fact that the punitive damages award was relatively modest in comparison to awards in other FCRA cases.

The same cannot be said here. Instead, the award was $2.5 million, a figure grossly out of proportion to the actual damages awarded and the nature of the conduct involved. Applying the rationale in *Saunders*, the award in this case is grossly in excess of those involved comparable cases. The $80,000 award in *Saunders* only proves this point. Moreover, several of the cases cited by the *Saunders* court were remanded for substantial remittitur of the damages.

*See Bach II*, 486 F.3d 150 (remanding for remittitur of punitive damages of $2,228,600 to $400,000); *see also Cortez v. Trans Union, LLC*, No. 05-cv-05684-JF, 2007 U.S. Dist. LEXIS 68074, at *2 (E.D. Pa. Sept. 13, 2007) (remanding for remittitur of punitive damages of $750,000 to $100,000).  Indeed, the awards remitted in both *Bach II* and *Cortez* are *exceeded* by the award in this case.  Thus, applying the Fourth Circuit's rationale – involving a comparison of awards in other FCRA cases – the award in this case is far in excess of what could be constitutionally acceptable and must be substantially remitted.

In short, *Saunders* does not supply justification for the unreasonable ratio – 408:1 – involved in this case.  The compensatory damages award here is over six times larger than that awarded in *Saunders*.  Taking this into consideration, at a minimum, the ratio in this case should be one-sixth the ratio involved in *Saunders*, allowing for a ratio of about 13 to 1.  Given that this ratio produces a punitive damages award of approximately $80,000, it not only comports with due process but is squarely in line with the award in *Saunders*.

3.     Ocwen's financial status does not justify a higher award because the jury had no evidence before it on which to base an award.

It is plain that the jury's award in this case was based entirely on the previously undisclosed – and irrelevant – financial information Plaintiff was permitted to introduce at the last minute.   Plaintiff based the entirety of his arguments for determining the amount of punitive damages on the award being large enough to "get the Defendant's attention."[4]  Although a jury may consider the net worth of a defendant in considering a punitive damages award, *Saunders*, 526 F.3d at 154, there was no evidence before the jury as to Ocwen's net worth.  Instead, as argued more fully in Ocwen's motion to vacate the punitive damages award, the financial

---

[4] To illustrate the amount it would take to get Ocwen's "attention," Plaintiff represented Ocwen as a "$7 billion corporation" and directed the jury to the exhibits, representing that Ocwen "had $280 million cash on hand."  (*See* Trial Tr. Vol. VI at 102.)  Those representations are false.

information the public filings and financial statements Plaintiff introduced did not belong to Ocwen.  Accordingly, the figures cited by Plaintiff were inaccurate and misleading and did not represent Ocwen's financial status.  As a result, the punitive damages award in this case cannot be justified by reference to Ocwen's net worth.

### **CONCLUSION**

For the reasons stated above, the $2.5 million punitive damages award in this case is neither reasonable nor proportionate to the amount of harm to the Plaintiff and the compensatory damages recovered.  Accordingly, the Court should grant Ocwen's motion for remittitur and reduce the punitive damages award to no more than $55,155.51.[5]


Dated:  June 24, 2016                                    Respectfully submitted,

                                                         OCWEN LOAN SERVICING, LLC


                                                         By:  ___/s/ Jason E. Manning_____
                                                                      Of Counsel

                                                         Jason E. Manning (W. Va. Bar No. 11277)
                                                         Jonathan M. Kenney (W. Va. Bar No. 12458)
                                                         Counsel for Ocwen Loan Servicing, LLC
                                                         Troutman Sanders LLP
                                                         222 Central Park Avenue, Suite 2000
                                                         Virginia Beach, Virginia 23462
                                                         Telephone:  (757) 687-7564
                                                         Facsimile:  (757) 687-1524
                                                         E-mail:  jason.manning@troutmansanders.com
                                                         E-mail: jon.kenney@troutmansanders.com

---

[5] The jury awarded Plaintiff $6,128.39 in actual damages.  Applying the 1:9 ratio implicitly authorized by the U.S. Supreme Court, the maximum punitive damages award is $55,155.51.  *See State Farm*, 538 U.S. at 425 ("few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process").

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**Beckley Division**

**DAVID M. DAUGHERTY,**

**Plaintiffs,**

**v.** **Civil Action No. 5:14-cv-24506**

**EQUIFAX INFORMATION SERVICES, LLC, and OCWEN LOAN SERVICING, LLC,**

**Defendants.**

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of June, 2016, I electronically filed the foregoing *Memorandum in Support of Motion for Remittitur* with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to the following CM/ECF participants:

**Counsel for Plaintiff**
Ralph C. Young, Esq.
Christopher B. Frost, Esq.
Steven R. Broadwater, Jr., Esq.
Jed R. Nolan, Esq.
HAMILTON, BURGESS, YOUNG & POLLARD, PLLC
P.O. Box 959
Fayetteville, WV 25840
E-mail: ryoung@hamiltonburgess.com
E-mail: cfrost@hamiltonburgess.com
E-mail: sbroadwater@hamiltonburgess.com
E-mail: jnolan@hamiltonburgess.com

/s/ Jason E. Manning
Jason E. Manning (W. Va. Bar No. 12458)
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone: (757) 687-7562
Facsimile: (757) 687-1524
E-mail: jason.manning@troutmansanders.com
*Counsel for Ocwen Loan Servicing, LLC*

28616949