IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

DAVID M. DAUGHERTY,                              PLAINTIFF

V.                                              CIVIL ACTION NO. 5:14-cv-24506

OCWEN LOAN SERVICING, LLC,                       DEFENDANT

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S RENEWED MOTION
FOR JUDGMENT AS A MATTER OF LAW**

Plaintiff David Daugherty brought suit against Defendant Ocwen Loan Servicing for negligent and willful violations of the Fair Credit Reporting Act (FCRA). The jury returned a verdict for David Daugherty, finding that Ocwen willfully violated the FCRA and awarded Plaintiff compensatory damages in the amount of $6,128.00 and punitive damages in the amount of $2.5 million. David Daugherty now opposes Ocwen's renewed motion for judgment as a matter of law.

**STATEMENT OF FACTS**

The jury emphatically found Defendant Ocwen liable for willfully violating the FCRA, with good reason. Ocwen's duty under the FCRA is simple: when it received a notice of a dispute from Equifax, it must review all relevant evidence and conduct a reasonable investigation. Ocwen spectacularly failed at both. The jury was presented with all relevant information that was available to Ocwen: David Daugherty's March 2013 letter stating that Ocwen was falsely listing his mortgage as ***currently*** in foreclosure and attaching a document showing the false tradeline; David Daugherty's March 2014 letter stating that Ocwen was falsely listing his mortgage as ***currently*** in foreclosure and attaching a document showing the false tradeline with *circles and arrows*; phone calls from David Daugherty in March and June 2014 begging for the tradeline to be corrected; communication from the Consumer Financial Protection Bureau alerting Ocwen to the serious problem and demanding investigations; and Ocwen's own files and records which clearly showed that David Daugherty was current on his mortgage.

The most obvious relevant evidence that Ocwen received was the Automated Consumer Dispute Verification (ACDV) provided by Equifax with each David Daugherty dispute.  Ocwen received twenty-four (24) ACDVs from Equifax between March 2013 and August 2014: twelve that accurately reported David Daugherty's tradeline, and twelve that specifically stated David Daugherty was in foreclosure.  Twenty-two were verified as reported in a matter of *mere seconds*.[1]

Despite having this wealth of relevant information available during each dispute, Ocwen verified that David Daugherty was in foreclosure on twelve separate occasions.[2]  Ocwen failed to conduct a single reasonable investigation.  Ocwen never contacted Mr. Daugherty.  Ocwen never made a permissible soft pull of Mr. Daugherty's credit report as an account servicer.  (Trial Tr. Vol. III, 185, line 5) Ocwen never even reviewed all the information on the ACDV from Equifax, which falsely stated that Mr. Daugherty was currently in foreclosure and over $6,000 in arrears.  (Trial Tr. Vol. III, 103-104, 21-6) Instead of taking responsibility for its reprehensible conduct, Ocwen argued that David Daugherty was to blame for not providing enough information.

Through its own testimony, Ocwen made it clear that its procedure was to ignore relevant evidence and never conduct reasonable investigations.  Ocwen blamed its failure to investigate David Daugherty's credit report on David Daugherty, underscoring its reprehensible conduct.  The jury feared Ocwen's repeated failures would occur again and again unless it sent a strong message of deterrence and awarded $2.5 million in punitive damages to send this message.

## LEGAL STANDARD

On a motion for judgment as a matter of law during trial, the Court must consider evidence in the light most favorable to the nonmoving party and determine whether reasonable triers of fact

---

[1]The only record of Ocwen's investigations were Ocwen's transaction logs.  (Trial Exhibit 26)

[2]In two ACDVs, Ocwen 'updated' some information but failed to remove the false foreclosure mark each time.

