IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

DAVID M. DAUGHERTY,                                        PLAINTIFF

V.                                                            CIVIL ACTION NO. 5:14-cv-24506

OCWEN LOAN SERVICING, LLC,                     DEFENDANT

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO VACATE THE PUNITIVE DAMAGES AWARD**

Plaintiff David Daugherty brought suit against Defendant Ocwen Loan Servicing for negligent and willful violations of the Fair Credit Reporting Act (FCRA). The jury returned a verdict for David Daugherty, finding that Defendant Ocwen willfully violated the FCRA and awarded Plaintiff compensatory damages in the amount of $6,128.00 and punitive damages in the amount of $2.5 million. David Daugherty now opposes Ocwen's motion to vacate the punitive damages award. Ocwen's claim that Plaintiff "misrepresented" financial reports of Ocwen to the Court is a serious misstatement of the record and the entire argument is a 'red herring' of immense proportions.

**STATEMENT OF FACTS**

Before the initial stage of this bifurcated trial ended, Plaintiff informed Ocwen that it intended to call its corporate representative to testify regarding punitive damages if the jury found a willful violation of the FCRA. Defendant Ocwen Loan Servicing, LLC's designated corporate representative was actually an employee of Ocwen Financial Corporation. (Ex 7, Trial Tr. Vol III, 59, lines 9-11) Ocwen refused to produce any financial information during discovery, despite Plaintiff's repeated requests in written discovery and in deposition preparation. Anticipating further obstruction, Plaintiff searched the website of the United States Securities and Exchange Commission through its EDGAR search engine for "Ocwen."

https://www.sec.gov/edgar/searchedgar/companysearch.html (Ex 1, SEC Search Page)[1] It is apparent that Ocwen Financial Corporation is the sole stockholder of Ocwen Loan Servicing, LLC. Plaintiff obtained the consolidated financial statements of Ocwen as evidence of Ocwen's financial standing in the event that Ocwen refused to produce its corporate representative to testify.[2] (Ex 2, Cover Page of 10-K Form)

Continuing its obstructionist practices, Ocwen refused to produce its corporate representative, despite the fact that she had not been excused by the Court as a witness.[3] Plaintiff never misrepresented the contents of the proposed exhibit. (Ex 3, Trial Tr. Vol. VI, at 89-90). Plaintiff stated that the proposed exhibit was "the most recent financial document of Ocwen Financial Corporation, and I – that's all I'd want to offer into evidence." *Id*. There was no subterfuge or any misrepresentation. Plaintiff sought and identified what appeared to be Ocwen's financial information, stating, "[i]n lieu of calling Ms. Lyew, I'm offering a public record that Ocwen filed with the Securities and Exchange Commission." (*Id*. at 92, lines 6-8) Ocwen's only

---

[1] Ocwen Loan Servicing, LLC, did not file any financial statements on the US SEC EDGAR system.

[2] On Friday, May 20, after the court adjourned, Plaintiff advised Mr. Manning by email that he intended to recall Ms. Lyew, as she was the designated 30(b)(6) witness on the net worth of Ocwen. It was only in anticipation that Mr Manning would intentionally arrange for the witness to be unavailable that Plaintiff even had the financial statements in reserve should the suspicion of Defendant's anticipated misconduct be confirmed by the absence of the witness after Defendant was on notice that Plaintiff was going to recall Ms. Lyew. Mr Manning acknowledged in open Court on Monday, May 23, that he had received Plaintiff's email message. (Ex 3, Trial Tr. Vol. VI, 93, lines 5-7)

[3] This was not Ocwen's first attempt to conceal the witness, Ms. Lyew. On the third day of trial (Wednesday), Plaintiff's counsel asked for leave of the Court to discuss the "order of witnesses." Plaintiff's counsel stated that on the first day of trial, Ocwen's counsel advised that he did not know the whereabouts of the witness. On the second of trial, Ocwen's counsel assured Plaintiff's counsel that Ms. Lyew would be present at trial Wednesday. Then, on the third day of trial, Ocwen's counsel advised Plaintiff's counsel that he would not make Ms. Lyew available for Plaintiff to call. In response, Ocwen's counsel informed the Court that "[Ms. Lyew] had a death in the family, and out of consideration for her I want to minimize her time on the stand so that when I call her, if I need to, in my case in chief, we shorten the period of time." Plaintiff informed the Court that in the absence of Ms. Lyew, he would have to read her deposition into evidence. The Court then admonished counsel for Plaintiff and Ocwen:
> "Well, all I have to say is that I expect the level of professionalism from you lawyers that you should be able to cooperate on matters like this. If she's a 30(b)(6) representative of Defendant, I'm going to order that she be made available. You both can question her." (Trial Tr. Vol. III, 4-7)

