**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

# FORM 10-K

(Mark one)

☒ ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934
   For the fiscal year ended December 31, 2015

OR

☐ TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934
   For the transition period from: _____ to _____

Commission File No. 1-13219

# OCWEN FINANCIAL CORPORATION

(Exact name of registrant as specified in its charter)

| | |
|---|---|
| **Florida** | **65-0039856** |
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |
| **1661 Worthington Road, Suite 100** | |
| **West Palm Beach, Florida** | **33409** |
| (Address of principal executive office) | (Zip Code) |

**(561) 682-8000**
(Registrant's telephone number, including area code)

Securities registered pursuant to Section 12(b) of the Act:

| | |
|---|---|
| **Common Stock, $.01 par value** | **New York Stock Exchange (NYSE)** |
| (Title of each class) | (Name of each exchange on which registered) |

Securities registered pursuant to Section 12 (g) of the Act: Not applicable.

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act. Yes ☐   No ☒

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act. Yes ☐   No ☒

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☒   No ☐

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate Web site, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T (§232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files). Yes ☒   No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of the registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or a smaller reporting company. See the definitions of "large accelerated filer," "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act:

| | | | |
|---|---|---|---|
| Large Accelerated filer | ☒ | Accelerated filer | ☐ |
| Non-accelerated filer | ☐ (Do not check if a smaller reporting company) | Smaller reporting company | ☐ |

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Act) Yes ☐   No ☒

Aggregate market value of the common stock of the registrant held by nonaffiliates as of June 30, 2015 : $1,230,610,916

Number of shares of common stock outstanding as of February 16, 2016 : 123,852,336 shares

DOCUMENTS INCORPORATED BY REFERENCE: Portions of our definitive Proxy Statement with respect to our Annual Meeting of Shareholders, which is currently scheduled to be held on May 11, 2016, are incorporated by reference into Part II, Item 5 and Part III, Items 10 - 14.

EXHIBIT 2

**EDGAR pro**
by EDGAR Online

# OCWEN FINANCIAL CORP

## FORM 10-K
(Annual Report)

### Filed 02/29/16 for the Period Ending 12/31/15

| | |
|---|---|
| Address | 1661 WORTHINGTON ROAD<br>SUITE 100<br>WEST PALM BEACH, FL 33409 |
| Telephone | 561-682-8000 |
| CIK | 0000873860 |
| Symbol | OCN |
| SIC Code | 6162 - Mortgage Bankers and Loan Correspondents |
| Industry | Consumer Financial Services |
| Sector | Financial |
| Fiscal Year | 12/31 |

Powered By EDGAR Online
http://www.edgar-online.com

© Copyright 2016, EDGAR Online, Inc. All Rights Reserved.
Distribution and use of this document restricted under EDGAR Online, Inc. Terms of Use.

OCWEN FINANCIAL CORPORATION AND SUBSIDIARIES
NOTES TO CONSOLIDATED FINANCIAL STATEMENTS
DECEMBER 31, 2015 , 2014 AND 2013
(Dollars in thousands, except per share data and unless otherwise indicated)

Note 1 — Organization, Business Environment, Basis of Presentation and Significant Accounting Policies

Organization

Ocwen Financial Corporation (NYSE: OCN) (Ocwen, we, us and our) is a financial services holding company which, through its subsidiaries, originates and services loans. Effective October 1, 2015, Ocwen designated its office in West Palm Beach, Florida as corporate headquarters. Previously our office in Atlanta, Georgia was designated as headquarters. We have offices located throughout the United States (U.S.) and in the United States Virgin Islands (USVI) as well as operations in India and the Philippines. Ocwen is a Florida corporation organized in February 1988.

Ocwen owns all of the common stock of its primary operating subsidiary, Ocwen Mortgage Servicing, Inc. (OMS), and directly or indirectly owns all of the outstanding stock of its primary operating subsidiaries: Ocwen Loan Servicing, LLC (OLS), Ocwen Financial Solutions Private Limited (OFSPL), Homeward Residential, Inc. (Homeward), and Liberty Home Equity Solutions, Inc. (Liberty).

We perform primary and master servicer activities on behalf of investors and other servicers, including the Federal National Mortgage Association (Fannie Mae) and Federal Home Loan Mortgage Corporation (Freddie Mac) (collectively, the GSEs), the Government National Mortgage Association (Ginnie Mae) and private-label securitizations (non-Agency). As primary servicer, we may be required to make certain payments of property taxes and insurance premiums, default and property maintenance payments, as well as advances of principal and interest payments before collecting them from borrowers. As master servicer, we collect mortgage payments from primary servicers and distribute the funds to investors in the mortgage-backed securities. To the extent the primary servicer does not advance the scheduled principal and interest, as master servicer we are responsible for advancing the shortfall subject to certain limitations.

We primarily originate, purchase, sell and securitize conventional (conforming to the underwriting standards of Fannie Mae or Freddie Mac; collectively referred to as Agency loans) and government-insured (Federal Housing Authority (FHA) or Department of Veterans Affairs (VA)) forward and reverse mortgages. The GSEs or Ginnie Mae guarantee these mortgage securitizations.

Business, Liquidity, Financing Activities and Management's Plans

We are facing certain challenges and uncertainties that could have significant adverse effects on our business, liquidity and financing activities.

