```
 1              THE JUROR:  Yes, ma'am.
 2              THE COURT:  And, Ms. Harless, you did not
 3    participate; is that correct?
 4              THE  JUROR:  Yes.
 5              THE COURT:  Counsel, do you all want to inspect
 6    the jury verdict form?  Come to the bench, please.
 7         (Bench conference on the record.)
 8              THE COURT:  They have made a finding of
 9    willfulness.  At this time I will instruct the jury on it.
10         Plaintiffs, what other evidence, if any, do you want to
11    present?
12              MR. YOUNG:  Is the 30(b)(6) witness available?
13              MR. MANNING:  Are you talking about Sandra Lyew?
14              MR. YOUNG:  Yes.
15              MR. MANNING:  She is in another hearing today.
16    She is not in West Virginia.
17              MR. YOUNG:  She was designated as the witness to
18    give testimony as to the net worth of this corporation.
19    However, I have the most recent filing with the SEC of this
20    defendant, which shows the net worth or actual assets.  And
21    this Court, under the Rules of Evidence, can take judicial
22    notice of it because it's -- I don't have the exact cite
23    here, but it's a government document required to be filed
24    under penalty of fine and imprisonment.  It's the most
25    recent financial document of Ocwen Financial Corporation,
```

```
 1  and I -- that's all I'd want to offer into evidence.
 2          THE COURT:  Mr. Manning?
 3          MR. MANNING:  May I see a copy of it?
 4          THE COURT:  If you all want to, yes, you can.
 5      (Bench conference concluded.)
 6          MR. MANNING:  Your Honor?
 7          THE COURT:  Yes, sir.
 8          MR. MANNING:  The proposed offering by the
 9  plaintiff is a lengthy document.  May I have a moment to
10  review it?
11          THE COURT:  Yes, sir.
12      (Pause.)
13          THE COURT:  Ladies and gentlemen of the jury, you
14  have been in your jury lounge since 1 o'clock.  Why don't I
15  give you a recess, and while you are out, don't discuss the
16  case any further or permit anyone to discuss it with you in
17  your presence.
18      And be in your jury lounge at half after the hour.
19  We'll stand in recess.
20      (Jury exited the courtroom at 3:14 p.m.)
21          MR. YOUNG:  May I approach the Court -- or the
22  clerk, Your Honor?
23          THE COURT:  Yes.
24          MR. YOUNG:  I'd like to have that marked next in
25  order.
```

1  I told Mr. Manning Friday that if the jury returned the
2  verdict today on willfulness, I was going to recall the
3  corporate witness.
4  Now, we approached the bench earlier. It's the first
5  time I heard she was somewhere else. She was never excused
6  from this case. In lieu of calling Ms. Lyew, I'm offering a
7  public record that Ocwen filed with the Securities and
8  Exchange Commission.
9  I have not only the 10-Q for the period ending the last
10 fiscal year, I also have the updated filing -- excuse me.
11 10-K is what we have marked as the plaintiff's exhibit next
12 in order, and I also have Ocwen's financial first quarter
13 report, which is a publication on Ocwen stationery filed
14 with the SEC, showing their financial position as of the
15 first quarter of 2016.
16      MR. NOLAN: Mr. Manning, anything further?
17      MR. MANNING: Yes, Judge. The mention of --
18      THE COURT: Don't use your phone while you're
19 addressing me.
20      MR. MANNING: I need to clarify because Mr. Young
21 said he talked with me about Ms. Lyew.
22      THE COURT: Well, you can make your
23 representation. I am going to accept your representation,
24 but you don't use your phone while you're addressing the
25 bench.

1   Go ahead, please.

2   MR. MANNING: I understand, Judge. I apologize.

3   It was by e-mail after the witness had been dismissed.

4   So this court -- court was over. This was on Friday. There

5   is no mention. And then I get an e-mail Friday night from

6   Steve Broadwater, and that's what I was going to clarify for

7   Your Honor.

8   In terms of the issue of the documents themselves, it's

9   a prejudice issue, Judge. There's -- there isn't notice of

10  what they intend to offer. That's, again, it gets back to

11  the rules, and if they intend -- even if it's judicial

12  notice, they still have to identify what they intend to

13  offer for purposes of judicial notice.

14  Judicial notice is -- is just a potential exception to

15  hearsay. It establishes authenticity. It's not going to

16  result in an excuse for prejudice. And it hasn't been

17  identified prior to this moment.

18  THE COURT: I want to know what it is you want to

19  designate, Mr. Manning.

20  MR. MANNING: I -- I haven't had the opportunity

21  to hop on the SEC's website in order to determine what to

22  counter-designate.

23  THE COURT: Okay. I'm going to allow the

24  document. I don't think it came as a surprise to anyone

25  that a verdict might come in today, and if it came in under

1  willfulness, that the issue of punitive damages would be at
2  issue.
3      The 30(b)(6) witness is not available to testify, and
4  in the interest of proceeding, I do not believe that this
5  prejudices your client. Your client's fully aware of these
6  documents. Even though they might not have known that the
7  plaintiff was going to submit the documents, it's my
8  understanding they are submitting them in lieu of the fact
9  that Ms. Lyew is not here present to testify.
10     So I am going to permit it here and preserve Ocwen's
11 objection and exception.
12     You all can review this instruction on punitive damages
13 that I intend to give to the jury.
14         MR. MANNING: Your Honor, is this a copy that I
15 can write on?
16         THE COURT: Yes, sir.
17     Plaintiff have an objection to the punitive damages
18 instruction?
19         MR. YOUNG: The plaintiff has no objection to that
20 instruction, Your Honor.
21         THE COURT: All right. Mr. Manning, any
22 objection?
23         MR. MANNING: I've almost finished it. I'm on the
24 last page.
25     No objection, Your Honor.