could draw only one conclusion. *Bond v. Morton Bldgs., Inc.*, 815 F.Supp. 944 (S.D.W.Va.1993). When considering a motion for a directed verdict, it must view the evidence in the light most favorable to the non-moving party. *Smith Braedon Co. v. Hadid*, 825 F.2d 787, 790 (4th Cir. 1987); *Townley v. Norfolk & W. Ry. Co.*, 887 F.2d 498, 499 (4th Cir. 1989); *Price v. City of Charlotte, N.C.*, 93 F.3d 1241, 1249 (4th Cir. 1996); *see also Malone v. Microdyne Corp.*, 26 F.3d 471, 475 (4th Cir. 1994). If, giving Plaintiff the benefit of every legitimate inference in his favor, there was evidence upon which the jury could reasonably return a verdict for him, the verdict must stand. *Continental Ore Co. v. Union Carbide Corp.*, 370 U.S. 690, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962); *Wratchford v. S. J. Groves & Sons Co.*, 405 F.2d 1061 (4th Cir. 1969); *Harner v. John McShain, Inc.*, 394 F.2d 480 (4th Cir. 1968); *Chandler v. Aero Mayflower Transit Co.*, 374 F.2d 129 (4th Cir. 1967). Put simply, a court "may not disturb the [jury] verdict where there was sufficient evidence for a reasonable jury to find in the non-movant's favor." *Dotson v. Pfizer, Inc.*, 558 F.3d 284, 292 (4th Cir. 2009).

## ARGUMENT

### A.   The Overwhelming Weight of Evidence Proved that Ocwen Willfully Violated the FCRA.

Willful violations can be proven by showing not only knowing, intentional violations, but also violations in reckless disregard of the law. *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 127 S.Ct. 2201 (2007). Actual knowledge or malicious intent is not required to show willfulness. *Id.* Plaintiff needs only show that Ocwen's reading of the FCRA was objectively unreasonable and that Ocwen ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless. *Id.* at 2215. Ocwen persists in arguing that the FCRA is ambiguous, ignoring the voluminous precedents from Courts that have already interpreted the FCRA. Plaintiff produced overwhelming evidence to support the willfulness finding and punitive damage award.

### 1.   The Court correctly ruled that the FCRA was not ambiguous and that precedent existed to guide Ocwen's conduct.

Defendant Ocwen cites a line cases indicating that *Safeco* requires a specific finding by the Court that Ocwen's FCRA interpretation was 'objectively unreasonable.' Ocwen relies on a footnote of *Safeco* for this proposition.  (Document 214, page 5)  Footnote 20 states that in the specific factual circumstance of *Safeco*, regarding whether increased insurance rates constituted adverse action to insurance customers, "the statutory text and relevant court and agency guidance allow for more than one reasonable interpretation." 551 U.S. at 70, n.20.[3]  In the body of the *Safeco* opinion, the Court noted "[t]his is not a case in which the business subject to the Act had the benefit of guidance from the courts of appeals or the Federal Trade Commission (FTC) that might have warned it away from the view it took." *Safeco,* 551 U.S. at 70.  Ocwen erroneously attempts to create a multi-factor test from this language that must be present to ever find willfulness.

Plaintiff need only show that Ocwen's interpretation of its duty was objectively unreasonable and that Ocwen's disregard of its duty was unreasonable.  The FCRA is lucid and clear:  a furnisher must "conduct an investigation with respect to the disputed information."  15 U.S.C. § 1681s-2b(1)(A). This straightforward statute was emphatically interpreted by the Fourth Circuit when it delineated the "reasonable investigation" standard that requires the furnisher to conduct a substantive inquiry "to determine whether the disputed information can be verified." *Johnson v. MBNA Am. Bank*, 357 F.3d 426, 431 (4th Cir. 2004). [4]

The Fourth Circuit has provided further clarity of a "reasonable investigation," stating a

---

[3]Ocwen neglected to mention that the footnote noted the opposite could be true as well:  reliance on legal advice may not render companies immune to claims raised under § 1681n(a).  551 U.S. at 70, n.20.