Notwithstanding counsel's assertion that Ms. Lyew was unavailable due to a "death in the family," Ocwen produced Ms. Lyew within short order, and Plaintiff called Ms. Lyew as its next witness of the day.

objection at trial was non-disclosure under Rule 26. Post-trial, Ocwen has asserted, for the first time, that Ocwen Loan Servicing, LLC's financial status was not accurately represented in the exhibits at trial. No prejudice befell Ocwen.

Ocwen objected to the documents on the grounds that the documents were not disclosed prior to trial. Ocwen never asserted that the documents were not relevant, or that Plaintiff misidentified documents when Plaintiff presented evidence of "Ocwen Financial Corporation." When the Court admitted the financial information, it commented:

> I'm going to allow the document. I don't think it came as a surprise to anyone that a verdict might come in today, and if it came in under willfulness, that the issue of punitive damages would be at issue. The 30(b)(6) witness is not available to testify, and in the interest of proceeding, I do not believe that this prejudices your client. Your client's fully aware of these documents. Even though they might not have known that the plaintiff was going to submit the documents, it's my understanding they are submitting them in lieu of the fact that Ms. Lyew is not here present to testify. So I am going to permit it here.

(Trial Tr. Vol. VI, 93-94) Most importantly, Ocwen never objected to the financial information on the grounds that the documents reflected the financial status of the parent corporation, not its wholly-owned subsidiary. Ocwen then adopted the exhibits whole-sale during its argument, compellingly arguing:

> Because just pointing to a bottomline number doesn't tell you what those assets are. And I want to tell you what those assets are because the forms are -- are somewhat complicated. I would turn your attention first to the smaller sheet, because this is the one that's the most recent. This is the one from April 27, 2016. And, specifically, it describes how, in just the first quarter of 2016, **my client had a pre-tax loss in the first quarter of $102 million**.

(Ex 3, Trial Tr. Vol. VI, 105) (emphasis added) Ocwen continued:

> It's tough all around in the economy. And Ocwen employs a lot of people. The second thing -- this is all on the first page of this summary. The servicing record. Again, you've heard my client's a loan servicer. When people don't pay their bills, it's not collecting that money to be distributed to whoever owns the loan. My client didn't lend this money. It's servicing it for someone else, another bank. And in this case, this is an example where Mr. Daugherty, that money that's been owed for two years, hasn't been collected to pay off that other bank. And as a result, you'll see a similarity on this sheet, on the first page,

> servicing recorded**, there is $68 million in pre-tax losses** just on the servicing piece. That's 68 million loss, first quarter, just on servicing.

(*Id*.) (Emphasis added) Ocwen found further losses in these records to support its defense:

> Additionally, there is $32 million in loss on MSR fair value changes...So I'll just read from the last paragraph. "Unfortunately, $30 million of monitored costs and $33 million in MSR value decline from the drop in interest rates during the quarter negatively impacted the first quarter results."'"

(Trial Tr. Vol. VI, 106) Plaintiff's argument identified that Ocwen Financial Corporation had $280 million cash on hand, then stated that one percent would be $2.8 million, and that one-tenth of one percent would be $280,000. (Trial Tr. Vol. VI, 102) The jury did not adopt any of these recommended numbers. Plaintiff certainly did not steer the jury a specific number. In fact, Plaintiff attempted to infer a lower number than the jury actually awarded. Plaintiff provided a wide range for the jury to consider in light of all the evidence at trial, and the jury formulated its own penalty that exceeded the number that Plaintiff provided.

Ocwen has not offered any evidence that its financials have been misrepresented. Instead, Ocwen claims only that its parent company's financials were offered as exhibits. Ocwen has not claimed that it has different financials or produced any evidence to support its claim of prejudice. At no time did counsel for Ocwen suggest that the financial statement of Ocwen Financial Corporation, the parent company of Ocwen Loan Servicing, LLC, was objectionable because it was the financial statement of the parent company rather than its wholly-owned subsidiary. See Federal Rules of Evidence Rule 103.[4]

The 10K filing of Ocwen Financial Corporation clearly showed that Ocwen Financial

---

[4]Preserving a Claim of Error. A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party and:
(1) if the ruling admits evidence, a party, on the record:
(A) timely objects or moves to strike; and
(B) states the specific ground, unless it was apparent from the context.