We have faced, and expect to continue to face, increased regulatory and public scrutiny as well as stricter and more comprehensive regulation of our business. We have entered into a number of regulatory settlements, which subject us to ongoing monitoring or reporting and which have significantly impacted our ability to grow our servicing portfolio. See Note 25 — Regulatory Requirements and Note 27 — Contingencies for further information regarding regulatory requirements, regulatory settlements and regulatory-related contingencies.

To the extent that an examination, monitorship, audit or other regulatory engagement results in an alleged failure by us to comply with applicable law, regulation or licensing requirement, or if allegations are made that we have failed to comply with the commitments we have made in connection with our regulatory settlements, or if other regulatory actions are taken in the future against us of a similar or different nature, this could lead to (i) loss of our licenses and approvals to engage in our servicing and lending businesses, (ii) governmental investigations and enforcement actions, (iii) administrative fines and penalties and litigation, (iv) civil and criminal liability, including class action lawsuits, (v) breaches of covenants and representations under our servicing, debt or other agreements, (vi) inability to raise capital and (vii) inability to execute on our business strategy. Any of these occurrences could increase our operating expenses and reduce our revenues, hamper our ability to grow or otherwise materially and adversely affect our business, reputation, financial condition and results of operations.

Given the intense regulatory scrutiny and the subsequent investments Ocwen has made in its risk and compliance infrastructure, we believe the underlying economics of our Servicing business have likely been changed for the foreseeable future. We believe it is unlikely Ocwen will achieve meaningful profitability in its Servicing business in the near term unless there is a significant, structural change in the business model. While we believe such structural change is probably unlikely in the current regulatory environment, we are nonetheless intensely focused on improving our operations to enhance borrower experiences and improve efficiencies, both of which we believe will drive stronger financial performance through lower overall costs.

EXHIBIT 21.1

## SIGNIFICANT DIRECT AND INDIRECT SUBSIDIARIES OF OCWEN FINANCIAL CORPORATION

The following is a list of subsidiaries of the registrant as of December 31, 2015, omitting certain subsidiaries which, considered in the aggregate, would not constitute a significant subsidiary.

| Name | State or Other Jurisdiction of Organization |
|---|---|
| Ocwen Loan Servicing, LLC (1) | Delaware |
| Ocwen Mortgage Servicing, Inc. (1) | U.S. Virgin Islands |
| Homeward Residential Holdings, Inc. | Delaware |
| Homeward Residential, Inc. (1) | Delaware |
| Liberty Home Equity Solutions, Inc. (1) | California |
| REO Management, LLC (1) | U.S. Virgin Islands |
| Ocwen Advance Master Receivables Trust (2) | Delaware |

(1) Operating company
(2) Special purpose entity

At December 31, 2015, the geographic distribution of the UPB and count of residential loans and real estate we serviced was as follows:

|  | Amount | Count |
|---|---|---|
| California | $ 60,567,867 | 234,371 |
| Florida | 21,004,999 | 147,454 |
| New York | 20,735,251 | 86,951 |
| New Jersey | 11,495,328 | 55,175 |
| Texas | 11,393,316 | 127,397 |
| Other | 125,769,351 | 973,414 |
|  | $ 250,966,112 | 1,624,762 |

**Servicing Revenue**

The following table presents the components of servicing and subservicing fees for the years ended December 31:

|  | 2015 | 2014 | 2013 |
|---|---|---|---|
| **Loan servicing and subservicing fees:** |  |  |  |
| Servicing | $ 1,148,278 | $ 1,363,800 | $ 1,246,882 |
| Subservicing | 58,384 | 128,797 | 146,605 |
|  | 1,206,662 | 1,492,597 | 1,393,487 |
| Home Affordable Modification Program (HAMP) fees | 135,036 | 141,121 | 152,812 |
| Late charges | 82,690 | 121,618 | 115,826 |
| Loan collection fees | 31,763 | 33,983 | 31,022 |
| Custodial accounts (float earnings) | 15,870 | 6,693 | 5,332 |
| Other | 59,776 | 98,163 | 125,080 |
|  | $ 1,531,797 | $ 1,894,175 | $ 1,823,559 |

Float balances amounted to $2.2 billion, $3.4 billion and $3.2 billion at December 31, 2015, 2014 and 2013, respectively.

**Note 10 — Receivables**

Receivables consisted of the following at December 31:

|  | 2015 | 2014 |
|---|---|---|
| Servicing: |  |  |
| Amount due on sales of mortgage servicing rights and advances | $ 94,629 | $ — |
| Government-insured loan claims (1) | 71,405 | 52,955 |
| Reimbursable expenses | 29,856 | 32,387 |
| Due from custodial accounts | 13,800 | 11,627 |
| Other servicing receivables | 32,879 | 29,516 |
|  | 242,569 | 126,485 |
| Income taxes receivable | 53,519 | 68,322 |
| Due from related parties (2) | — | 58,892 |
| Other receivables (3) | 29,818 | 43,690 |
|  | 325,906 | 297,389 |
| Allowance for losses (1) | (38,925) | (26,793) |
|  | $ 286,981 | $ 270,596 |

(1) At December 31, 2015 and 2014, the total allowance for losses related to receivables of our Servicing business. Allowance for losses related to defaulted FHA or VA insured loans repurchased from Ginnie Mae guaranteed securitizations (government-insured loan claims) at December 31, 2015 and 2014 were $20.6 million and $10.0 million, respectively.