1 the rights of others. They are intended to deter the
2 defendant and others from engaging in a similar course of
3 conduct in the future.
4     Punitive damages are not compensation for injury. An
5 award of punitive damages means that you, the jury, believe
6 that the defendant should be punished for its conduct as
7 proven by the evidence in this case.
8     A plaintiff is not entitled to punitive damages as a
9 matter of right. In other words, even if you should find
10 that a defendant's conduct rises to the level of gross
11 fraud, malice, or oppression, wanton, willful, or reckless
12 conduct, as you have in this case as to willfulness, the
13 decision to impose or to withhold punitive damages lies with
14 your sound discretion. However, if you determine that
15 punitive damages are appropriate, you may award them even if
16 you do not award compensatory damages, or if you award only
17 minimal compensatory damages.
18     The amount of punitive damages, if any, that may be
19 awarded is that amount of damages which would be sufficient
20 in the jury's judgment to punish the defendant and to deter
21 others from engaging in a similar course of conduct.
22     In determining the amount of punitive damages, if any,
23 to award in this case, you should take into consideration
24 all the circumstances surrounding the particular occurrences
25 involved here, including the nature of defendant's

1   The award, if you decide that's appropriate, has to be
2   enough to punish this defendant, to make him take notice.
3   You know, if you got -- if I got a $1,000 speeding
4   ticket, my goodness, I am going to -- I am going to take
5   notice.
6   But this is a $7 billion corporation. If you look at
7   the second exhibit, the short exhibit, this corporation at
8   the end of the first quarter of 2016 had $7.4 billion.
9   Now, on these documents, it says 7,407,110, but they
10  leave off the last three zeros. It's not 7 million of
11  assets, it's 7.4 billion.
12  Cash on hand. At the end -- next page. Cash on hand.
13  At the end of March 2016, they had $280 million cash on
14  hand.
15  One tenth -- or one percent of the cash in hand alone
16  that they have as of March is $2.8 million. One tenth of
17  one percent of the cash they have available as of the end of
18  March is $280,000.
19  Whatever penalty, if you decide to award a penalty, it
20  has to be enough to sting. It has to be enough to say,
21  Ocwen, you better fix your system. It's broken. If not,
22  this same system is going to chew up and spit out other
23  people just like Dave Daugherty. Other people who are
24  trying to refinance. Other people who can't get illegal,
25  wrong things off of their credit reports. Other people in

1  pay on a monthly basis. But the full balance is owed.
2      And that's relevant when we talk about some of these
3  figures on the sheets. Because just pointing to a bottom-
4  line number doesn't tell you what those assets are.
5      And I want to tell you what those assets are because
6  the forms are -- are somewhat complicated. I would turn
7  your attention first to the smaller sheet, because this is
8  the one that's the most recent. This is the one from April
9  27, 2016. And, specifically, it describes how, in just the
10 first quarter of 2016, my client had a pre-tax loss in the
11 first quarter of $102 million. It's tough all around in the
12 economy. And Ocwen employs a lot of people.
13     The second thing -- this is all on the first page of
14 this summary. The servicing record. Again, you've heard my
15 client's a loan servicer. When people don't pay their
16 bills, it's not collecting that money to be distributed to
17 whoever owns the loan. My client didn't lend this money.
18 It's servicing it for someone else, another bank.
19     And in this case, this is an example where
20 Mr. Daugherty, that money that's been owed for two years,
21 hasn't been collected to pay off that other bank. And as a
22 result, you'll see a similarity on this sheet, on the first
23 page, servicing recorded, there is $68 million in pre-tax
24 losses just on the servicing piece. That's 68 million loss,
25 first quarter, just on servicing.

```
 1        Additionally, there is $32 million in loss on MSR fair
 2   value changes.  These loans are part of servicing pools; a
 3   big batch of them are serviced.  And when people don't pay
 4   them --
 5        MR. YOUNG:  Objection, Your Honor.  Counsel can't
 6   testify and give explanation to the jury of --
 7        THE COURT:  The objection to testifying and going
 8   beyond what's contained in the documents is sustained.
 9        And your time is just about up, Mr. Manning.
10        MR. MANNING:  So I'll just read from the last
11   paragraph.
12        "Unfortunately, $30 million of monitored costs and $33
13   million in MSR value decline from the drop in interest rates
14   during the quarter negatively impacted the first quarter
15   results."
16        I want you to have the complete picture here.
17        Now, the Court instructed you specifically on the
18   standard.  For this, the standard is much higher.  The Court
19   instructed you that this is the highest civil standard that
20   any bank can be held -- held to.  They have to prove clear
21   and convincing evidence.
22        THE COURT:  Your time is up, counsel.
23        MR. MANNING:  And so for that reason, I'd ask you
24   to review the documents and award zero dollars in punitive
25   damages.
```