[4]Numerous courts have upheld this standard.  See *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355 (3rd Cir. 2011); *Chiang v. Verizon New England, Inc.*, 595 F.3d 26 (1st Cir. 2010); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1155 (9th Cir.2009) ("'investigation' 'requires an inquiry likely to turn up information about the underlying facts and positions of the parties, not a cursory or sloppy review of the dispute'"); *Ayers v. Equifax*, 2003 WL 23142201 (E.D. Va. Dec. 16, 2003).

furnisher may not limit its investigation to only that information supplied by the CRA.   See *Saunders v. Equifax Info. Servs., L.L.C.*,  2006 WL 2850647, at *7 (E.D. Va. Oct. 3, 2006) aff'd sub nom. *Saunders v. Branch Banking and Trust Co. Of VA*, 526 F.3d 142 (4th Cir. 2008) (finding furnisher improperly affirmed inaccurate account history "despite the history of the Account that it no doubt possessed in its own files.") *See also  Gorman v. Wolpoff & Abramson, LLP,* 584 F.3d 1147, 1157 n. 11 (9th Cir. 2009) ("In deciding that the notice determines the nature of the dispute to be investigated, we do not suggest that it also cabins the scope of the investigation once undertaken.") The 'reasonable investigation' was clearly defined by *Johnson*, establishing that the substantive inquiry into consumers' disputes required more than the blatantly inadequate practice of conducting a mere 'data conformity' review that simply confirms that the disputed information in the CRA computer accurately reflects information in the furnisher's computer that generated the report in the first place.  357 F.3d at 431.  As stated, the Fourth Circuit adopted the "reasonable investigation" standard over a decade ago in 2004. *Johnson v. MBNA Am. Bank*, 357 F.3d 426, 431 (4th Cir. 2004); *see Saunders v. BB&T*, 526 F.3d 142, 151 (4th Cir. 2008).

Rather than relying on the emphatic Fourth Circuit precedent established over a decade ago when designing its investigation procedures, Ocwen's brief admits that it instead relied on footnotes of unpublished district court decisions to guide its investigation procedures.  This Court clearly ruled in its Order regarding summary judgment that the Fourth Circuit standard was clear regarding investigations under *Johnson* and its progency.  (Document 108, pages 11-13)  The threshold issue for the Court was whether Ocwen conducted a reasonable investigation of Plaintiff's disputes.  If not, then the next question is whether the failure was negligent or willful.  *See* e.g. *Safeco*, 551 U.S. at 60 ("[b]efore getting to the claims that the companies acted recklessly, we have the antecedent question whether either company violated the adverse action notice requirement at all.") Rather than

creating a new legal threshold for the Court,  the *Safeco* Court placed the question of recklessness

with the "reasonable person."  *Safeco* cited the common law definition of recklessness with approval

as:

> The actor's conduct is in reckless disregard of the safety of another if he does an act or
> intentionally fails to do an act which it is his duty to the other to do, knowing or having
> reason to know of facts which would lead ***a reasonable man*** to realize, not only that his
> conduct creates an unreasonable risk of physical harm to another, but also that such risk is
> substantially greater than that which is necessary to make his conduct negligent." 2
> Restatement (Second) of Torts § 500, p. 587 (1963-1964). *Safeco*, 551 U.S. at 69. (emphasis
> added)

*Safeco* concluded, "[t]here being no indication that Congress had something different in mind, we

have no reason to deviate from the common law understanding in applying the statute." *Id*.  The

sound legal reasoning confirms that this issue was properly determined in this case by the jury.

Furthermore, the trial evidence confirmed that Ocwen was *never* going to conduct a

reasonable investigation.  When asked if Ocwen's investigators consider other relevant evidence on

an ACDV, Ocwen answered: "[t]hey're not told to do that unless it's specified on the dispute code."