Corporation owned all of the stock of Ocwen Loan Servicing, LLC. As such, under Generally Accepted Accounting Principles (GAAP), Ocwen Financial Corporation was required by the SEC to include within its financial statement the assets and liabilities of its wholly-owned subsidiary. There can be no doubt that the 10K filed by Ocwen Financial Corporation was a consolidated financial statement which included and incorporated the financials of its wholly owned subsidiary, Ocwen Loan Servicing, LLC.

Ocwen Financial Corporation lists its business address as 1661 Worthington Road, Suite 100, West Palm Beach, Florida. Ocwen Financial Corporation is not registered to do business in West Virginia, but Ocwen Loan Servicing, LLC is registered with a principal place of business address of 1661 Worthington Road, Suite 100, West Palm Beach, Florida – the same as Ocwen Financial Corporation. Ocwen Loan Servicing, LLC, has but one stockholder – Ocwen Financial Corporation. At Exhibit F-9 to Trial Exhibit 30, form 10-K reflects that all of the stock of Ocwen Loan Servicing, LLC is owned by Ocwen Financial Corporation.[5] Hence the requirement that the consolidated financial statement include the financial data of the wholly owned subsidiary. The 10-K refers to the document as a "consolidated financial statement" 34 times. (See Trial Exhibit 30, more particularly 10-K exhibits F-4 through F-71, 12.1, 21.1)

Ocwen's entire argument seeks to mislead the Court that the documents identified by Plaintiff on the record as "the financial statements of Ocwen Financial Corporation" were somehow

---

[5] "Ocwen Financial Corporation (NYSE: OCN) (Ocwen, we, us and our) is a financial services holding company which, through its subsidiaries, originates and services loans. Effective October 1, 2015, Ocwen designated its office in West Palm Beach, Florida as corporate headquarters. Previously our office in Atlanta, Georgia was designated as headquarters. We have offices located throughout the United States (U.S.) and in the United States Virgin Islands (USVI) as well as operations in India and the Philippines. Ocwen is a Florida corporation organized in February 1988.
"Ocwen owns all of the common stock of its primary operating subsidiary, Ocwen Mortgage Servicing, Inc. (OMS), and directly or indirectly owns all of the outstanding stock of its primary operating subsidiaries: Ocwen Loan Servicing, LLC (OLS), Ocwen Financial Solutions Private Limited (OFSPL), Homeward Residential, Inc. (Homeward), and Liberty Home Equity Solutions, Inc. (Liberty)."

the wrong documents. Perhaps there are separate financial statements for the various wholly-owned subsidiary corporations, such as Ocwen Loan Servicing, LLC. However, those financial statements are not public documents. The SEC requires consolidated financial reports so that the public may fully and fairly assess the value of a corporation, a la Enron scandal.

The Plaintiff did not intentionally mislead the Court or the jury. Plaintiff accurately described the documents that it procured from a government source after being stonewalled time and again by Ocwen when seeking the same information. *See TXO Prod. Corp. v. All. Res. Corp.*, 187 W.Va. 457, 477, *aff'd*, 509 U.S. 443 (1993) (discussed below). The exhibits were the consolidated financial report of Ocwen Financial Corporation. Ocwen relied on those same documents, which were plainly labeled and identified by Plaintiff, by making specific references to those documents in a compelling closing argument. Ocwen was not prejudiced. Even, assuming *arguendo*, Ocwen was prejudiced, Defendant waived any such prejudice by failing to object and preserve the objection as required by Rule 103(a)(1)(A)-(B) and then using those same documents in its closing to show certain "losses" sustained by Ocwen.

## LEGAL STANDARD

In *Square Constr. Co. v. Washington Metro. Area Transit Auth.*, 657 F.2d 68, 71 (4th Cir. 1981), the Fourth Circuit set forth three factors that a moving party must establish to prevail on a Rule 60(b)(3) motion: (1) the moving party must have a meritorious defense; (2) the moving party must prove misconduct by clear and convincing evidence; and (3) the misconduct prevented the moving party from fully presenting its case. After proof of each of these elements, "the court must balance the competing policies favoring the finality of judgments and justice being done in view of all the facts, to determine within its discretion, whether relief is appropriate in each case." *Id*.