(Trial Tr. Vol. III, 103, lines 3-6) With this answer, Ocwen admits that it directs its employees to

actively ignore relevant information on the ACDV in violation of 1681s-2(b)(1)(B) and the standard

set forth in the Fourth Circuit by *Johnson* and *Saunders*.  Plaintiff clarified to ensure there was no

question that Ocwen's policy violated the law by intentionally ignoring relevation information:

> Q.      And it's your testimony here as the representative of
>         Ocwen that if the only dispute code is not his or hers,
>         that's all Ocwen is going to confirm. They aren't going to
>         look at any other information on that form. Is that your
>         testimony?
> A.      That is correct.
> Q.      So if the form has in foreclosure, more than 120 days
>         late, $6,000 in default, Raj Kumar or Daniel Wesley or any
>         of those folks, they're going to verify that and ship it
>         right back to Equifax; correct?
> A.      Correct.

(Trial Tr. Vol. III, 103-104, 21-6) *See also* (Trial Tr. Vol. III, 90, lines 6-7; p. 102-103; p. 183, lines 2-12)

At trial, this Court affirmed that there is no ambiguity in the FCRA and that clear precedent exists to guide furnishers.  (Trial Tr. Vol. V. 114)  The statutory text and relevant court precedents only allow for one reasonable interpretation.  Ocwen cannot ignore these requirements and then claim shelter under *Safeco* for adopting an unjustifiably limited interpretation of the statute. Ocwen's arguments in § A.2.a. of its motion (Document 214, pages 8-11) further illustrate Ocwen's commitment to its refusal to comply with Fourth Circuit standards to the FCRA.  Ocwen confirms that deterrence is needed and illustrate the desperate need to uphold the punitive damages award in this case.  Ocwen still does not think it did anything wrong and persists in arguing that it is allowed to do superficial investigations based solely upon information provided by a CRA.  Other courts have held that *Safeco* requires that "the company's reading of the statute is objectively reasonable," *Safeco*, 551 U.S. at 70 **n. 20**, (emphasis added), and that the interpretation that would allow the conduct in question is 'an interpretation that could reasonably have found support in the courts.'" See *Fuges v. Sw. Fin. Servs.*, Ltd., 707 F.3d 241, 251 (3d Cir. 2012) (citing footnote 20 of *Safeco*). Even under this relaxed standard, Ocwen cannot show that its reading of the FCRA is objectively reasonable or that its interpretation would find support in any court.

> ### 2. Ocwen never produced any policies and procedures, and its testimony regarding procedures all violated its duty to conduct a reasonable investigation and review all relevant information.

On December 15, 2014, Plaintiff requested that Ocwen provide "all policy manuals, procedure manuals or other documents which address your policies, practices or procedures in the investigation or reinvestigation of credit data which is disputed as inaccurate by a consumer." Ocwen objected on January 30, 2015, stating:

Defendant objects to this request as unduly burdensome, overly broad and **_not reasonable (sic) calculated_** to lead to the discovery of admissible evidence because it seeks discovery of all policy manuals, procedure manuals, or other documents which address Ocwen's polices, practices or procedures in the investigation or reinvestigation of credit data which is disputed as inaccurate by a consumer, including those manuals or other documents which are wholly irrelevant to the claims and defenses in this suit (in particular because the request is not limited to indirect credit disputes). Defendant objects to this request as being overly broad in duration...Finally, Defendant also objects because this request seeks confidential and proprietary commercial or business information and no mutually agreeable protective order has been entered by the Court.

(Ex 4, Defendant's Objections Filed January 30, 2015) On March 2, 2015, Plaintiff sent Ocwen a good faith letter to follow up on the deficient discovery responses. The Southern District of West Virginia's form protective order was agreed to in April 2015. Notwithstanding the agreed order, Ocwen submitted three supplements to its Rule 26(a)(1) initial disclosures, none of which contained any policies and procedures. After it became apparent that Ocwen intended to rely on these non-disclosed policies and procedures at the deposition of Ocwen's corporate representative on August 28, 2015, Plaintiff again requested that Ocwen disclose those policies and procedures. Ocwen's counsel responded solely with, "I'll make a note of that." (Ex 2, Lyew Deposition, Page 163, lines 8-15) Ocwen now states in its Motion that "[t]he only evidence in the record is that Ocwen had in place written procedures and policies governing its investigation of credit disputes." This statement is false because Ocwen never produced any written policy or procedure. Ocwen refused and stonewalled all of Plaintiff's requests for this information. Ocwen never provided these before or during trial.