Rule 60(b)(3) focuses not on erroneous judgments, but on judgments which were unfairly

procured. See *Schultz v. Butcher*, 24 F.3d 626, 631 (4th Cir. 1994) (finding Plaintiff's withholding of an important report with information helpful to adversary when specifically requested in discovery was wrongful); *Barlow v. Colgate Palmolive Co.*, 772 F.3d 1001, 1006 (4th Cir. 2014) (finding misrepresentations where counsel told federal court one thing to defeat diversity jurisdiction then admitted to state court that it had lied to federal court regarding diversity jurisdiction).

The Fourth Circuit has upheld the granting of Rule 60(b)(3) motions in cases in which one party failed to produce evidence essential to an adversary's position and which was specifically requested by the adversary. See *Schultz v. Butcher*, 24 F.3d 626, 630 (4th Cir. 1994); *Green v. Foley*, 856 F.2d 660 (4th Cir.1988); *Square Constr. Co. v. Wash. Metro. Area Transit Auth.*, 657 F.2d 68 (4th Cir.1981). The Fourth Circuit refused to set aside a jury verdict under Rule 60(b)(3) because Plaintiff's counsel's misconduct did not "metaphorically tie one hand behind the back of the defendant." *Richardson v. Boddie Noell Enterprises, Inc.*, 78 F. App'x 883, 889 (4th Cir. 2003) (finding that although Plaintiff's counsel behaved inappropriately, his conduct did not prevent Defendant from fully presenting its case).

## ARGUMENT

**(1)     Ocwen failed to show a meritorious defense.**

Defendant Ocwen contends that the exhibits offered during the punitive damages argument belong to a separate corporate entity, yet offered no relevance objection at trial and now offers no proof or other evidence to support its allegation that alternative financial information exists. Defendant erroneously cites the case of *United States v. Moradi*, 673 F.2d 725 (4th Cir. 1982) for the proposition that it need only proffer a meritorious defense to satisfy Rule 60(b)(3). *Moradi* concerns the entry of a default judgment and is inapplicable to a Rule 60(b)(3) motion. Defendant hides this fact by using a bracket to substitute the word "moving" party for "defaulting" party. (Doc.

218, page 3) The *Moradi* line of cases seeks to ensure that cases are decided on their merits rather than default. In this matter, Defendant had nearly two-years of litigation that culminated in a six-day jury trial to developed its meritorious defenses. It failed to do so.

Defendant asserts that its meritorious defense would have been twofold: (1) objections under the rules of evidence and (2) the development of rebuttal evidence. However, Defendant baldly asserts that the exhibits do not reflect its assets or cash on hand. Defendant *does not* allege that its financial documents would show *less* cash on hand. Defendant seeks to set aside a jury verdict based on the flimsiest of allegations with absolutely no support. In fact, the weight of the evidence indicates that the financial documents are relevant to the real party in interest. *See TXO*, 419 S.E.2d at 890 (finding that "if we did not allow trial judges in their sound discretion to admit evidence of the worth of parent corporations, corporations could escape liability simply by incorporating separate departments as a number of undercapitalized subsidiaries"). Defendant repeatedly accuses Plaintiff of making false statements when the record reflects that Plaintiff made no such false statements and without offering any contrary proof to support the alleged falsehood. Plaintiff clearly identified the origin of the documents used to the Court and Defendant. (Trial Tr. Vol. VI, at 89-90) At the trial, Defendant's only objection was non-disclosure.[6] (Trial Tr. Vol. VI, 96, 15-17). Rule 103(a)(1) of the Federal Rules of Evidence requires litigants to state a specific ground for an objection to evidence, and "[g]rounds not presented cannot be raised later, else both judge and adversary are sandbagged (and preventable errors occur)." *United States v. Schalk*, 515 F.3d 768, 776 (7th Cir. 2008) (internal citations ommitted). In other words, "[t]he specific ground for reversal

---

[6]Had Ocwen made a relevance objection claiming that these records did not apply to Defendant rather than relying on the documents to claim that Defendant lost substantial sums of money, this Court would have been forced to address the prejudice to Plaintiff created by Defendant's brazen misconduct in hiding the witness designated by Defendant to testify regarding its financial net worth. It is only because Plaintiff's counsel anticipated this wrongful conduct that Plaintiff had any records on hand to offer in lieu of the testimony of Ms. Lyew.

of an evidentiary ruling on appeal must also be the same as that [previously] raised." *United States v. Swan*, 486 F.3d 260, 264 (7th Cir.2007) (quoting *United States v. Wynn*, 845 F.2d 1439, 1442 (7th Cir.1988)). Furthermore, Defendant held up the exhibit to the jury and cited it compellingly in closing arguments. Defendant has not shown a meritorious defense.