Nonetheless, Ocwen presented testimony regarding its alleged policies and procedures. (See Document 214, pages 10-11) None of the alleged policies and procedures testified to would satisfy the requirement that the investigation be more than superficial or minimal, _see Johnson_, 357 F.3d at 430-431, that the inquiry was 'searching,' _see Jones v. Experian Information Services, Inc._, 2012 WL 20905089 at *4 (E.D.Va. 2012) (_citing Johnson_), that the inquiry went beyond a cursory review

of internal records, *see Johnson*, 357 F.3d at 431, or that the inquiry was not restricted to information provided by the CRA, *see Saunders v. Equifax Information Services*, 2006 WL 850647 (E.D.Va. 2006), aff'd sub nom. *Saunders v. BB&T Co. of Va.*, 526 F.3d 142 (4th Cir. 2008).

Ocwen bases its argument regarding policies and procedures on subterfuge with scant citations. Ocwen attempts to couch its duties as minimal and ignores the FCRA requirement that a furnisher must reasonably investigate disputes from the CRAs. Ocwen was required to reasonably investigate the ACDVs that stated Mr. Daugherty was in foreclosure. Plaintiff did not have a tradeline that was in foreclosure in 2013 or 2014. Equifax had no control over the steps Ocwen took to investigate these disputes. Ocwen had access to direct disputes from Plaintiff showing the inaccuracies that Ocwen verified as accurate time after time. When the dispute stated that the account was not his, and the ACDV showed a tradeline that was in foreclosure and past due, Ocwen had a duty to review that tradeline. Ocwen consciously disregarded its duty to review all relevant information provided by the CRA. 15 U.S.C. § 1681s-2b(1)(B). Instead, Ocwen verified these ACDV's as having information accurate as of that date.

Regarding the issues raised regarding expert testimony, Ocwen's concerns are baseless. By definition, any item on an ACDV that is not 'modified' is 'verified as reported.' This proposition does not take an expert to explain. If Ocwen does not change the information, then it is verifying the information's accuracy. Ocwen's own form states "01: Account information accurate as of date." The ACDV is self-explanatory in this regard. Expert Evan Hendricks reviewed ACDVs provided in discovery as part of his report and described those ACDVs and the bases for his opinion that Ocwen's investigation was unreasonable. (Ex 3, Expert Report, page 2) His report details the "ACDV Exchange" that *Johnson v. MBNA* ruled was inadequate, and he described how he arrived at that opinion in his testimony. (Ex 3, Expert Report, page 4) Ocwen was well aware that his

testimony would reveal Ocwen's inadequate investigations based upon the ACDV Exchange in his report.

Ocwen finishes its argument by claiming that because Equifax never specifically said the dispute regarded duplicate accounts, Ocwen had no duty to do anything besides verify the ownership of the account.  Again, as this Court noted in its Order denying summary judgment, a furnisher may not restrict its investigation to information provided by the CRA.  *Saunders v. Equifax Information Services*, 2006 WL 850647 (E.D.Va. 2006), aff'd sub nom. *Saunders v. BB&T Co. of Va.*, 526 F.3d 142 (4th Cir. 2008).  Ocwen continues to cite the case of *Westra v. Credit Control of Pinellas*, 409 F.3d 825 (7th Cir. 2005), for the proposition that a furnisher can rely solely on the information provided by a CRA when reinvestigating consumer disputes.  However, in *Westra,* the  Court found that because the furnisher did not have any additional information to review from either the CRA or the consumer during the initial dispute, its initial reinvestigation was sufficient.  *Id*. at 826.  *Westra'*s holding was case specific and has been distinguished on these grounds in another district court in the Fourth Circuit.  In *Alabran v. Capital One Bank*, the Court reasoned:

> [I]n *Johnson [v. MBNA]* and here, the Plaintiff had lodged the dispute directly with the furnisher involved as well as the CRAs, and although the furnishers did not have the obligation under § 1681s-2b(1) to conduct a "reasonable" investigation until they received notice from a CRA, they maintained the specifics of the dispute in their records that would have detailed the problem if the investigation reached beyond simply confirming identity. ...In both *Westra* and *Malm*, the consumer lodged his/her dispute with only the CRA (or, as in *Malm*, with a successor creditor) such that the furnisher involved did not have any additional information at its disposal to at least clarify what those courts concluded to be insufficient notification.  2005 WL 3338663, at *7 (E.D.Va.Dec.2005)

The Ninth Circuit, when interpreting *Westra*, made a clear distinction between when a furnisher only has an ACDV versus when a furnisher has additional information:  "[i]n deciding that the notice determines the nature of the dispute to be investigated, we do not suggest that it also cabins the scope of the investigation once undertaken."  *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147,

1157 at n. 11 (9th Cir. 2009).   Here, Ocwen had an abundance evidence from Plaintiff, Equifax, and

the CFPB, as well as its own records.  Even after being leveled with a substantial punitive damage

award for its refusal to conduct any type of investigation, Ocwen persists in arguing that it had no

duty beyond conducting a superficial data conformity review of Plaintiff's dispute.  Its motion is

meritless.[5]

### B.    Plaintiff Presented Evidence to Support His Emotional Distress Award.

Plaintiff has proven that Ocwen furnished inaccurate information when it verified to Equifax

that Plaintiff was in foreclosure and $6,128.00 behind in his payments. The jury found that Ocwen's

investigations were unreasonable and willfully violated the FCRA.  Ocwen's inaccuracy was, at the

very least, a substantial factor in Plaintiff's credit denials.  *See Philbin v. TransUnion Corp*., 101

F.3d 957 (3rd 1997); *Guimond v. TransUnion Credit Info. Co.*, 45 F.3d 1329 (9th Cir. 1995); *Dixon-*

*Rollins v. Experian Info. Solutions, Inc.*, 753 F.Supp.2d 452 (E.D.Pa. 2010) (actual damages based

in part on damages plaintiff incurred in connection with her efforts to correct the error in

TransUnion's credit report); *Bradshaw v. BAC Home Loan Serv., Ltd.*, 816 F.Supp.2d 1066, 1075

(D. Or. 2011) (letters from prospective creditors listing CRA they obtained information on plaintiff's

creditworthiness were sufficient to create a triable issue of fact).

The Fourth Circuit has explicitly allowed damages for mental anguish, humiliation,

embarrassment, and mental distress over an inaccurate credit report.  *See Robinson v. Equifax*, 560

F.3d 235, 241 (4th Cir. 2009); *Sloane v. Equifax Info. Serv., LLC*, 510 F.3d 495, 507 (4th Cir. 2007);

*Dalton v. Capital Assoc. Indus.*, 257 F.3d 409 (4th Cir. 2001) (damages for emotional distress are

---

[5]Ocwen's repeated citation to the case of *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1186 (10th Cir. 2013) is ironic due to that Court's finding that "the Ocwen Defendants' argument appears to be based on a misinterpretation of the requirement of [the FCRA]."  All *Llewellyn* confirms is that Ocwen has a national pattern of willfully limiting its duties and misinterpreting the FCRA, which continues to this day.