Alternatively, Defendant asserts that it could have presented rebuttal evidence regarding its net worth. Defendant knew that a willfulness verdict was available to the jury and that such a finding would allow the jury to assess punitive damages. Defendant had notice and every opportunity to develop a defense showing its view of Defendant's net worth. Defendant's sole objection at trial to these documents was prejudice. (Trial Tr. Vol. VI, 96, 15-17). Rule 60(b)(3) is not designed to allow a party a 'second bite at the apple' because it failed or neglected to prepare a defense. The Court noted the lack of surprise on the issue of punitive damages. (Trial Tr. Vol. VI, 93-94, 24-2) Defendant has not shown a meritorious defense.

**(2) Defendant Ocwen failed to show any misconduct, much less misconduct by clear and convincing evidence.**

Defendant Ocwen cannot show any misconduct by Plaintiff, as (a) Plaintiff accurately portrayed the evidence it obtained after Defendant hid its witness and otherwise refused to comply with discovery on this issue, (b) Defendant is the only party to engage in any misconduct as recognized by the Fourth Circuit when it withheld relevant discovery and hid its witness, and (c) Defendant relied on the documents to support its argument to the jury that Defendant was losing money in its loan servicing.

**a. Plaintiff accurately identified the exhibits.**

Defendant Ocwen falsely accuses Plaintiff of misrepresenting the exhibits it presented at trial. Plaintiff never misrepresented the contents of the exhibits. (Trial Tr. Vol. VI, at 89-90). Plaintiff stated that the proposed exhibit was "the most recent financial document of **Ocwen**

**Financial Corporation**, and I – that's all I'd want to offer into evidence." *Id*. (Emphasis added) At trial, Defendant did not raise any objection to the relevance of this exhibit. Rule 103(a)(1) of the Federal Rules of Evidence requires litigants to state a specific ground for an objection to evidence, and "[g]rounds not presented cannot be raised later, else both judge and adversary are sandbagged (and preventable errors occur)." *United States v. Schalk*, 515 F.3d 768, 776 (7th Cir. 2008) (internal citations omitted). In other words, "[t]he specific ground for reversal of an evidentiary ruling on appeal must also be the same as that [previously] raised." *United States v. Swan*, 486 F.3d 260, 264 (7th Cir.2007) (quoting *United States v. Wynn*, 845 F.2d 1439, 1442 (7th Cir.1988)). Defendant was in the best position to inform the Court and Plaintiff if anything were inaccurate about the proposed exhibit. Defendant could have obviated the need for these exhibits (1) if it had answered direct discovery requests on this issue or (2) if it had not actively prevented its witness from testifying. The Court noted the sole reason for the exhibit's admission: "it's my understanding [Plaintiff's counsel] are submitting them in lieu of the fact that Ms. Lyew is not here present to testify." (Trial Tr. Vol VI 94, 7-9) The Court noted that Defendant "is fully aware of these documents," *id*., to which Defendant's counsel offered no relevance objection. Defendant then utilized the documents to great effect in its closing argument to the jury by insisting that it was losing money on a quarterly basis while referring to the 10-K of Ocwen Financial Corporation and the First Quarter Report of Ocwen Financial Corporation.[7]

The West Virignia Supreme Court of Appeals dealt with this precise issue in the landmark case of *TXO*. *TXO Prod. Corp. v. All. Res. Corp.*, 187 W. Va. 457, 477, 419 S.E.2d 870, 890 (1992),

---

[7]The Ocwen Financial Statement, utilized by both Plaintiff and Defendant in their closing arguments, explains at page 102 that Ocwen Financial Corporation "owns all of the outstanding stock of its principal operating subsidiary, Ocwen Loan Servicing, LLC (OLS)." At page 130 of the financial statement of Owen Financial Corporation, it shows loan servicing revenue for 2015 of $1,531,797,000, and loan servicing receivables of $286,981,000.00. At page 66 of the Ocwen Financial Corporation financial statement, OLS is listed first in the list of "SIGNIFICANT DIRECT AND INDIRECT SUBSIDIARIES OF OCWEN FINANCIAL CORPORATION."