available under the FCRA).  Plaintiff testified extensively regarding the time he spent addressing his disputes with Ocwen, both in writing and on the phone, as well as the stress it caused in his everyday life.  *See Sloane,* 510 F.3d at 503 ("although specifically recognizing that a plaintiff's testimony can provide sufficient evidence to support an emotional distress award, we have required a plaintiff to 'reasonably and sufficiently explain the circumstances of [the] injury and not resort to mere conclusory statements'").  Plaintiff's wife corroborated this testimony. *See Sloane*, 510 F.3d at 503 (also provided evidence that the distress was apparent to others, particularly family, who testified to ongoing struggles with CRA and the emotional toll these events took upon her).  There is more than sufficient evidence of distress.  The jury was shown evidence of 17 months of time, energy, and effort expended disputing the tradeline.  *See Price v. City of Charlotte*,  Price, 93 F.3d 1250, 1254 (4th Cir. 1996) ("[w]e have distinguished between plaintiff testimony that amounts only to "conclusory statements" and plaintiff testimony that "sufficiently articulate[s]" true "demonstrable emotional distress.")  The jury rightfully awarded Plaintiff actual damages for these claims.

### C.   Ocwen's Failure to Reasonably Investigate Plaintiff's Disputes Caused Emotional Distress.

Ocwen remains fixated on creating a red herring regarding the creator of the duplicate tradeline.[6]  The tradeline's origin has never been an issue in this litigation.  Ocwen's sole duty was to conduct a reasonable reinvestigation of Plaintiff's disputes.  Ocwen's failure to conduct reasonable investigations caused Plaintiff's mental anguish, humiliation, embarrassment, and mental distress.  Ocwen again confirms its reprehensible refusal to comply with its FCRA duty to reasonably investigate disputes when it said:  "Without being told that Equifax was reporting a duplicative tradeline, Ocwen had no reason to know about the duplicate."  (Document 214, page 20)  This

---

[6]Ocwen has created the narrative that Expert Evan Hendricks agreed that Equifax created a duplicative tradeline.  This is not the case.  The dupicative tradeline has never been explained and only theories have been advanced as to its creation.  Expert Hendricks never offered any theory and/or offered any agreement on this issue.

continued position underscores Ocwen's conscious disregard of the FCRA and confirms the need to uphold the punitive damage award in order to show Ocwen that it must change its investigative practices moving forward or face the consequences.

## CONCLUSION

For the reasons stated above, Ocwen's motion for judgment as a matter of law must be denied.

## DAVID DAUGHERTY

BY COUNSEL

HAMILTON, BURGESS, YOUNG
    & POLLARD, *pllc*


BY:   /s/   Jed R. Nolan           
       Ralph C. Young  *(W. Va. Bar #4176)*
          ryoung@hamiltonburgess.com
       Christopher B. Frost  *(W. Va. Bar #9411)*
          cfrost@hamiltonburgess.com
       Steven R. Broadwater, Jr. (*W. Va. Bar #11355*)
          sbroadwater@hamiltonburgess.com
       Jed R. Nolan (*W. Va. Bar #10833*)
          jnolan@hamiltonburgess.com
       *Counsel for Plaintiff*
       P. O. Box 959
       Fayetteville, WV 25840
       304-574-2727

F:\CM\21352\21352Resp 50b.wpd

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

DAVID M. DAUGHERTY,                    PLAINTIFF

V.                                     CIVIL ACTION NO. 5:14-cv-24506

OCWEN LOAN SERVICING, LLC,             DEFENDANT

## CERTIFICATE OF SERVICE

I, Jed R. Nolan, counsel for Plaintiff, hereby certify that I have filed **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants, on July 11, 2016:

> John C. Lynch, Esq.
> Jason E. Manning, Esq.
> TROUTMAN SANDERS LLP
> 222 Central Park Avenue, Suite 2000
> Virginia Beach, VA  23462
> *Counsel for Defendant Ocwen Loan Servicing, LLC*
> john.lynch@troutmansanders.com
> jason.manning@troutmansanders.com

/s/ Jed R. Nolan
**JED R. NOLAN** *(WVSB #10833)*
jnolan@hamiltonburgess.com

F:\CM\21352\21352Resp 50b.wpd