*aff'd*, 509 U.S. 443 (1993). In *TXO*, on appeal from a jury verdict of $19,000 in compensatory damages and $10 million in punitive damages, the Defendant argued that the jury was allowed to consider irrelevant financial information of its parent corporation rather than the Defendant subsidiary. *Id*. The *TXO* Court found no prejudice when examining the record as a whole, noting that the plaintiff had attempted to find out about the finances of TXO by interrogatory and was stonewalled. *Id*. Even though TXO argued that the introduction of this testimony was unfairly prejudicial because the TXO division is "comprised of at least 15 corporate entities in addition to TXO Production Corp," the Court found no error because:

> First, TXO was not forthcoming during discovery with information about the worth of TXO Production Corporation, nor did TXO offer such evidence at trial. Furthermore, even lingering on this point obscures the more important issue. The worth of the TXO Division of USX, and **the worth of USX for that matter, is relevant. If we did not allow trial judges in their sound discretion to admit evidence of the worth of parent corporations, corporations could escape liability simply by incorporating separate departments as a number of undercapitalized subsidiaries.** It is the management of USX that must ultimately make the decision that its employees will not engage in malicious and nefarious business activities, and, therefore, it is the pocketbook of USX that the jury verdict must reach. Consequently, we find that the punitive damages awarded in this case were not so unreasonable as to demonstrate such passion and prejudice that a new trial is warranted.

*Id*. (Emphasis added)[8] These exact factors exist in this case. Ocwen was not forthcoming during discovery with financial information that was directly requested. Ocwen did not offer any evidence of its net worth at trial. Plaintiff's reliance on the consolidated financial statement, which included Ocwen Loan Servicing, LLC's financial information, was not misplaced and has been upheld.

---

[8]The United States Supreme Court granted certiorari and affirmed this decision without specifically touching on this holding other than a footnote regarding the procedural history:

> Because TXO had refused to disclose any financial records in response to Alliance's discovery requests, Alliance employed an expert witness who analyzed public financial statements of TXO's parent, USX Corporation; he estimated that the TXO division of USX had a net worth of between "$2.2 billion and $2.5 billion." 187 W.Va., at 477, 419 S.E.2d, at 890. Although TXO objected to the evidence as including assets of affiliates, it did not offer any rebuttal testimony on that issue. *Ibid*. *TXO Prod. Corp. v. All. Res. Corp.*, 509 U.S. 443, 451 n. 9 (1993).

### b. Defendant Ocwen is the only party to engage in misconduct as established by Fourth Circuit precedent.

In its motion, Defendant fails to inform the Court that it repeatedly refused to provide any financial information to Plaintiff during discovery. Plaintiff never had possession of the financial documents, whereas Defendant necessarily would be in possession of all financial information to present evidence regarding its net worth. *See e.g. Schultz v. Butcher*, 24 F.3d at 630 (finding "document in attorney's possession at the time of the request, and the failure to produce such an important report which contained information helpful to an adversary's position is not easily excused.") The Fourth Circuit has found misconduct in cases in which one party failed to produce evidence essential to an adversary's position and which was specifically requested by the adversary. *See Schultz v. Butcher*, 24 F.3d 626, 630 (4th Cir. 1994); *Green v. Foley*, 856 F.2d 660 (4th Cir.1988); *Square Constr. Co. v. Wash. Metro. Area Transit Auth.*, 657 F.2d 68 (4th Cir.1981). See also *Stridiron v. Stridiron*, 698 F.2d 204, 207 (3d Cir.1983) (failure to produce requested discovery material can constitute Rule 60(b)(3) misconduct).

In this case, Plaintiff sought copies of all quarterly profit and loss statements for the past three years in its 10th request for production in its initial discovery requests. Plaintiff sought copies of all current balance sheets and financial statements in its 11th request for production in its initial discovery requests. Plaintiff sought copies of income tax returns for the past three years in its 12th request for production in its initial discovery requests. Defendant objected to each request, claiming that the request was premature until Plaintiff demonstrated his claim was viable. (Ex. 4, Discovery Objections) Under this standard, Defendant would seemingly claim that it still has no duty to produce such records. Nor has Defendant produced these records to support its Rule 60(b)(3) motion and demonstrate that the financial records admitted somehow prejudiced Defendant.

In addition, Plaintiff noticed a 30(b)(6) deposition wherein it sought a witness to testify regarding the net worth of Defendant, the annual revenue of Defendant, and the net income of Defendant. Defendant again objected on "maturity" grounds, claiming that Plaintiff was not entitled to this discovery until he proved his claim was 'viable.' (Ex. 5, Deposition Objections) Following the jury's finding of willfulness, Plaintiff called Defendant's 30(b)(6) witness. (Trial Tr. Vol. VI, at 89, 12). Defendant actively refused to produce the witness, claiming that the witness was in a different state altogether, despite Plaintiff's counsel demanding her availability days prior. (*Id*. at 15-16.) Defendant's 30(b)(6) witness was never excused by the District Court. (Trial Tr. Vol. IV, at 114, 1). The only witness who was ever excused was Tina Daugherty. (Trial Tr. Vol. IV, at 123, 1-5). Plaintiff provided Defendant with notice of his intent to recall the 30(b)(6) witness several days before the verdict was returned. (Trial Tr. Vol. VI, at 92, 1-3) Plaintiff explained that in lieu of calling the 30(b)(6) representative, who had been made unavailable despite never having been excused, he would offer a public record filed by Defendant. (Trial Tr. Vol. VI at 92, 5-8) Defendant Ocwen Loan Servicing, LLC's designated corporate representative testified that she was an employee of Ocwen Financial Corporation. (Ex 7, Trial Tr. Vol III, 59, lines 9-11)

Defendant never provided financial information in response to direct discovery requests. Defendant's witness was never excused from trial, yet was sent away without the Court's permission. Plaintiff informed Defendant that he would recall Defendant's 30(b)(6) witness for purposes of punitive damages testimony regarding Defendant's financial worth. Defendant Ocwen forced Plaintiff to scramble to find evidence of the financial status of Ocwen and did not object to its admission on the basis of relevance. *See TXO*, 419 S.E.2d at 890. The only misconduct at issue in this case is Defendant's absolute failure to comply with rules governing discovery and Defendant's refusal to make its witness available. Defendant's claim fails for these reasons.

      **c.     Defendant Ocwen waived any objections to these documents by relying extensively on them in closing argument.**

Rather than claiming that these documents were not the financial documents reflecting financial status of Defendant, Defendant Ocwen successfully utilized the same exhibits to argue that it suffered a $102 million loss in the first quarter of 2016. (Trial Tr. Vol. VI, 106, 10-11) Defendant further identified the loan servicing section of the report to indicate a $68 million loss on the servicing piece. (Trial Tr. Vol. VI, 106, 23-25). In its Rule 60(b)(3) motion, Defendant has failed to clarify how the loan servicing losses and other losses Defendant illustrated to the jury in closing arguments were in any way different. Defendant can only speculate that the jury's verdict relied on these documents to any extent, and Defendant cannot argue that the jury did not rely on the Defendant's representation of the exhibits.

      **(3)     Defendant Ocwen was not prevented from fully presenting its case.**

Defendant Ocwen cannot show that it was, in any way, prevented from producing evidence regarding its financial status. In fact, the record shows that Defendant's trial strategy was to hide any evidence regarding its financial status. As discussed in section 2.b., Plaintiff sought to discover voluminous financial information from Defendant, both in discovery and in depositions. Defendant objected to providing any such information. Plaintiff informed Defendant of its intent to examine its 30(b)(6) witness on the issue of Defendant's financial status should he prevail on willfulness. Defendant instead sent its witness, who was designated by Defendant Ocwen to speak to the issue of the financial viability of Defendant, out of the state.

From the outset of this case, Defendant knew that Plaintiff sought punitive damages. From this Court's summary judgment order in October 2015, Defendant knew that the Court would allow the Plaintiff to present evidence at trial on whether Defendant willfully violated the FCRA.

(Document 108) Defendant had ample time to prepare and present evidence regarding its financial status. Instead, Defendant offered no evidence. The Plaintiff did not withhold any evidence. On the contrary, Defendant was the sole proprietor of evidence of Ocwen's financial status. After adopting, embracing, and arguing that same evidence, Defendant cannot now claim that Plaintiff in any way impeded Defendant's ability to prepare evidence regarding its net worth.

### (4) Rule 60(b)(3) relief is inappropriate when balancing the policy favoring the finality of judgments and justice being done in view of all the facts.

In view of all the facts, Defendant's accusation of misconduct falls flat. Defendant repeatedly refused to provide information regarding its financial status to Plaintiff, despite Plaintiff's direct request for this financial information. When Plaintiff informed Defendant that he intended to question the 30(b)(6) witness about Ocwen's net worth, Defendant sent the unexcused witness to another state without informing the Court or Plaintiff of its actions.[9] With nowhere else to turn, Plaintiff identified publicly filed financial information regarding Ocwen Financial Corporation and presented it to the Court and to Ocwen. *See TXO*, 419 S.E.2d at 890.

This fact underscores the importance of Ocwen's failure to cite to any other financial documents in its Rule 60(b)(3) motion. Ocwen, for the first time post trial, wants to assert that "Ocwen" is not responsible for the conduct of "Ocwen." Even Defendant's corporate designee pursuant to Rule 30(b)(6), Sandra Lyew, stated that she was employed by Ocwen Financial Corporation. (Ex. 7, Trial Tr. Vol. III, 59, 9-11) The jury heard substantial evidence regarding Ocwen's conscious disregard of the FCRA and its repeated refusal to investigate Plaintiff's disputes.

---

[9]Although on day three of the trial Mr. Manning tried to attribute the unavailability of Ms. Lyew to a "death in the family," by the last day of trial Mr. Manning told the Court that Ms. Lyew "is in another hearing today, she is not in West Virginia." (Trial Tr. Vol. VI)

Plaintiff attempted to locate a guidepost for the jury, but the jury ultimately rejected the Plaintiff's suggested penalties of one-tenth of one percent or one percent. The jury cannot be said to have relied exclusively on Plaintiff's representation of the exhibits over Defendant's representations. In view of all the facts, justice has been done and the finality of this judgment must be upheld.

## CONCLUSION

None of the four factors outlined in *Square Constr. Co. v. Washington Metro. Area Transit Auth.*, *supra*, have been met by Defendant here. Plaintiff did not intentionally mislead anyone. Defendant has no meritorious defense. Defendant has repeatedly and steadfastly refused to provide financial information despite being asked throughout the discovery process. Defendant even went so far as to actively prevent its witness from testifying at trial by sending her to another state after Plaintiff's counsel's reminder that her testimony was material and that she was not excused by the Court. Plaintiff sought public filings by Ocwen, and the exhibits offered at trial clearly state that they are financial documents of "Ocwen Financial Corporation," yet Defendant never stated the documents were unrelated to Defendant in any objection. Defendant used the exhibits, holding the paper in the air in open Court during closing argument and citing figures therein. There is no meritorious defense when counsel failed to object in any way to relevance.

Furthermore, Defendant can show absolutely no misconduct and, as such, cannot prove that the misconduct prevented Defendant from fully presenting its case. Plaintiff did absolutely nothing to prevent Defendant from presenting its case. In fact, just the opposite is true. From the beginning of the discovery process through the last day of trial, Plaintiff offered to allow the Defendant to provide evidence related to its financial standing. Even now, in its Motion purporting to show that the information presented in Plaintiff's exhibits was incorrect, Defendant *still* has not produced anything which it claims is an accurate depiction of its finances. Throughout two years of litigation,

Defendant refused Plaintiff's repeated requests to provide the information  In short, Defendant's Motion should be denied because Defendant has not shown that Plaintiff is in anyway responsible Defendant's failure to present its own financials.

BY COUNSEL

HAMILTON, BURGESS, YOUNG
    & POLLARD, *pllc*

BY:      /s/ Jed R. Nolan
Ralph C. Young *(W. Va. Bar #4176)*
   ryoung@hamiltonburgess.com
Christopher B. Frost  *(W. Va. Bar #9411)*
   cfrost@hamiltonburgess.com
Steven R. Broadwater, Jr. (*W. Va. Bar #11355*)
   sbroadwater@hamiltonburgess.com
Jed R. Nolan *(W. Va. Bar #10833)*
   jnolan@hamiltonburgess.com
*Counsel for Plaintiff*
P. O. Box 959
Fayetteville, WV 25840
304-574-2727

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

DAVID M. DAUGHERTY,                                       PLAINTIFF

V.                                                                        CIVIL ACTION NO. 5:14-cv-24506

OCWEN LOAN SERVICING, LLC,                    DEFENDANT

## CERTIFICATE OF SERVICE

I, Jed R. Nolan, counsel for Plaintiff, hereby certify that I have filed **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO VACATE THE PUNITIVE DAMAGES AWARD** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants, on July 11, 2016:

> John C. Lynch, Esq.
> Jason E. Manning, Esq.
> TROUTMAN SANDERS LLP
> 222 Central Park Avenue, Suite 2000
> Virginia Beach, VA  23462
> *Counsel for Defendant Ocwen Loan Servicing, LLC*
> john.lynch@troutmansanders.com
> jason.manning@troutmansanders.com

/s/ Jed R. Nolan
**JED R. NOLAN** *(WVSB #10833)*
jnolan@hamiltonburgess.com